## UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————————x
:
LE COMMODITIES, LLC,                              :
:
Plaintiff,                       :
:
v.                            :
:
UNITED STATES; JOSEPH R. BIDEN, IN               :
HIS OFFICIAL CAPACITY AS PRESIDENT OF            :
THE  UNITED STATES; GINA RAIMONDO,               :
IN HER OFFICIAL CAPACITY AS UNITED               :
STATES  SECRETARY OF COMMERCE;                   :        Court No.      22-00245
UNITED STATES DEPARTMENT OF                      :
COMMERCE; CHRIS MAGNUS, IN HIS                   :
OFFICIAL CAPACITY AS                             :
COMMISSIONER, UNITED STATES CUSTOMS :
AND BORDER PROTECTION; UNITED                    :
STATES CUSTOMS AND BORDER                        :
PROTECTION,                                      :
:
Defendants.                   :
————————————————————————x

## COMPLAINT

Plaintiff LE Commodities, LLC, by and through its counsel, brings this action and alleges as follows.

## SUMMARY

1.      In March 2018, the President of the United States of America ("the President"), acting pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), imposed a 25% *ad valorem* tariff on steel imports. The President's Proclamation recognized that these tariffs could have unintended consequences for U.S. businesses that rely on imports of steel products not otherwise immediately available in the domestic market. Proclamation 9705, *Adjusting Imports of Steel into the United States* (Mar. 8, 2018). The Proclamation therefore expressly directed the Department of Commerce (hereafter "Commerce")

to grant exclusions from the Section 232 tariffs to U.S.-based businesses for imported steel

products that are not immediately available in sufficient quality or quantity in the United States.

2.    According to Commerce, the reason for exclusions was:

[T]o protect downstream manufacturers that rely on products not produced by U.S. domestic industry at this time. The guiding principle is that, if U.S. domestic industry does not or will not produce a given steel or aluminum product of the quality needed by users in the United States, companies that rely on those products will not pay duties on them.

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,038–39 (Sept. 11, 2018).

3.    LE Commodities is a California-based provider of stainless, tool and high speed

steel semi-finished products, including alloy type 304/304L and 316/316L stainless steel welded

sanitary tubing conforming to 3-A Sanitary Standard, per ASTM A-270 (the "subject steel").

4.    LE Commodities provides the subject steel to distributors in North America that,

in turn, sell the steel for use in the dairy, food, and beverage processing industries. These

customers require a specialty steel known as "sanitary grade" because the steel will be used for

handling fluids for human consumption. The subject steel tubing is a high-end product, produced

per two specifications (3-A sanitary standard and ASTM A270). Very few mills globally are

certified to produce and can produce per the 3-A standard.

5.    LE Commodities depends upon a reliable, timely and continuous supply of

substantial amounts of the subject sanitary grade steel tubing in order to meet the requirements of

its customers, each of which relies on the supply of the product in order to fulfill orders.

6.    LE Commodities has consistently sought to source the subject steel from the

domestic market; however, domestic producers either do not produce the subject steel or cannot

provide the subject steel to both the 3-A and ASTM A270 specifications within the timeframe

required by LE Commodities' customers. The production of the subject steel per the two specifications is of particular importance to LE Commodities because it provides the steel with a polish on the tubing's inner diameter that is distinct from standard stainless steel tubing, which allows for its use in the dairy, food, and beverage processing industries.

7.     This case concerns 14 exclusion requests submitted by plaintiff that were denied by Commerce. Seven exclusions were filed between December 20, 2019 and December 21, 2019, four exclusions were filed between April 30, 2020 and November 24, 2020, and three were filed between July 28, 2021 and September 19, 2021. The exclusion requests covered stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy types 304/304L and 316/316L. The 14 exclusion requests are listed in **Exhibit 1**. These products are hereafter referred to as "the subject steel."

8.     Commerce, after receiving domestic objections from United Industries Inc. ("United"), denied each of the 14 exclusions despite substantial evidence documenting the lack of a sufficient and reasonably available amount or satisfactory quality of the subject steel in the domestic market and United's failure to provide any support or supplemental evidence for its claimed delivery times, as required by subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705. The decision memos were dated August 26, 2020 for seven of the exclusion requests, November 25, 2020 for two of the requests, February 13, 2021 for two of the requests, and late 2021 on the most recent three requests. As a result of the denial of the exclusion requests, LE Commodities paid substantial amounts in Section 232 steel tariffs from which it should have been exempt.

9.     In denying LE Commodities' exclusion requests and sustaining the objections, Commerce undertook no effort to verify the objector's claims, failed to recognize the objections

as insufficient under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705, ignored the conclusive evidence that United is unable to produce the subject products in the required timeframe, and failed to provide a sufficiently reasoned basis for each of its decisions.

10.     Thus, Commerce abandoned the standards established by Proclamation 9705 and the Department's own regulations. Commerce's denials of LE Commodities' exclusion requests were therefore arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. ("APA").

11.     The decisions denying several of LE Commodities' requests are part of a pattern in which Commerce has rotely rejected hundreds of exclusion requests, providing the same pro forma, conclusory decisions, with no reasoning or analysis.

12.     Commerce's denials of LE Commodities' exclusion requests despite Commerce's failure to verify the objector's claims that were insufficient under subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705, demonstrate that the Department ceded the entire exclusion process to the objectors, without giving any real consideration to the actual record evidence regarding LE Commodities' requests. Commerce's disregard of its obligation to engage in fair, reasoned decision-making mandates reversal.

## JURISDICTION

13.     This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(1)(B).

14.     Section 1581 of Title 28 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .

tariffs, duties, fees, or other taxes on the importation of merchandize for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), and "administration and enforcement with respect to the matters referred to in paragraphs (A)–(C) of this subsection and subsections (a)–(h) of this section." *Id.* § 1581(i)(1)(D).

15.    Section 232 is a law, "providing for tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees. Thus, this matter involves the administration and enforcement of matters referred to in 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

16.    Plaintiff imports the subject steel and supplies it to distributors in North America that, in turn, sell the steel for use in the dairy, food, and beverage processing industries.

17.    As the importer of record, Plaintiff was required to pay the 25 percent *ad valorem* tariff imposed by Proclamation 9705 on its imports of the subject steel into the United States.

18.    Defendant United States is the federal government to which Section 232 tariffs are paid and is the statutory defendant under 28 U.S.C. § 1581(i).

19.    Defendant Joseph R. Biden currently holds the position of President of the United States. In this capacity, he oversees the implementation of Proclamation 9705 that is the subject of this Complaint.

20.    Defendant Commerce is the agency responsible for reviewing and granting or denying Section 232 exclusion requests.

21.    Defendant Gina Raimondo currently holds the position of the Secretary of Commerce and is named in this Complaint in her official capacity as such.

22.    Defendant U.S. Customs and Border Protection is the agency that administers and

enforces Section 232 tariffs, including the 25 percent *ad valorem* tariffs imposed on certain imports of steel under Proclamation 9705.

23.    Defendant Chris Magnus is the Commissioner of U.S. Customs and Border Protection. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under Proclamation 9705 and is named in this complaint in his official capacity.

## STANDING

24.    Plaintiff has standing to bring this action pursuant to 28 U.S.C. § 2631(i). That statutory subsection provides as follows: "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." Section 702 provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

25.    Plaintiff is the importer of record in the United States and paid and continues to pay Section 232 steel tariffs on the subject steel as a result of Commerce's wrongful denial of LE Commodities' requests for exclusions from Section 232 steel tariffs.

26.    Plaintiff is therefore a "person . . . adversely affected or aggrieved" by Commerce's action pursuant to Proclamation 9705, within the meaning of 5 U.S.C. § 702, and has suffered and continues to suffer concrete and particularized injury from Commerce's action under Proclamation 9705.

## TIMELINESS OF THIS ACTION

27.    Plaintiff contests action taken by Defendants that resulted in the denial of its requests for exclusion from Section 232 steel tariffs. LE Commodities' claims accrued at the

earliest on the date that Commerce first posted notices of its decisions to deny the exclusion

requests, which occurred after August 26, 2020. The instant action was filed within two years of

the date that Commerce first posted notices of its denial of LE Commodities' requests for

exclusion from Section 232 steel tariffs. This action is therefore timely because it is filed

within two  years after the cause of action first accrued. 28 U.S.C. § 2636(i).

## STATEMENT OF FACTS

I.     **Statutory and Regulatory Background**

28.     Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862),

authorizes the Secretary of Commerce, in coordination with the Secretary of Defense, to conduct

an investigation "to determine the effects on the national security of imports" of any articles.

Upon completing this investigation, the Secretary must provide the President with a report

advising whether the articles under investigation are "being imported into the United States in

such quantities or under such circumstances as to threaten to impair the national security." 19

U.S.C. §§ 1862(b)(1)(A), (3)(A).

29.     If the President concurs with the Secretary's finding that a threat exists, the

President shall "determine the nature and duration of the action that, in the judgment of the

President, must be taken to adjust the imports of the article and its derivatives so that such imports

will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii).

30.     Pursuant to Section 232, on March 8, 2018, President Trump issued Proclamation

9705, imposing additional duties on imports of steel. The Proclamation directed the Secretary of

Commerce to grant exclusions from these tariffs if the Secretary determines that any steel product

for which an exclusion is requested is not "produced in the United States in a sufficient and

reasonably available amount or of a satisfactory quality." *Adjusting Imports of Steel into the*

*United States*, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018).

31.    On March 19, 2018, Commerce, through its Bureau of Industry and Security

("BIS"), issued an interim final rule (codified at 15 C.F.R. pt. 705, supplement 1) setting forth the

circumstances in which the Department would grant a tariff exclusion to directly affected U.S.

businesses. Following a notice and comment period, on September 11, 2018, the Secretary

supplemented the rules for tariff exclusion requests. *See Submissions of Exclusion Requests and*

*Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018).

32.    The regulations adopted by Commerce sets forth the procedures for affected

parties to request tariff exclusions. They also provide that a domestic producer may object to any

such request if that producer is capable of "immediately" providing the imported product in the

United States.

33.    The Department's regulations specify that a product is "not produced in the United

States in a sufficient and reasonably available amount" if:

> the amount that is needed by the end user requesting the exclusion is not available
> immediately in the United States to meet its specified business activities. Available
> "immediately" means that a product (whether it is currently being produced in the United
> States, or could be produced in the United States) can be delivered by a U.S. producer
> "within eight weeks", or, if that is not possible, by a date earlier than the time required for
> the requester to obtain the entire quantity of the product from the requester's foreign
> supplier.

Subsection (c)(6)(i) to Supplement No. 1 to 15 C.F.R. pt. 705.

34.    Commerce's regulations plainly and sensibly place the burden on an objector to

demonstrate that it can produce the "substitute product" within the requisite timeframe:

> The objection should clearly identify, and provide support for, its opposition to the
> proposed exclusion, with reference to the specific basis identified in, and the support
> provided for, the submitted exclusion request. If the objector is asserting that it is not
> currently producing the steel or aluminum identified in an exclusion request but can
> produce the steel or aluminum and make that steel or aluminum available "immediately"
> in accordance with the time required for the user of steel or aluminum in the United

States to obtain the product from its foreign suppliers, the objector must identify how it will be able to produce and deliver the quantity of steel or aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product. It is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times. This requirement includes specifying in writing to Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting. For example, a summary timeline that specifies the steps that will occur over the weeks needed to produce that steel or aluminum would be helpful to include, not only for the Department of Commerce review of the objection, but also for the requester of the exclusion and its determination whether to file a rebuttal to the objection.

Subsection (d)(4) to Supplement No. 1 to 15 C.F.R. pt. 705.

## II.     LE Commodities' Requests for Exclusion from the Section 232 Tariffs

35.     On December 20, 2019, LE Commodities submitted a request for exclusion from the Section 232 tariffs for the subject steel (exclusion no. 49045) and submitted another six requests for exclusion on December 21, 2019 (exclusion nos. 49065, 49064, 49063, 49062, 49061, and 49053). LE Commodities submitted a request on April 30, 2020 (exclusion no. 84999), a request on July 27, 2020 (exclusion no. 117044), and two requests on November 24, 2020 (exclusion nos. 164173 and 164142).  Another three exclusion requests were submitted between July 28, 2021 and September 19, 2021 (exclusion nos. 238015, 249551, and 248094). All of these exclusion requests are identified in **Exhibit 1**. LE Commodities' submissions to the Department demonstrated that the subject steel was not sufficiently available in the United States because no domestic producer could supply LE Commodities the subject steel within LE Commodities' required timeframe.

36.     LE Commodities submitted supporting documents to substantiate its delivery lead times identified in its exclusion requests. LE Commodities submitted as an attachment to exclusion ID nos. 249551 and 248094 a representative sales note from its supplier in Thailand,

substantiating the lead times that LE Commodities asserted in its exclusion requests. The order, dated June 17, 2021, shows the proposed shipment date for the subject steel (ASTM A-270) as "45-60 days after confirming Proforma Invoice." This documentation supports LE Commodities' conservative 75-day estimation made in exclusion ID no. 249551 and the 45-day estimation made in exclusion ID no. 248094 for manufacture from purchase order date.

37.     As noted on the schedule in **Exhibit 1**, the exclusion requests covered stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy types 304/304L and 316/316L. Nine of the 14 exclusion requests covered stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy type 304/304L (exclusion nos. 49045, 49064, 49062, 84999, 11704, 164173, 164142, 238015, and 248094). Five of the 14 exclusion requests covered stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy type 316/316L (exclusion nos. 49065, 49063, 49061, 49053, and 249551).

38.     After Commerce accepted LE Commodities' exclusion requests, United Industries Inc. ("United") filed objections to each of the 14 exclusion requests. United claimed without any support that it could manufacture the subject steel in the quality and quantity LE Commodities needed within the time provided for in subsection (c)(6)(i) to Supplement No. 1 to 15 C.F.R. part 705 – within eight weeks or within the time required for LE Commodities to obtain the entire quantity of the product from its' foreign supplier.

39.      In its objections to exclusion request nos. 49045, 49064, 49062, 84999, 117044, 164173, 164142 and  238015, covering stainless steel welded sanitary tubing of alloy type 304/304L,  United asserted that it required 6 days to deliver from the time of shipment from United's facility to LE Commodities' loading dock, and 35 days from receipt of the purchase

order to produce the subject steel and claimed both that the subject steel is manufactured every 4-6 weeks at United's Selmer, Tennessee facility and that the subject steel is manufactured every week at United's Selmer, Tennessee facility.

40.     In its objections to exclusion request nos. 49061 and 49053, covering stainless steel welded sanitary tubing of alloy type 316/316L, United asserted that it required 6 days to deliver from the time of shipment from United's facility to LE Commodities' loading dock, and 35 days from receipt of the purchase order to produce the subject steel and claimed both that the subject steel is manufactured every 4-6 weeks at United's Selmer, Tennessee facility and that the subject steel is manufactured every week at United's Selmer, Tennessee facility.

41.     United stated in two of its objections to LE Commodities' exclusion requests covering stainless steel welded sanitary tubing of alloy type 316/316L submitted on December 21, 2019 (exclusion nos. 49065 and 49063) that it required 6 days to deliver from the time of shipment from United's facility to LE Commodities' loading dock, and 35 days from receipt of the purchase order to produce stainless steel sanitary tubing and claimed both that the such steel is manufactured every 4-6 weeks at United's Selmer, Tennessee facility and that such steel is manufactured every week at United's Selmer, Tennessee facility.

42.     United stated in its objections to LE Commodities' exclusion request nos. 249551 and 248094 that it required 6 days to deliver from the time of shipment from United's facility to LE Commodities' loading dock , and 45 days from receipt of the purchase order to produce the subject steel. United also claimed in these two objections that the subject steel is manufactured every 4-6 weeks at United's Selmer, Tennessee facility and that its lead time is the same as the lead time offered by foreign sources.

43.     United failed to provide any support or supplemental evidence, including purchase orders, invoices, and/or shipping documents, that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections.  Thus, each of United's objections were insufficient under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705 and should have been disregarded by Commerce.

44.     United's failure to provide any support or supplemental evidence to prove it could produce and ship the subject steel within the time frames asserted in each of its objections evidences that no such evidence existed and that United could not establish "immediate" availability of the subject product in the United States.

45.     In its objection to LE Commodities' exclusion request no. 49063, covering stainless steel welded sanitary tubing of alloy type 316/316L, United did not clearly identify the tubing alloy type to which its objection related.  United stated in the comment field to questions 3.a-d of the objection form that it was capable of producing and shipping within the alleged lead times the tubing of *alloy 304/304L*, and not the tubing of alloy 316/316L that was the subject of the exclusion request. United stated: "A270 304 3A Sanitary tubing is manufactured every week at United Industries Selmer, TN faclity[sic].  5000'-15,000' is stocked in our warehouse.. . ."

46.     In addition, United failed to provide any support or supplemental evidence to prove it could produce and ship the subject steel within the time frames asserted in its objection to LE Commodities' exclusion request ID no. 49063. Accordingly, United's objection was deficient and should have been disregarded by Commerce.

47.     In its objection to LE Commodities' exclusion request no. 49065, covering stainless steel welded sanitary tubing of alloy type 316/316L, United did not clearly identify the tubing alloy type to which its objection related.  United stated in the comment field to questions

3.a-d of the objection form that it was capable of producing and shipping within its alleged lead times the tubing of alloy *304/304L*, and not the tubing of alloy 316/316L that was the subject of the exclusion request. United stated: "Industry standard A270 304 3A #a Sanitary tubing is manufactured every week at United Industries Selmer, TN facility.  5000'-15,000' is stocked in our warehouse.. . ."

48.     In addition, United failed to provide any support or supplemental evidence to prove it could produce and ship the subject steel within the time frames asserted in its objection to LE Commodities' exclusion request ID no. 49065. Accordingly, United's objection was deficient and should have been disregarded by Commerce.

49.     LE Commodities filed rebuttals to 12 of United's 14 objections in which LE Commodities provided information demonstrating that United would not be able to produce and deliver the requested quantity within eight (8) weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier.

50.     In its rebuttals, LE Commodities submitted as an attachment representative purchase orders from its supplier substantiating the lead times that LE Commodities asserted in its exclusion requests. LE Commodities submitted representative orders as an attachment to the rebuttals relating to exclusion ID nos. 238015, 249551, and 248094.

51.     With respect to LE Commodities' rebuttal relating to exclusion ID no. 238015, LE Commodities submitted as an attachment a representative sales note from its supplier in Thailand, substantiating the lead times that LE Commodities asserted in its exclusion requests. The order, dated June 17, 2021, shows the proposed shipment date for the subject steel (ASTM A-270) as "45-60 days after confirming Proforma Invoice." This documentation supports LE

Commodities' conservative 45-day estimation made in exclusion ID no. 238015 for manufacture from purchase order date.

52.    With respect to LE Commodities' rebuttals relating to exclusion ID nos. 249551 and 248094, LE Commodities submitted as an attachment a second, different sales note than that attached to LE Commodities' exclusion ID nos. 249551 and 248094. The representative sales order from LE Commodities' supplier in Thailand, substantiates the lead times that LE Commodities asserted in its exclusion requests. The note, dated May 24, 2021, shows the proposed shipment date for the subject steel (ASTM A-270) as "30-45 days after confirming Proforma Invoice." LE Commodities also submitted as an attachment a bill of lading, dated June 27, 2021, covering the shipment of the goods under the representative sales note. The bill of lading was issued 34 days after the date on which the sales order was issued (May 24, 2021). Accordingly, this documentation supports LE Commodities' conservative 75-day estimation made in exclusion ID no. 249551 and the 45-day estimation made in exclusion ID no. 248094 for manufacture from purchase order date.

53.    In its rebuttals to United's objections to LE Commodities' exclusion ID nos. 249551 and 248094, LE Commodities specifically noted that it had received industry information, consisting of emails from unrelated third parties, confirming that United had lead times well beyond the time frames asserted in its objections. LE Commodities submitted these email communications to Commerce confidentially. The emails reflected that as of mid-2021, United was not capable of manufacturing and shipping the subject steel within 60 days, as United alleged in its objections. The first email reflected that United had a production lead time of 40 weeks (280 days). The second email reflected that United quoted a 62 week (434 days) lead time. These e-mails made clear that United's assertions that it could produce the subject steel within

LE Commodities' required timeframe were unsubstantiated and undermined by previous representations United itself made. *See, e.g.*, **Exhibit 3**.

54.     United only filed surrebuttals to ten of LE Commodities' rebuttals. In these surrebuttals, United again failed to provide Commerce any objective evidence of its actual ability to produce the product the subject steel in the quantities and time frames required by LE Commodities. United did not provide documentary evidence such as purchase orders, invoices, or shipping documents, thus further demonstrating that no such evidence existed and United could not establish "immediate" availability of the subject product in the United States.

55.     United only submitted attachments to eight of its surrebuttals, relating to exclusion nos. 49053, 49061, 49062, 49063, 49064, 49065, 84999, and 117044. The attachment for each of these eight surrebuttals consisted of only a letter written by Dan Brockmann, Vice President of Sales & Marketing at United, and email communications between United and a customer, neither of which served as objective evidence of United's actual ability to product the subject steel in the quantities and time frames required by LE Commodities. The email communications between United and a customer do not include discussion of production or delivery lead times but simply identify sample prices and examples of the quantities that the LE Commodities customer might order for various sizes of tubing.

56.     United did not submit any surrebuttal relating to exclusion ID nos. 49045, 164142, 164173, and 248094.

57.     Because United did not have the ability to provide the subject steel within eight weeks or within the time required for LE Commodities to obtain the entire quantity of the product from its' foreign supplier, it could not provide the steel "immediately" as that term is defined by Supplement No. 1 to 15 C.F.R. Part 705 and, therefore, the subject steel in both the

304/304L and 316/316L alloy types was not produced in the United States in a sufficient and reasonably available amount.

### III.    Commerce's Denial of LE Commodities' Exclusion Requests

58.    United failed to provide any support or supplemental evidence for its assertions in any of its objections that it could manufacture and timely provide the subject steel in the quantities needed by LE Commodities, as required under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705. LE Commodities filed rebuttals to 12 of United's 14 objections with evidence substantiating it claims that the subject steel was not available in a "sufficient and reasonably available amount" and/or in a "satisfactory quality." Nevertheless, Commerce denied each of the 14 exclusions at issue.

59.    On August 26, 2020, Commerce issued its decisions for exclusion nos. 84999, 49065, 49064, 49063, 49062, 49061, and 49053, in which Commerce simply recited, verbatim, boilerplate rejection language – citing no evidence and providing no reasoning whatsoever to support its conclusions.

60.    Commerce's denials each parroted the following generic, conclusory language as a basis for its decisions:

> In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all of the evidence presented, that the product referenced in the above-captioned exclusion request is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for an exclusion.
>
> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

61.     This rote, unreasoned denial of seven of LE Commodities' exclusion requests without any explanation or any consideration of the evidence is, on its face, arbitrary and capricious.

62.     Commerce's decisions denying LE Commodities' requests are part of a broader pattern in which the Department has rejected hundreds of exclusion requests by providing the same pro forma, conclusory explanation – completely devoid of reasoning or analysis. The one common denominator that permeates all these cases is that large competitors, including United, filed objections to the requests. In fact, according to a study conducted by the MERCATUS CENTER at George Mason University, approximately 99% of steel tariff exclusion requests were denied when large companies such as United filed an objection. *See* Christine McDaniel & Danielle Parks, Tariff Exclusion Requests: A One-Year Update, MERCATUS CENTER (Apr. 11, 2019), www.mercatus.org/bridge/commentary/tariff-exclusion-requests-one-year-update, attached as **Exhibit 4**, at 1 ¶ 2, 3.

63.     The pattern that has emerged is so troubling that it led Commerce's Inspector General to warn the Secretary of Commerce about improper influences in the process and the appearance of impropriety presented by the Department's conduct. *See* OIG Management Alert attached as **Exhibit 2**.

64.     The irregularities identified by the Inspector General included Commerce's reconsideration of approved exclusion requests "at the request of an objector," and the Department's revision of a review criterion "within days of receiving a communication from an objector regarding the criterion." *Id*. at 2-3. The Inspector General also noted that Commerce officials had conducted undocumented, off-the-record *ex parte* communications with some

objectors. *Id*. at 3. The Inspector General therefore expressed serious concern that the exclusion process lacked transparency and impartiality:

> This gives the appearance that Department officials may not be impartial or transparent and are potentially making decisions based on evidence not contained in the official record for specific exclusion requests.

*Id*.

65.     When Commerce issued its decisions for exclusion nos. 164173, 164142, 117044, and 49045, Commerce simply accepted United's claims that it could manufacture and timely provide the subject steel in the quantities needed by LE Commodities and responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments provide evidence to contradict the objector's claims [concerning quantity]?" Commerce did not provide sufficient reasoning to support its conclusions, and it improperly accepted United's deficient objections that lacked any support or supplemental evidence for United's claims, which is required under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705.

66.     This unreasoned denial of LE Commodities' exclusion request nos. 164173, 164142, 117044, and 49045 without sufficient explanation or actual consideration of the evidence is, on its face, arbitrary and capricious.

67.     In its decision memorandum denying exclusion request ID. no. 249551, Commerce responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments provide evidence to contradict the objector's claims [concerning quantity]?" even though LE Commodities had provided documentation contradicting objector's claims.  Accordingly, Commerce did not provide sufficient reasoning to support its conclusion and it improperly accepted United's deficient objections that lacked any support or supplemental

evidence for United's claims, which is required under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705.

68.     In its decision memorandum denying exclusion request ID. no. 249551, Commerce miscalculates the delivery times in LE Commodities' exclusion request. LE Commodities estimated 90 days to take delivery of the subject steel from the purchase order date (field 2.d).  Included within this total 90-day time frame is 75 days to manufacture the subject steel from the execution of a binding purchase order (field 2.e), and 30 days to ship the product from the foreign port of departure to the requestor's loading dock (field 2.f). Commerce explained that it calculated the requestor's import delivery time by adding "2d + 2f of the exclusion request. Using this formula, Commerce determined that LE Commodities' total import delivery time was 120 days (90+30). Commerce's calculations of the claimed import delivery times are in error.  Field 2.d in the exclusion request estimate the ***total*** delivery time from purchase order date to date of delivery.  The total delivery time, as identified in field 2.d of the request, should be the sum of fields 2.e and 2.f in the exclusion.  Accordingly, Commerce miscalculated the total import delivery times. Thus, Commerce's decision is based on flawed reasoning and is in error.

69.     Commerce made the same type of calculation error regarding total import delivery times in its decisions denying exclusion ID numbers 248094 and 238015 when it added the times in 2.d and 2.f.

70.     In its decision memorandum denying exclusion request ID. no. 248094, Commerce responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments provide evidence to contradict the objector's claims [concerning quantity]?" even though LE Commodities had provided documentation contradicting objector's

claims.  Accordingly, Commerce did not provide sufficient reasoning to support its conclusion and it improperly accepted United's deficient objections that lacked any support or supplemental evidence for United's claims, which is required under subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705.

71.     With respect to exclusion ID no., 238015, LE Commodities filed a rebuttal which included emails from unrelated third parties, confirming that United had lead times well beyond the time frames asserted in its objections. LE Commodities submitted these email communications to Commerce confidentially. LE Commodities also submitted with its request a representative sale note, which supported the lead times that LE Commodities asserted in its exclusion requests. United submitted a surrebuttals, but failed to provide any supporting evidence of its alleged production lead times, in contravention of subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705. It was incumbent upon United to support its surrebuttals with documentation demonstrating its alleged production and delivery lead times.

72.     In its decision memorandum denying exclusion request ID. no. 238015, Commerce responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments provide evidence to contradict the objector's claims [concerning quantity]?" even though LE Commodities had provided documentation contradicting objector's claims.  Accordingly, Commerce did not provide sufficient reasoning to support its conclusion and it improperly accepted United's deficient objections that lacked any support or supplemental evidence for United's claims, which is required under subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705.

73.     Additionally, in its decision memo denying exclusion request ID. no. 238015, Commerce did not use the estimation that United provided in field 3b of its objection, stating that

United "explains that it 'is shipping product in as little time as 2 days, to 16 weeks.' This is different from the 2 days provided by United Industries in 3.b of its objection. As such, ITA has replaced the 2 days reported by United Industries to ship from its U.S. manufacturing plant with the midpoint of the range provided, which is 57 days." United inaccurately completed the objection form and admitted that its shipping time could take as long as 16 weeks (112 days). However, Commerce failed to properly consider in its determination the 16 week shipping time that United provided and instead adjusted United's estimation, providing its own estimation of United's shipping time.

74.    This unreasoned denial of LE Commodities' exclusion request nos. 249551, 248094, and 238015 without sufficient explanation or actual consideration of the evidence is, on its face, arbitrary and capricious.

75.    Commerce's denials of LE Commodities' exclusion requests demonstrate that Commerce acted without regard to record evidence, disregarded its obligation to engage in fair, reasoned decision-making, and made decisions on plaintiff's exclusion requests that were arbitrary.

## STATEMENT OF CLAIMS

### COUNT 1: VIOLATIONS OF APA, 5 U.S.C. §§ 701-706

76.    Plaintiff incorporates by reference paragraphs 1-75 of this Complaint.

77.    LE Commodities submitted 14 requests for exclusion from the Section 232 tariffs for stainless steel products as summarized in **Exhibit 1**. Commerce denied each of the exclusion requests.

78.    Applying the standards set forth in Commerce's regulation (Supplement No. 1 to 15 C.F.R. pt. 705) to the evidence in the record, the only reasonable conclusion that the

Department could properly have reached with regard to these exclusion requests was that LE Commodities cannot obtain the subject steel in the U.S. market in a sufficient quantity or quality, on a timely basis to replace the steel it currently imports and that United's objections were deficient. Accordingly, LE Commodities was and remains entitled to the requested tariff exclusions.

79.      Commerce's decisions denying LE Commodities' requests for exclusions from the Section 232 steel tariffs, without an evidentiary basis and without any reasoned basis for doing so in light of the fact that United's objections were deficient under subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. They were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *Id*. §§ 702, 706.

**COUNT 2: FIFTH AMENDMENT VIOLATIONS**

80.      Plaintiff incorporates by reference paragraphs 1-79 of this Complaint.

81.      The Fifth Amendment to the Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

82.      Plaintiff has a property interest in the customs duties paid on the imports of these stainless steel products. The Federal Circuit recognizes a property interest for Fifth Amendment due process purposes for importers facing a deprivation of their property by the federal government. *NEC Corp. v. United States*, 151 F.3d 1361, 1370-71 (Fed. Cir. 1998). The U.S. Supreme Court dictates that: "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 323 (quoting *Morrissey v. Brewer*,

408 U.S. 471, 481 (1972).

83.     Applying the standards set forth in Commerce's regulation (Supplement No. 1 to 15 C.F.R. pt. 705) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that LE Commodities cannot obtain the subject steel in the U.S. market in a sufficient quantity or quality, on a timely basis to replace the steel it currently imports and that United's objections were deficient. Accordingly, LE Commodities was and remains entitled to the requested tariff exclusions and therefore is entitled to the 232 duties paid on its imports of stainless steel products for which it requested tariff exclusions. Thus, Plaintiff's due process rights protected under the Fifth Amendment were violated when it was denied the requested tariff exclusions to which it is entitled.

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiff respectfully requests that this Court enter judgment as follows:

(1)     Declaring that Commerce's denials of LE Commodities' exclusion requests were arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 et seq.);

(2)     Declaring that Plaintiff is entitled to the requested exclusions from the Section 232 steel tariffs, in accordance with Proclamation 9705 and Supplement No. 1 to 15 C.F.R.

(3)     Directing U.S. Customs and Border Protection to refund the Section 232 tariffs previously paid by LE Commodities on all entries for consumption of the subject steel products;

(4)     Alternatively, remanding the matter to Commerce for proper treatment and consideration, in accordance with the requirements of the APA;

(5)     Award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(6)     Grant such additional relief as the Court may deem just and proper.

Respectfully Submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP


*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Katherine A. Dobscha

599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400


*Counsel for Plaintiff LE Commodities, LLC.*

Dated: August 24, 2022

# EXHIBIT 1

| | Product description | Exclusion Request ID No. | Submission Date | Decision Date |
|---|---|---|---|---|
| 1 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 49045 | 12/20/2019 | 11/25/2020 |
| 2 | Stainless Steel Welded Sanitary Tubing Type 316/316L Cold Rolled Polished Grit 180 OD ID | 49065 | 12/21/2019 | 8/26/2020 |
| 3 | Stainless Steel Welded Sanitary Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 49064 | 12/21/2019 | 8/26/2020 |
| 4 | Stainless Steel Welded Sanitary Tubing Type 316/316L Cold Rolled Polished Grit 180 OD ID | 49063 | 12/21/2019 | 8/26/2020 |
| 5 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 49062 | 12/21/2019 | 8/26/2020 |
| 6 | Stainless Steel Welded Sanitary Tubing Type 316/316L Cold Rolled Polished Grit 180 OD ID | 49061 | 12/21/2019 | 8/26/2020 |
| 7 | Stainless Steel Welded Sanitary Tubing Type 316/316L Cold Rolled Polished Grit 180 OD ID | 49053 | 12/21/2019 | 8/26/2020 |
| 8 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 84999 | 4/30/2020 | 8/26/2020 |
| 9 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 117044 | 7/27/2020 | 11/25/2020 |
| 10 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 164173 | 11/24/2020 | 2/13/2021 |
| 11 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 164142 | 11/24/2020 | 2/13/2021 |
| 12 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180 | 238015 | 7/28/2021 | 11/5/2021 |
| 13 | Stainless Steel Welded Sanitary Tubing Type 316/316L Cold Rolled Polished Grit 180 OD ID | 249551 | 9/19/2021 | 12/31/2021 |
| 14 | Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit 180 OD ID | 248094 | 9/12/2021 | 12/31/2021 |

# EXHIBIT 2



UNITED STATES DEPARTMENT OF COMMERCE
Office of Inspector General
Washington, D.C. 20230

October 28, 2019

**INFORMATION MEMORANDUM FOR SECRETARY ROSS**

**FROM:**     *Carol N. Rice*
              Carol N. Rice
              Assistant Inspector General for Audit and Evaluation

**SUBJECT:**  *Management Alert: Certain Communications by Department*
             *Officials Suggest Improper Influence in the Section 232*
             *Exclusion Request Review Process*
             Final Memorandum No. OIG-20-003-M

Attached is a management alert regarding a lack of transparency that contributes to the appearance of improper influence in decision-making for tariff exclusion requests under Section 232 of the Trade Expansion Act of 1962, as amended.[1] Issues regarding this topic came to our attention during fieldwork for the ongoing audit of the Bureau of Industry and Security's and International Trade Administration's processes and procedures for reviewing and adjudicating Section 232 exclusion requests.

Consistent with the Inspector General Act of 1978, as amended,[2] we are notifying Bureau of Industry and Security leadership of the potential risks that could affect the management of the Section 232 exclusion request review process.

We are not requesting a formal response to this management alert, as the key issues discussed in it were briefed to cognizant Departmental officials in advance of issuance. This management alert will be posted to our public website. We plan to include the information in a full audit report to be issued at a later date.

If you have any questions or concerns about this memorandum, please contact me at (202) 482-6020 or Terry Storms, Division Director, at (202) 482-0055.

---

[1] 19 U.S.C. § 1862.

[2] The Inspector General Act of 1978, as amended, establishes that offices of inspectors general will provide a "means for keeping the head of the establishment and the Congress fully and currently informed about problems and deficiencies relating to the administration of such [establishment's] programs and operations and the necessity for and progress of corrective action." 5 U.S.C. App., § 2(3).



# Management Alert

## Certain Communications by Department Officials Suggest Improper Influence in the Section 232 Exclusion Request Review Process

October 28, 2019                    Final Memorandum No. OIG-20-003-M

## Key Issues

Department officials and interested parties have discussed information about pending exclusion requests that was not included in the official record. Following some of these off-record communications, Department officials took subsequent action consistent with such communications, giving the appearance that the Section 232 exclusion request review process is not transparent and that decisions are not rendered based on evidence contained in the record. Additionally, the Bureau of Industry and Security (BIS) changed an internal criterion used to review exclusion requests before posting them online at the request of an objector, creating the perception of undue influence.

## Proposed Actions for Change

BIS should immediately take action to ensure the transparency of the Section 232 exclusion request review process. Specific actions BIS should consider include (1) regarding all decisions as final once they are posted online, or amending the rules to allow for appeals; (2) creating a formal process for modifying internal criteria that is used to review exclusion requests, in order to ensure internal criteria are properly vetted and approved prior to implementation; and (3) documenting all discussions with interested parties, and directing all emails concerning specific exclusion requests to BIS' official organizational email addresses, to ensure that the correspondence becomes part of the official record.

## Background

BIS is the lead entity that administers the exclusion request review process for steel and aluminum imports subject to tariffs imposed pursuant to Section 232 of the Trade Enhancement Act of 1962, as amended.[3] The International Trade Administration's (ITA's) Enforcement and Compliance (E&C) business unit provides recommendations to BIS on exclusion requests, to which some domestic steel or aluminum producers object.

Exclusion request decisions are to be made on the basis of product (per the 10-digit Harmonized Tariff Schedule United States Code) and the specific physical characteristics of the product (e.g., dimensions or chemical composition).[4] BIS assesses exclusions requests for completeness and accuracy in a pre-clearance

---

[3] 19 U.S.C. § 1862.

[4] The Harmonized Tariff Schedule of the United States provides the applicable tariff rates and statistical categories for all merchandise imported into the United States. The Schedule is based on the international Harmonized System, the global system of nomenclature that is used to describe most world trade in goods.

Management Alert: Certain Communications by Department Officials Suggest Improper
Influence in the Section 232 Exclusion Request Review Process

Case 1:22-cv-0242-mvr   Document 29   Filed 08/25/22   Page 30 of 54

process and, if accepted, posts the request online for public review.[5] After it is posted online, the exclusion request goes through a three-stage process: (1) allowance for rebuttal and surrebuttal by objectors and requesters (i.e., interested parties), (2) evaluation and a recommendation by E&C, and (3) a final decision by BIS that is made publically available.[6]

# Our Observation(s) to Date

On October 29, 2018, we initiated an audit with the objectives to determine whether (1) BIS and ITA adhere to the processes and procedures in place to review Section 232 product exclusion requests and (2) exclusion request decisions are reached in a consistent and transparent manner.[7] During our fieldwork, the following issues came to our attention that we believe require your immediate attention:

- Evidence of an unofficial appeals process exists.

- Communications with an objector prompted a change in internal review criteria.

- Off-record discussions between interested parties and Department officials are not documented.

We believe these issues give the perception that the Section 232 exclusion request review process is neither transparent nor objective.

## Evidence of an Unofficial Appeals Process Exists

The regulations governing the Section 232 exclusion request review process[8] do not provide for appeals of final decisions; that is, the process ends when BIS publicly posts its decisions. However, we have seen evidence that BIS officials reconsidered several approved and posted exclusion requests (for which there were no procedural errors) at the request of an objector. We note that while BIS took action to reconsider these decisions, we have no evidence that these exclusion requests were subsequently rescinded or otherwise amended.

## Communications with an Objector Prompted a Change in Internal Review Criteria

Prior to publicly posting exclusion requests, BIS evaluates them during a pre-clearance phase using internally developed criteria to ensure completeness and correctness. We identified that BIS revised a

---

[5] Through June 12, 2019, exclusion requests were posted on *www.regulations.gov*. Since June 13, 2019, requests have been posted on *www.commerce.gov/page/section-232-investigations*.

[6] For additional background about the exclusion request review process, see: Department of Commerce Office of Inspector General, July 1, 2019. *One Year Later—A Look at the Timeliness and Completion Status of Section 232 Product Exclusion Requests*, OIG-19-017-M. Washington, DC: DOC OIG.
Available at https://www.oig.doc.gov/OIGPublications/OIG-19-017-M.pdf (accessed September 18, 2019).

[7] DOC OIG, October 29, 2018. *Audit of BIS and ITA Processes and Procedures for Reviewing and Adjudicating Section 232 Exclusion Requests (#2019-333)*. Washington, DC: DOC OIG.

[8] DOC Bureau of Industry and Security, "Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum into the United States; and the Filing of Objections Submitted to Exclusion Requests for Steel and Aluminum," 83 Fed. Reg. 12106, March 19, 2018, and "Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum," 83 Fed. Reg. 46026, September 11, 2018.

*Management Alert: Certain Communications by Department Officials Suggest Improper Influence in the Section 232 Exclusion Request Review Process*

Case 1:22-cv-0(...) Page 31 of 54

criterion for reviewing a specific attribute[9] in the exclusion request form template within days of receiving a communication from an objector regarding the criterion. We found no evidence that other interested parties, such as requesters, were aware of the communication and had an opportunity to express their views on the issue. This follow-on action gives the appearance of improper influence to the process by an interested party. This criterion change will likely result in an increase in the number of exclusion requests rejected during pre-clearance.

## Off-Record Discussions Between Interested Parties and Department Officials Are Not Documented

Just prior to the inception of the exclusion request review process on March 19, 2018, Department officials met with interested parties to discuss exclusion requests. Of the more than 100 meetings and telephone conversations between Department officials and interested parties that we examined for the period March 1, 2018, through March 31, 2019, none had an official record of the subjects discussed during the meeting. We also noted that, during these meetings, interested parties sometimes planned to discuss information about pending exclusion requests with Department officials that is not part of the official record used in BIS' or ITA's review. However, because there are no records of discussions, it is not clear whether pending exclusion requests were actually discussed or if BIS or ITA considers the information discussed at these meetings while rendering decisions. Nonetheless, this gives the appearance that Department officials may not be impartial or transparent and are potentially making decisions based on evidence not contained in the official record for specific exclusion requests.

# Our Future Work

The concerns presented in this memorandum and any action taken by BIS as a result of this management alert will be considered in our future audits of BIS. This management alert will be posted to our public website.

---

[9] Attributes include specifications such as the chemical composition, dimensions, and performance data of the product included in the exclusion request.

# **EXHIBIT 3**



# U.S. Department of Commerce

Section 232 Steel and Aluminum

## Rebutting Organization Information

**Full Organization Legal Name**
LE Commodities, LLC

**Street Address**
2807 Hillview Court

**City**
Fairfield

**State**
California

**Zip Code**
94534

**Headquarters Country**
United States

**Point of Contact Name**
Elaine Moreira

**Phone Number**
707-330-7678

**E-mail Address**
elaine@lecommodities.com

**Web Site Address**
http://lecommodities.com/

## Rebuttal of Objections Filed Against An Exclusion Request

Exclusion Request number
248094

Objection to Exclusion Request Identifier #
90300

Does this rebuttal address a substitute or an identical product?
Identical Product

Are you submitting confidential business information with this form? (If yes, please email it to 232rebuttals@doc.gov and submit a public version with this form. Confidential business information related to this rebuttal will not be made available to the public.)
Yes

## The basis of your rebuttal is for the following reason(s):

Manufacturing Time          Yes

Quality                     Yes

Available Quantity          Yes

Delivery Time               Yes

Other (limit: 100 characters)

Please see attached supplement.

# Basis for Rebuttal of Objection Filings

MANUFACTURING TIME Challenging the Objector's assertion that:

The product is currently made in the U.S. or can be manufactured at U.S. facilities within approximately eight weeks
Yes ▼

The Objector does not currently manufacture the identified product at U.S. facilities, but states the time period within which they can do so
No ▼

The Objector can currently manufacture an acceptable substitute product at U.S. facilities within approximately eight weeks.
No ▼

The Objector does not currently manufacture an acceptable substitute product at U.S. facilities, but states the time period within which they can produce an acceptable substitute product.
No ▼

The Objector can manufacture the product within the time frame stated in their Objection filing.
Yes ▼

Please provide a brief explanation of your challenge to the product manufacturing time (limit: 1,000 characters)

Please see attached supplement.

QUALITY Challenging the Objector's assertion that their product is interchangeable with respect to its:

| | |
|---|---|
| Chemical composition | Yes ▼ |
| Dimensional specifications | Yes ▼ |
| Strength | Yes ▼ |
| Toughness | Yes ▼ |
| Ductility | Yes ▼ |
| Magnetic permeability | Yes ▼ |
| Surface finish | Yes ▼ |
| Coatings and composition | Yes ▼ |
| Other technical specifications (e.g., end-use requirements) | Yes ▼ |

Please provide a brief explanation of your challenge to the product manufacturing time (limit: 1,000 characters)

Please see attached supplement.

AVAILABLE QUANTITY Challenging the Objector's assertion that:

Domestic product is available in sufficient quantity.

| Yes ▾ |

The Objector can supply the percentage of product stated in their Objection filing.

| Yes ▾ |

U.S. manufacturers have the capability to manufacture the identified product.

| Yes ▾ |

The Objector has sold or has attempted to sell the product described in the Exclusion Request.

| No ▾ |

Please provide a brief explanation of your challenge to the product manufacturing time (limit: 1,000 characters)

Please see attached supplement.

DELIVERY TIME Challenging the Objector's assertion that:

Domestic product is available for timely delivery from the time the purchase order is received until the product is ready to ship.

| Yes ▾ |

Domestic product is available for timely delivery from manufacturing plant to loading dock.

| Yes ▾ |

Please provide a brief explanation of your challenge to the product manufacturing time (limit: 1,000 characters)

Please see attached supplement.

# Certification

Instruction: This Objection Filing must be submitted by an organization official authorized to certify the document as being accurate and complete.

The undersigned certifies that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge. It is a criminal offense to willfully make a false statement or representation to any department or agency of the United States Government as to any matter within its jurisdiction. [18 U.S.C. 1001 (1984 & SUPP. 1197)]

Company Name

LE Commodities, LLC

Name of Authorizing Official

Elaine Moreira

Title of Authorizing Official

Principal

Phone Number

707-330-7678

Email of Authorizing Official (Email address will be used for submission and withdrawal verification!)

elaine@lecommodities.com

If the Point of Contact is different from the Authorizing Official provide point-of-contact information below.

Point-of-Contact Name

Erik Smithweiss

Title

Attorney

E-mail Address

esmithweiss@gdlsk.com

Phone Number

213-452-0863

Small Business?

## Attachment

[View attachment file](#)

## Published Surrebuttal

| Company | Product | Posted Date | Details |
|---------|---------|-------------|---------|
| No data available in table | | | |

Back

For questions about the exclusion process, please email or call:
[Aluminum232@bis.doc.gov](mailto:Aluminum232@bis.doc.gov) or 202-482-4757 for aluminum-related inquiries, and [Steel232@bis.doc.gov](mailto:Steel232@bis.doc.gov) or 202-482-5642 for steel-related inquiries.



**U.S. Department of Commerce**
1401 Constitution Ave NW
Washington, DC 20230

Accessibility    •    Privacy policy



NEW YORK
WASHINGTON, DC
MILWAUKEE
LOS ANGELES
HONG KONG

<u>DIRECT DIAL/EMAIL</u>
(213) 452-0863
esmithweiss@gdlsk.com

October 21, 2021

<u>Via Electronic Submission</u>
Brad Botwin, Director
Industrial Studies, Office of Technology Evaluation
Bureau of Industry and Security
U.S. Department of Commerce
1401 Constitution Avenue N.W.
Washington, DC 20230

       Re:  LE Commodities, LLC
            Section 232 Aluminum Exclusion Request
            Our Reference:  61358-0320001

Dear Mr. Botwin:

On behalf of our client, LE Commodities, LLC ("LE Commodities"), located at 2807 Hillview Court, Fairfield, California 94534, and pursuant to the Appendix to 15 C.F.R. Part 705, we write in support of the accompanying rebuttal to an objection that United Industries Inc. ("United") filed against LE Commodities' request for exclusion from the tariff set forth in Presidential Proclamation 9705 for certain sanitary stainless steel tubing.  United indicates  that it can manufacture and timely provide the sanitary tubing at issue in the quantities required by LE Commodities; however, as discussed below, United has not provided the support required to substantiate this claim.  Thus, United's objection should be disregarded as insufficient under subsection (d)(4) of the Appendix to 15 C.F.R. Part 705 and LE Commodities' request for exclusion should be granted.



LE Commodities' initial submission stated that the company was entitled to an exclusion because of insufficient availability of the subject steel. In its objection, United challenged this assertion. United stated that the sanitary tubing "is manufactured every 4-6 weeks in the United Industries Selmer, Tennessee facility." United also claimed that it can manufacture the sanitary tubing at issue within 45 days from receipt of the purchase order and ship the product in 60 days. Finally, United indicated that this lead time is the same as the lead time offered by foreign sources.

United's unsupported representations are not a valid objection to LE Commodities exclusion. Subsection (d)(4) of the Appendix to 15 C.F.R. Part 705 states that an objection "…should clearly identify and ***provide support for***, its opposition to the proposed exclusion" and that "[i]t is incumbent on both the exclusion requester, and objecting producers, to ***provide supplemental evidence*** supporting their claimed delivery times [emphasis added]." In this case, United has not provided any support beyond unsubstantiated and self-serving declarations for its position that it can manufacture and ship the subject steel within 60 days as claimed in their objection. As of mid-2021, LE Commodities was advised by unrelated third parties that that the minimum lead time for United had reached 40 weeks (280 days) and, in some cases, as long as 62 ***weeks*** (434 days).[1] E-Mails from these parties are attached as **Exhibit A**. Thus, not only is United's claimed delivery timeline unsubstantiated but also is undermined by previous representations the company itself has made.

---

[1] These email communications are being submitted confidentially to protect third party identity interests.

2



By contrast, LE Commodities asserted in its exclusion request that its foreign suppliers required 45 days to manufacture the subject merchandise and 30 days to deliver to the United States. LE Commodities also provided a representative purchase order from its supplier substantiating these claims. We have also attached a second such example as **Exhibit B**. This exhibit includes a sales note, dated May 24, 2021, showing the proposed shipment date for the sanitary tubing (ASTM A-270) as "**30-45 days** after confirming Proforma Invoice." Also included in **Exhibit B** are the bill of lading and commercial invoice evidencing the sale and shipment of the sanitary tubing covered by the sales note within 45 days from the date of the note. The bill of lading, dated June 27, 2021 and covering the shipment of the goods under the sales note (ASTM A-270, TP304/304L), was issued **34 days** after the date on which the sales note was issued (May 24, 2021). This documentation demonstrates that the Thailand mill can and has actually manufactured the subject sanitary tubing well within the conservative 45-day estimation made by LE Commodities in its exclusion request.



## <u>CONCLUSION</u>

Anecdotal industry information (the emails referenced above) confirm that United has

delivery lead times well beyond the 60 day time frame asserted in its rebuttal, and United has not

met its burden to provide supplemental documentation to demonstrate that it can produce and

ship the product within the time frame asserted in its objection.  In contrast, LE Commodities has

presented documentation of actual deliveries of steel from its foreign supplier that are well

within the delivery lead times stated in LE Commodities' exclusion request.  Accordingly,

consistent with subsection (d)(4) of the Appendix to 15 C.F.R. Part 705, United's objection is

without merit and LE Commodities' exclusion request should be granted.


Best regards,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*Erik Smithweiss*

Erik D. Smithweiss

4

11325591_1

# EXHIBIT A

**REDACTED**

**REDACTED**

**EXHIBIT B**



**THAI-GERMAN PRODUCTS PUBLIC COMPANY LIMITED**          Page 1 of 2

| Original |

99 HOUYPONG-NONGBON ROAD, TAMBON HOUYPONG, AMPHUR
MUANG, RAYONG 21150 THAILAND

| | | | |
|---|---|---|---|
| Tel. | (66)2-261-3300, (66)2-261-9955 | Sales Order No. | ■■■ |
| Fax | 66-2-2612771 , 66-2-2612772 | Date | 24/05/2021 |
| E-mail | | Sales Rep. | Uma |
| URL | http://www.tgpro.co.th | Our Ref. | ■■■ |
| | | Your Ref. | ■■■ |



## SALES NOTE (PROFORMA INVOICE)

| Customer | LE COMMODITIES, LLC(O-00424-00) | Address | 2807 Hillview Court, Fairfield, CA 94534 |
|---|---|---|---|
| Contact | Elaine Moreira, | | |
| Tel. | 707.330.7678 | | |
| Fax | | Destination port | LAEM CHABANG, THAILAND |

**Term & Conditions**

| | |
|---|---|
| Selling Price Conditions | ■■■■ |
| Term of payment | ■■■■■■■■ |

| | |
|---|---|
| Inspection | Mill's inspection is subjected to be final |
| Type of certification | Mill's test certificate to be supplied |
| Type of packing | CRATE |
| Pipe marking details | Mill's standard |
| Product's tolerance | According to ASTM A-270 |
| Proposed shipment date | 30 - 45 days after confirming Proforma invoice. |
| (ex-mill) | |
| Shipping mark | ■■■ |
| | CHARLESTON, USA |
| | CRATE NO. |
| | MADE IN THAILAND |

*+239900.00*
*< 70000.00 >*
*9/69900.00*

| | |
|---|---|
| Delivery allowance | ALLOW PLUS / MINUS 10% IN QUANTITY AND AMOUNT OF VALUE. |
| Product's origin | THAILAND |
| Beneficiary | THAI-GERMAN PRODUCTS PUBLIC CO.,LTD. |
| | 99 HOUYPONG-NONGBON ROAD, TAMBON HOUYPONG, AMPHUR MUANG, RAYONG 21150 THAILAND |
| Authorised bank | KASIKORN BANK PUBLIC CO., LTD. |
| Account number | ■■■■ |
| | OR |
| Authorised bank | EXPORT-IMPORT BANK OF THAILAND (HEAD OFFICE) |
| Account number | ■■■■ |
| Other conditions | Kindly fax this sales note confirmation by return unless the buyer makes payment to the seller as stated in this invoice within 15 days after being informed that prodcuts are ready for delivery, the order will be terminated without any liability to the buyer. |

Packing remark

Remark

** CONTINUED ON NEXT PAGE **

Shipper
THAI-GERMAN PRODUCTS PUBLIC CO., LTD
99 HOUYPONG-NONGBON ROAD,
TAMBON HOUYPONG, AMPHUR MUANG,
RAYONG 21150 THAILAND.

B/L No.   TH21A02305

**RS Logistics Limited**
**As The Carrier**
**Bill Of Lading**

Consignee

TO ORDER

RECEIVED by the carrier in apparent good order and condition except as
otherwise noted the total number of Containers or other Packages or units
enumerated below for transportation from the place of receipt to the place of
delivery subject to the terms detailed on the front and the reverse pages of this
Bill of Lading. One of the duly endorsed original Bills of Lading must be
surrendered in exchange for the Goods or Delivery Order. On presentation of a
duly endorsed original Bill of Lading to the Carrier by or on behalf of the Holder,
the rights and liabilities arising in accordance with the terms herein shall
(without prejudice to any rule of common law or statute rendering them binding
on the Merchant) become binding in all respects between the Carrier and the
Holder as though the contract evidenced hereby had been made between them.
IN WITNESS whereof the number of original Bills of Lading all of this tenor
and date have been signed in the number stated below, one of which being
accomplished, the other(s) to be void.
The contract evidenced by this Bill of Lading is governed by the laws of the
Hong Kong Special Administrative Region. Any claim or dispute must be
determined exclusively by the courts of the Hong Kong Special Administrative
Region and no other court.

Notify party
TRANS-OVERSEAS CORPORATION
28000 GODDARD RD. ROMULUS,
MICHIGAN 48174 U.S.A.
TEL: 734-946-9810 FAX: (734)-946-8197
EMAIL: BLESZCZYNSKI@TRANS-OVERSEAS.COM
BERTHA LESZCZYNSKI IMPORT SPECIALIST

DELIVERY AGENT:
BENNETT INTERNATIONAL TRANSPORT LLC
1001 INDUSTRIAL PARKWAY,
MCDONOUGH GA 30252,
USA

| Pre-Carriage by | Place of receipt |
|---|---|
| MOL CHARISMA V.216E | LAEM CHABANG, THAILAND |

| Vessel | Voy No. | Port of loading |
|---|---|---|
| AL QIBLA V.022E | | LAEM CHABANG, THAILAND |

Tel No: 1-770-9571866
Fax No: 1-678-5691268

| Port of discharge | Place of delivery | |
|---|---|---|
| CHARLESTON, SC, USA | CHARLESTON, SC, USA | Excess limit declaration as per Clause 16 |

| Container No. / Seal No., Marks and Numbers | No. of Containers or pkgs. | Kind of packages; description of goods | Gross weight (KGS) | Measurement (CBM) |
|---|---|---|---|---|
| | | SHIPPER'S LOAD, COUNT & SEAL S.T.C | | |
| NYKU4162288/THAQ24061/40'HQ/16 CRATES/15155.840 KGS/60.000 CBM/CY/CY | | | | |
| KKFU9151140/THAQ25892/45'HQ/26 CRATES/18651.340 KGS/60.000 CBM/CY/CY | | | | |
| MOEU0717370/THAQ25454/45'HQ/20 CRATES/17401.810 KGS/60.000 CBM/CY/CY | | | | |
| MOEU1407830/THAQ24113/45'HQ/24 CRATES/19191.380 KGS/60.000 CBM/CY/CY | | | | |
| ████████ CHARLESTON, USA CRATE NO. 1-86 MADE IN THAILAND | 86 CRATES | WELDED STAINLESS STEEL TUBE ASTM A-270 TP304/304L (COLD ROLLED) POLISHED GRIT INSIDE/OUTSIDE  180/180 N.W.: 65,240.37 KGS. TRANSHIPMENT AT SINGAPORE BY AL QIBLA 022E | 70,400.370 | 240.000 |
| | 86 CRATES | | 70,400.370 | 240.000 |

**ORIGINAL**   SHIPPED ON BOARD: 27-Jun-2021

| Total No. of Containers or Packages (in words) | TOTAL ONE (1) X 40'HQ AND THREE (3) X 45'HQ CONTAINER(S) ONLY |
|---|---|

The above particulars of the goods are according to the declaration of the Shipper, and are unknown to the Carrier.

| Freight and Charges FREIGHT COLLECT | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|

| Ex. Rate | Prepaid at | Payable at DESTINATION | Place and date of issue BANGKOK, THAILAND   27-Jun-2021 |
|---|---|---|---|

| | Total prepaid in local currency | No. of original B(s)/L THREE (3) | Stamped / Signed by the Carrier RS Logistics Limited or its agent |
|---|---|---|---|

| Date 27-Jun-2021 | Laden on board the Vessel | By _____ |
|---|---|---|

For and on behalf of
HONOUR LANE LOGISTICS CO.,LTD.

As Agent For The Carrier

# **<u>EXHIBIT 4</u>**



# Tariff Exclusion Requests: A One-Year Update

Thursday, April 11, 2019

**Authors:** Christine McDaniel, Danielle Parks

It has been over a year since the Section 232 steel and aluminum tariffs and their corresponding tariff exclusion process went into effect. Our key findings from the updated tariff exclusion process data [1] are as follows:

**1. The US Department of Commerce (Commerce) has increased the number of decisions it makes per month.** At the same time, US steel-producing companies have increased their objections. One firm—US Steel Corporation—filed more objections in a recent month than the total number of tariff exclusion requests.

**2. Objections appear to be consequential.** Less than one percent of steel tariff exclusion requests with an objection have been approved, and just 2.7 percent of aluminum tariff exclusion requests with an objection have been approved.

**3. The aggregate volume of steel noted in the objections by each steel company far exceed their annual production, which calls into question their ability to meet domestic demand.** The top three firms—Nucor Corporation, US Steel Corporation, and AK Steel Corporation—filed objections with a volume 169 percent above and beyond their combined 2017 production.

**4. The approval rates of the exclusion requests continue [2] to vary widely by the country of origin.** Concerns about China were a driving motivation for imposing Section 232 tariffs, yet for both steel and aluminum the approved quantity from China is greater than the approved quantity from Canada and Mexico combined.

## Background

On March 8, 2018, following recommendations by Commerce, President Trump imposed 25 percent tariffs on steel imports and 10 percent tariffs on aluminum imports. If Commerce does not deem those materials essential for national security and there is no domestic supply of them, then US manufacturers can request an exclusion from the tariffs. Once that request is posted, steel and aluminum manufacturers have 30 days to object to it.

US manufacturers can then file a rebuttal to an objection to their request (within the next seven days), and steel and aluminum manufacturers can file a surrebuttal to a rebuttal (within the next seven days).

Box 1. Summary of Tariff Exclusion Requests

45,328 steel tariff exclusion requests filed
    21,464 approved........(47%)
    6,588 denied...........(15%)
    17,276 pending.........(38%)

6,017 aluminum tariff exclusion requests filed
    4,069 approved.........(67%)
    637 denied…………...(11%)
    1,311 pending………..(22%)

Source: Based on data collected at regulations.gov (docket BIS-2018-006 and docket BIS-2018-002), as of March 18, 2019. Underlying microdata available at QuantGov, "Steel and Aluminum Tariffs: Thousands of Exclusion Requests from US Firms," March 18, 2019, https://quantgov.org/tariff-exclusion/

exclusion/.

As of March 18, 2019, US manufacturers filed 51,345 [1] steel and aluminum exclusion requests (see box 1). These requests have been filed by 905 firms across 46 states plus Puerto Rico, and they include 45,328 tariff exclusion requests for steel and 6,017 for aluminum.

## Commerce Has Sped up Decision Making Progress, and Steel Companies Have Sped up Their Objections

The rate of decision-making has increased in recent months. Before the government shutdown [3], Commerce made an average of 3,236 decisions per month. Following the shutdown, the rate of decisions increased, which corresponds with an increase in resources allocated to the Commerce Department's Bureau of Industry and Security (BIS). In the first half of March alone, Commerce made 6,334 decisions.

According to the spending bill [4] signed by President Trump on February 15, BIS received an increase in funds of $4.2 million (from $57.7 million to $61.9 million) specifically designated for Section 232-related work.

While Commerce has sped up decision-making, steel companies have also sped up the rate at which they file objections. There have been more objections posted this year to steel tariff exclusion requests than the number of actual requests posted. So far this year, 954 steel tariff exclusion requests have been posted, compared to 4,544 objections by steel companies. One firm, US Steel Corporation, accounted for 1,273 of these objections.

Under Commerce's objection process, if a US steel or aluminum producer can produce the specific product domestically within eight weeks, then they can file an objection. When multiple manufacturers can produce the product, then an exclusion request may receive multiple objections. For steel, 35.3 percent of exclusion requests with an objection have more than one objection. For aluminum, 18.6 percent of exclusion requests with an objection have more than one objection.

Overall, 71 steel companies have filed a total of 19,543 objections. Four steel companies—Nucor, US Steel, Timken, and AK Steel—account for more than half of these objections. These four companies filed 10,417 objections, or 53 percent of the total (see table 1). For aluminum, 17 firms have filed objections, and just two companies have filed over half of them: Arconic Inc. and Century Aluminum Company filed 592 objections, or 63.32 percent of the total 935 objections (see table 2).

Although Commerce denies exclusion requests based on domestic availability, it is not clear whether Commerce confirms that the steel or aluminum were actually produced and delivered to the US manufacturer that filed (and was denied) the exclusion.

## US Steel Companies Continue to Object to Unrealistic Quantities of Steel

The quantities of steel to which US steel companies are objecting exceed the annual production of those companies, which calls into question their ability to meet the demand. As reported in table 1, Nucor's objections totaled 41.31 million metric tons (mmt), compared to their 2017 production of 24.39 mmt; US Steel Corporation objected to 47.90 mmt compared to their annual production of 14.43 mmt, and AK Steel objected to 30.32 mmt compared to their 5.6 mmt of production (see figure 1).

In aggregate, US steel companies have objected to 149.7 mmt of steel, which is 83 percent greater than their production level of 81.6 mmt [5] in 2017 (the year before the tariffs went into effect). Commerce data show [5] that US steel production has ranged from 59.4 mmt to 88.7 mmt over the past decade, with an annual average of 81.57 mmt.

## The Objections Tend to Instigate a Denial or Delay

The objections are important because they appear to be influential in Commerce decisions. Less than one percent of the steel exclusion requests with an objection have been approved. Of the remaining, some have been denied, but most are still pending—89 percent of the exclusion requests that have had an objection are still pending and they were all filed last year, in 2018.

Similarly, Commerce has approved only 2.7 percent of aluminum tariff exclusions requests with an objection. Of the remaining, some have been denied, but 95 percent of them are still pending and they were also all filed last year.

## Approval Rates Vary by Country

While China was initially cited as the reason for the tariffs, the approved quantity from China is greater than the sum of the approved quantity from Canada and Mexico combined.

We examine the volume of steel and aluminum in the approved requests by the country of export listed in each tariff exclusion request. We compare that amount to the total subject import volume by country in 2017. For steel, over the past 12 months, the amount of steel imports approved from China is equivalent to 57 percent of the 2017 subject import volume. Specifically, 3,352 requests listing China as country of export have been approved, and the quantity of steel in those approvals sums to 430,444 metric tons (mt), as listed in table 3.

But quantities approved for Canada and Mexico are much lower. For instance, the 890 approvals listing Canada as the country of export represent 134,648 mt of steel, which is equivalent to just two percent of US imports from Canada. The 830 approvals listing Mexico as the country of export represent 190,377 mt of steel, or just six percent of US imports from Mexico.

The total quantity of approved aluminum with China as exporter sums to 654,371 mt, which is approximately 102 percent of the volume of US subject imports from China in 2017 (see table 4). In comparison, approximately 118,950 mt of aluminum from Canada has been approved for tariff exclusion, which is four percent of US subject imports from Canada in 2017. Similarly, for Mexico, 1,483 mt of aluminum from Mexico has been approved for tariff exclusion, which is two percent of US subject imports from Mexico in 2017.

Meanwhile, the tariffs appear to have had a distortionary effect on the sources of subject imports. For instance, US imports of subject steel from Romania totaled 16,313 mt in 2017, compared to 200,276 mt of steel in approved tariff exclusion requests from that country. Similarly, US imports of subject steel from Poland totaled 8,077 mt in 2017, compared to 144,000 mt of steel in approved tariff exclusion requests. In other words, the amount of granted tariff exclusions for steel from Romania and Poland is equivalent to 1,228 percent and 1,783 percent, respectively, of the amount of US imports of subject steel from those countries in 2017. The case is similar for aluminum exclusion requests. Taiwan, Thailand, and Saudi Arabia have had approvals equivalent to 1,593 percent, 2,522 percent, and 2,533 percent, respectively.

## Expiring Exemption Requests Will Soon Need to Refile

After Commerce grants a tariff exemption, the exemption is effective for one year beginning on the filing date. This means that US manufacturers will have to refile their exclusion requests that will be expiring or that have not yet even received a decision.

As of April 11, there are 519 expired steel exclusion requests that will need to be refiled (of which 140 were approved, 369 were denied, and 10 were still pending a decision from last year). Similarly, there are 40 expiring aluminum exclusion requests (of which nine were approved and 31 were denied last year). If the Section 232 tariffs are not lifted, the volume of exclusion requests and corresponding filings could easily double. In turn, Commerce will have to reprocess and reexamine each one, along with any objections, rebuttals, and surrebuttals.

---

**Source URL:** https://www.mercatus.org/bridge/commentary/tariff-exclusion-requests-one-year-update

**Links**
[1] https://quantgov.org/tariff-exclusion/
[2] https://www.mercatus.org/bridge/commentary/growing-backlog-inconsistent-rulings-cast-doubt-over-tariff-exclusion-request
[3] https://www.npr.org/2019/01/25/688414503/watch-live-trump-addresses-shutdown-from-white-house-rose-garden
[4] http://www.osec.doc.gov/bmi/BUDGET/FY19CBJ/BIS_FY19_President's_Budget_FINAL.pdf
[5] https://www.trade.gov/steel/countries/pdfs/imports-us.pdf

https://www.mercatus.org

## CERTIFICATE OF SERVICE

Pursuant to USCIT R. 4(b) and (h), I hereby certify that on August 24, 2022, I caused copies of Plaintiffs' Summons and Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
26 Federal Plaza
New York, NY 10278

Gina Raimondo
Secretary of Commerce
Office of the Secretary, U.S. Department of Commerce
1401 Constitution Ave., N.W.
Washington, D.C. 20230

Chris Magnus
Commissioner, U.S. Customs and Border Protection
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20229

Robert Heilferty, Esq.
Office of General Counsel
Trade Enforcement and Compliance
U.S. Department of Commerce
14th Street & Pennsylvania Ave., NW
Washington, D.C. 2023

Joseph R. Biden
President of the United States
The White House

1600 Pennsylvania Avenue NW.,
Washington, D.C. 20500

Dana A. Remus
White House Counsel
Executive Office of the President
1600 Pennsylvania Avenue NW.,
Washington, DC 20500

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss

11671121_2