**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: HONORABLE M. MILLER BAKER

——————————————————————————
LE COMMODITIES, LLC,                       :
                                           :
            Plaintiff,                     :
                                           :
        v.                                 :        Court No. 22-00245
                                           :
UNITED STATES, *et al*,                    :
                                           :
            Defendant.                     :
——————————————————————————x

## <u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Pursuant to Rule 56.1 of the Rules of the U.S. Court of

International Trade, Plaintiff LE Commodities LLC ("LE Commodities")

respectfully moves for judgment on the administrative record. For the

reasons set forth in the accompanying Memorandum of Law in support

of its motion, incorporated herein by reference, LE Commodities

requests that the Court determine that the Department of Commerce's

("Commerce") denials of LE Commodities' requests for exclusion from

the Section 232 tariffs in Exclusion Request nos. 49045, 49065, 49064,

49063, 49062, 49061, 49053, 84999, 117044, 164173, 164142, 238015,

249551, and 248094 were arbitrary, capricious, an abuse of discretion,

not supported by substantial evidence on the record, and otherwise not in accordance with law.

Plaintiff respectfully moves this Court to set aside Commerce's decisions denying LE Commodities' Exclusion Requests as arbitrary and capricious, and not in accordance with law, and enter judgment granting the relief set forth more particularly in the Proposed Order accompanying this Motion, and any other relief the Court deems just and proper, including remanding LE Commodities' Exclusion Requests to Commerce for reconsideration.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Katherine A. Dobscha

599 Lexington Ave., 36th Fl.
New York, NY 10022
(212) 557-4000

*Counsel for Plaintiff LE Commodities LLC*

Dated: May 1, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: HONORABLE M. MILLER BAKER

_____
                               :

LE COMMODITIES, LLC,           :

                               :

        Plaintiff,            :

                               :

        v.                  :       Court No. 22-00245

                               :

UNITED STATES, _et al_,       :

                               :

        Defendant.        :
_____x

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Erik D. Smithweiss
Katherine A. Dobscha

GRUNFELD, DESIDERIO,
LEBOWITZ SILVERMAN &
KLESTADT LLP

599 Lexington Ave., 36th Fl.
New York, NY 10022
(212) 557-4000

_Counsel for Plaintiff_
_LE Commodities LLC_

Dated: May 1, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY OF CASE-SPECIFIC ACRONYMS AND
ABBREVIATIONS ....................................................................... 1

STATEMENT PURSUANT TO RULE 56.1 ............................................. 1

STANDARD OF REVIEW ..................................................................... 5

STATEMENT OF FACTS ..................................................................... 8

I.    Statutory and Regulatory Background ........................................ 8
II.   LE Commodities' Requests for Exclusions from the Section 232
Steel Tariffs ...................................................................... 13
III.  Commerce's Denial of LE Commodities' Exclusion Requests ...... 21

ARGUMENT ..................................................................................... 25

I.    Commerce Unlawfully Denied LE Commodities' 14 Exclusion
Requests Contrary to the Evidence on the Record ................... 25

   A.  Commerce Failed to Consider Evidence Establishing that the
Subject Steel Was Not "Reasonably Available" in the United
States In a "Sufficient" Quantity ........................................ 26
     1.  *LE Commodities Submitted Documentation Evidencing Its
Claimed Delivery Times, In Accordance With Subsection (c)(6)(i)
of the Regulations* ................................................... 28
     2.  *LE Commodities Submitted Evidence Indicating United Could
Not Timely Manufacture and Deliver the Product* ............ 30
     3.  *Commerce Failed to Consider the Evidence on the Record
Establishing that United Could Not Provide the Subject Steel
"Immediately"* .......................................................... 32
     4.  *Commerce Failed To Consider Inconsistent Data Placed on The
Record by United* ...................................................... 41

B. Commerce Failed to Provide a Sufficiently Reasoned Basis for Each of Its Decisions. .................................................... 49

    1. *Exclusion Nos. 49053, 49061, 49062, 49063, 49064, 49065, and 84999* .................................................................. 51

    2. *Exclusion Nos. 164173, 164142, 117044, and 49045* ............... 54

    3. *Exclusion Nos. 238015, 249551, and 248094* ........................... 55

C. United's Objections Were Deficient Under the Regulations .......... 60

    1. *Exclusion Nos. 49045, 49053, 49061, 49062, 49063, 49064, 49065, 84999, 164142, 164173, and 117044.* ............................. 62

II.    Commerce Failed to Produce a Complete Administrative Record 64

CONCLUSION ........................................................................ 68

# TABLE OF AUTHORITIES

**Cases**

*AT&T Wireless Servs., Inc. v. F.C.C.*,
270 F.3d 959 (D.C. Cir. 2001)..................................................................59

*Bowman Transp., Inc. v. Ark.-Best Freight System, Inc.*,
419 U.S. 281 (1974) ...................................................................................7

*Butte County, Cal. v. Hogan*,
613 F.3d 190, 194 (D.C. Cir. 2010)..........................................................26

*City of Kansas City, Mo. v. Dep 't of Hous. & Urban Dev.*,
923 F.2d 188 (D.C. Cir. 1991)..................................................................41

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ...................................................................................7

*Dickinson v. Zurko*,
527 U.S. 150, 119 S.Ct. 1816 (1999) .........................................................7

*Florida Power & Light Co. v. Lorion*
470 U.S. 729, 105 S. Ct. 1598 (1985) ........................................................8

*Friedler v. General Servs. Admin.*,
271 F. Supp. 3d 40 (D.D.C. 2017) ...........................................................64

*In re Sang Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002) .............................50, 59

*Invenergy Renewables LLC v. United States*,
476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020).............................................65

*James Madison Ltd. by Hecht v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996)..................................................................64

*JSW Steel v. United States*,

466 F.Supp.3d 1320 (Ct. Int'l. Trade 2020) ............................. 58, 64, 65

*Mizerak v. Adams,*
682 F.2d 374 (2d Cir. 1982) .................................................... 41

*Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ....................................................... passim

*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA,*
752 F.3d 999 (D.C. Cir. 2014)) ............................................. 64

*New York v. Dep't of Commerce,*
351 F. Supp. 3d, 502 (S.D.N.Y. 2019) .................................... 64

*Policy & Research, LLC v. United States Dep 't of Health & Human
Servs.,*
313 F. Supp. 3d 62 (D.D.C. 2018), *appeal dismissed,* 2018 WL 6167378
(D.C. Cir. Oct. 29, 2018). .................................................... 61

*Shinn Fu Co. of Am., Inc. v. Tire Hanger Corp.,*
701 F. App'x 942 (Fed. Cir. 2017) .................................... 26, 46

*Ultratec, Inc. v. Caption Call, LLC,*
872 F.3d 1267 (Fed. Cir. 2017) ............................................. 59

*UPS Customhouse Brokerage, Inc.,*
575 F.3d 1376 (C.A.F.C. 2009) ............................................. 63

*Water Quality Ins. Syndicate v. United States,*
225 F. Supp. 3d 41 (D.D.C. 2016) ............................... 7, 26, 37

*WelCom Prods., Inc. v. United States,*
865 F. Supp. 2d 1340 (CIT 2012) ........................................... 7

*Wheatland Tube Co. v. United States,*
161 F.3d 1365 (Fed. Cir. 1369) ............................................. 7

*Yale Univ. v. U.S. Dept. of Commerce, Domestic & Int'l. Bus. Admin.,
Office of Import Programs*, 579 F.2d 626 (C.C.P.A. 1977) ..................51

**Statutes**

19 U.S.C. § 1862..........................................................................................8, 9

28 U.S.C. § 1581(i)(1)(B)...................................................................................5

5 U.S.C. § 706(2)(A) ........................................................................................6

5 U.S.C. §§ 701 *et seq.*...................................................................................3

**Other Authorities**

*Implementation of New Commerce Section 232 Exclusions Portal*,
84 Fed. Reg. 26,751 (June 10, 2019) ......................................................10

Presidential Proclamation 9705, *Adjusting Imports of Steel into the
United States* (Mar. 8, 2018) ..................................................................9

*Procedures To Grant Relief From the Quantitative Limitation Applicable
to Certain Steel Articles for Brazil for Parties With Preexisting
Contracts That Meet Specified Criteria*, 85 Fed. Reg. 64,377 (Oct. 13,
2020); *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85
Fed. Reg. 81,060 (Dec. 14, 2020) ...........................................................10

*Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060
(interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt.
705)....................................................................................................19, 60

**Regulations**

Supplement No. 1 to 15 C.F.R. Part 705 ........................................*passim*

Plaintiff LE Commodities LLC ("LE Commodities") submits this Memorandum of Law to support its Motion for Judgment on the Agency Record.

## GLOSSARY OF CASE-SPECIFIC ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| **BIS** | Bureau of Industry and Security |
| **ITA** | International Trade Administration |
| **SME** | Subject Matter Expert |

## STATEMENT PURSUANT TO RULE 56.1

Pursuant to Rule 56.1(c)(1) of the Rules of this Court, Plaintiff states as follows:

**Administrative Determination to be Reviewed**

1.  The administrative determinations sought to be reviewed are the determinations by the U.S. Department of Commerce, Bureau of Industry and Security ("Commerce") denying LE Commodities' requests for exclusions from the tariffs imposed under Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 (hereafter "Section 232"). These administrative determinations were issued in connection with Section 232 Exclusion Request nos. 49045, 49065, 49064,  49063, 49062, 49061, 49053, 84999, 117044, 164173, 164142,

238015, 248094, and 249551, each covering either alloy type 304/304L or 316/316L stainless steel welded sanitary tubing conforming to 3-A Sanitary Standard, per ASTM A-270 (the "subject steel"). Pub. Admin. Rec. for U.S. Dept. of Commerce pt. 2 ("Pub. A.R. 2"), ECF No. 18-2, at ERID 49045-001-002; Pub. Admin. Rec. U.S. Dept. of Commerce pt. 3 ("Pub. A.R. 3"), ECF No. 19-5, at ERID 49065-001-002; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-001-002; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-001-002; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-001-002; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-001-002; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-001-002; Pub. Admin. Rec. for U.S. Dept. of Commerce pt. 4 ("Pub. A.R. 4"), ECF. No. 20-1, at ERID 84999-001-002; Pub. Admin. Rec. for U.S. Dept. of Commerce pt. 1 ("Pub. A.R. 1"), ECF. No. 17-1, at ERID 117044-001-002; Pub. A.R. 1, ECF. No. 17-3, at ERID 164173-001-002; Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-001-002; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-001-002; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-001-002; Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-001-002.

**Issue of Law Presented and Reasons for Contesting the
Administrative Determination**

2. Whether Commerce's denials of LE Commodities' Section 232

Exclusion Request nos. 49045, 49065, 49064, 49063, 49062, 49061,

49053, 84999, 117044, 164173, 164142, 238015, 248094, 249551 were

arbitrary, capricious, an abuse of discretion, and contrary to law, in

violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

Commerce was required to apply the standards set forth in Commerce's

regulations, Supplement No. 1 to 15 C.F.R. Part 705, to the evidence in

the record in reviewing the exclusion requests. The regulations adopted

by Commerce specify that a domestic producer may object to a tariff

exclusion request if that producer is capable of "immediately" providing

the imported product in the United States. A product is not available in

a sufficient and reasonably available amount if it is not available

immediately — either within eight weeks or by a date earlier than the

time required by the requestor to obtain the entire quantity of the

product from the requestor's foreign supplier. 15 C.F.R. pt. 705, supp.1

§(c)(6)(i). Commerce's regulations plainly and sensibly place the burden

on an objector to demonstrate that it can produce the identical product

or a "substitute product" within the requisite timeframe. The

regulations state that it is incumbent on the objecting producers "to provide supplemental evidence supporting their claimed delivery times." 15 C.F.R. pt. 705, supp.1 §§ (c)(6)(i), (d)(4). For each request, the objector failed to provide support or supplemental evidence that it could manufacture and deliver the subject product in the quality and quantity required within the time frame specified in the regulations.

Applying the standards in the regulations to the evidence in the record, the only reasonable conclusion that Commerce could properly have reached with regard to these exclusion requests was that LE Commodities could not obtain the subject steel in the U.S. market in a sufficient and reasonably available amount or satisfactory quality, within eight weeks or within the time required for LE Commodities to obtain the entire quantity of the product from its' foreign supplier. Commerce failed to properly consider the evidence in the record by ignoring the evidence that the objector is unable to produce the subject steel in the required timeframe and failing to recognize the objections as insufficient under the regulations. Additionally, Commerce failed to provide a sufficiently reasoned basis for each of its decisions. Accordingly, LE Commodities was and remains entitled to the

4

requested tariff exclusions and therefore is entitled to a refund of the

232 duties paid on its imports of stainless steel products for which it

requested tariff exclusions. LE Commodities' reasons for contesting the

denial of LE Commodities' requests for exclusions from the Section 232

steel tariffs are set out in further detail in this Memorandum.

**Request for Court Order and Relief Sought**

3. For the reasons set out more fully in this Memorandum,

Plaintiff respectfully requests that this Court enter judgment as follows:

(1) Declaring that Commerce's denials of LE Commodities'
exclusion requests were arbitrary and capricious or otherwise
unlawful in violation of the APA (5 U.S.C. §§ 701 *et seq.*); and

(2) Remanding LE Commodities' exclusion requests to Commerce
with instructions for further consideration.

## STANDARD OF REVIEW

This Court has jurisdiction over the instant action pursuant to 28

U.S.C. § 1581(i)(1)(B). Actions brought under 28 U.S.C. § 1581 (i) are

reviewed pursuant to the Administrative Procedures Act, which

requires courts to "hold unlawful and set aside agency action,

findings, and conclusions found to be arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A). Although a "court is not to substitute its judgment for that of an agency, the agency nevertheless must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983). In its review of an agency's explanation, the "court must consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." *Id.* The relevant factors that a court will consider in setting aside agency decisions are whether the "agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 43; *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors . . . ." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344 (Ct.

6

Int'l Trade 2012) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"[C]ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1369). Commerce, as any agency, must "cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfgrs.* 463 U.S. at 48. Commerce is obligated to "articulate a rational connection between the facts found and the choice made." *Bowman Transp., Inc. v. Ark.-Best Freight System, Inc.*, 419 U.S. 281, 285-86 (1974). "Moreover, when review of an agency's action is 'bound up with a record-based factual conclusion,' the reviewing court must determine whether that conclusion 'is supported by substantial evidence.'" *Water Quality Ins. Syndicate v. United States*, 225 F. Supp. 3d 41, 63 (D.D.C. 2016) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 164, 119 S. Ct. 1816 (1999)).

When a court is "tasked with reviewing a decision based on an agency record, and that record does not support the contested decision, the court must remand for further proceedings." The Supreme Court stated in *Florida Power & Light Co. v. Lorion* that:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

470 U.S. 729, 744, 105 S. Ct. 1598, 1607 (1985).

## STATEMENT OF FACTS

### I.   Statutory and Regulatory Background

Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), authorizes the Secretary of Commerce, in coordination with the Secretary of Defense, to conduct an investigation "to determine the effects on the national security of imports" of any articles. Upon completing this investigation, the Secretary must provide the President with a report advising whether the articles under investigation are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. §§ 1862(b)(1)(A), (3)(A). If the President concurs with the Secretary's

finding that a threat exists, the President shall "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii).

On March 8, 2018, the President of the United States of America ("the President"), acting pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), imposed a 25% *ad valorem* tariff on steel imports. The President's Proclamation recognized that these tariffs could have unintended consequences for U.S. businesses that rely on imports of steel products not otherwise immediately available in the domestic market. Presidential Proclamation 9705, *Adjusting Imports of Steel into the United States* (Mar. 8, 2018). The Proclamation therefore expressly directed Commerce to grant exclusions from the Section 232 tariffs to U.S.-based businesses for imported steel products that are not immediately available in sufficient quality or quantity in the United States.

On March 19, 2018, Commerce, through its Bureau of Industry and Security ("BIS"), issued an interim final rule (codified at 15 C.F.R.

pt. 705, supp. 1) setting forth the circumstances in which the Department would grant a tariff exclusion to directly affected U.S. businesses. Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules for tariff exclusion requests. *See Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018). Commerce has subsequently amended the rule in June 2019, October 2020, and in December 2020. *Implementation of New Commerce Section 232 Exclusions Portal*, 84 Fed. Reg. 26,751 (June 10, 2019); *Procedures To Grant Relief From the Quantitative Limitation Applicable to Certain Steel Articles for Brazil for Parties With Preexisting Contracts That Meet Specified Criteria*, 85 Fed. Reg. 64,377 (Oct. 13, 2020); *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dec. 14, 2020).

The regulations adopted by Commerce set forth the procedures for affected parties to request tariff exclusions. An exclusion will be granted if "any of the following three criteria" are met: (1) "the article is not produced in the United States in a sufficient and reasonably available amount," (2) "is not produced in the United States in a satisfactory

10

quality," or (3) "for specific national security considerations." 15 C.F.R.

pt. 705, supp.1 § (c)(6).

The regulations also provide that a domestic producer may object

to any such request if that producer is capable of "immediately"

providing the imported product in the United States in the quality and

quantity required by the requestor. The Department's regulations

specify that a product is "not produced in the United States in a

sufficient and reasonably available amount" if:

> the amount that is needed by the end user requesting the
> exclusion is not available immediately in the United States
> to meet its specified business activities. Available
> "immediately" means that a product (whether it is currently
> being produced in the United States, or could be produced in
> the United States) can be delivered by a U.S. producer
> "within eight weeks", or, if that is not possible, by a date
> earlier than the time required for the requester to obtain the
> entire quantity of the product from the requester's foreign
> supplier.

15 C.F.R. pt. 705, supp.1 § (c)(6)(i).

"A credible objection [to a request for exclusion from Section 232

tariffs] must state that the objector can produce the product being

sought." 83 Fed. Reg. 46,026, 46,035 (BIS Response to Comment

(f)(4)(i).  If the objector cannot provide an identical product, the request

must be granted, unless the objector can and will provide a sufficient

and reasonable amount of a "substitute product":

> "Substitute product" for purposes of this review
> criterion means that the steel . . . being produced by an
> objector can meet "immediately" . . . the quality (e.g.,
> industry specs or internal company quality controls or
> standards), regulatory, or testing standards, in order
> for the U.S.-produced steel to be used in that business
> activity in the United States by that end user.

15 C.F.R. pt. 705, supp.1 § (c)(6)(ii).

Commerce's regulations plainly and sensibly place the burden on
an objector to demonstrate that it can produce the identical product or a
suitable "substitute product"[1] within the requisite timeframe. "It is
incumbent upon both the exclusion requester, and objecting producers,
to provide supplemental evidence supporting their claimed delivery
times." *Id.* at  § (c)(6)(i).

Objections to exclusion requests are provided for in Subsection (d)
of Supplement No. 1.  Subsection (d)(4) provides as follows:

The objection should clearly identify, *and provide support*

---

[1] United Industries' objections all assert that the company can produce and timely deliver an "identical product."  United did not assert it can produce and deliver a "substitute product." *See* Pub. A.R. 2, ECF No. 18-2, at ERID 49045-021; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-018; Pub. A.R. 4, ECF. No. 19-4, at ERID 49064-018; ECF. No. 19-3, at ERID 49063-018; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-018; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-018; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-018; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-018; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-028; Pub. A.R. 1, ECF. No. 17-3, at ERID 164173-027; Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-021; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-022; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-032; Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-032.

*for*, its opposition to the proposed exclusion, with reference to the specific basis identified in, and the support provided for, the submitted exclusion request. If the objector is asserting that it is not currently producing the steel or aluminum identified in an exclusion request but can produce the steel or aluminum and make that steel or aluminum available "immediately" in accordance with the time required for the user of steel or aluminum in the United States to obtain the product from its foreign suppliers, the objector must identify how it will be able to produce and deliver the quantity of steel or aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product. *It is incumbent on* both the exclusion requester, and *objecting producers, to provide supplemental evidence supporting their claimed delivery times*. This requirement includes specifying in writing to Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting. For example, a summary timeline that specifies the steps that will occur over the weeks needed to produce that steel or aluminum would be helpful to include, not only for the Department of Commerce review of the objection, but also for the requester of the exclusion and its determination whether to file a rebuttal to the objection.

*Id.* at § (d)(4) (emphasis added).

## II.     **LE Commodities' Requests for Exclusions from the Section 232 Steel Tariffs**

Plaintiff LE Commodities is a California-based provider of

stainless, tool and high-speed steel semi-finished products, including

alloy type 304/304L and 316/316L stainless steel welded sanitary tubing

13

conforming to 3-A Sanitary Standard, per ASTM A-270 (the "subject steel"). LE Commodities provides the subject steel to distributors in North America that, in turn, sell the steel for use in the dairy, food, and beverage processing industries. These customers require a specialty steel known as "sanitary grade" because the steel will be used for handling fluids for human consumption. The subject steel tubing is a high-end product, produced per two specifications (3-A sanitary standard and ASTM A270). Very few mills globally are certified to produce and can produce per the 3-A standard. LE Commodities depends upon a reliable, timely and continuous supply of substantial amounts of the subject sanitary grade steel tubing in order to meet the requirements of its customers, each of which relies on the supply of the product in order to fulfill orders. The production of the subject steel per the two specifications is of particular importance to LE Commodities because it provides the steel with a polish on the tubing's inner diameter that is distinct from standard stainless steel tubing, which allows for its use in the dairy, food, and beverage processing industries.

LE Commodities has consistently sought to source the subject steel from the domestic market; however, domestic producers either do

not produce the subject steel or cannot provide the subject steel to both the 3-A and ASTM A270 specifications within the timeframe required by LE Commodities' customers. The subject steel is not available from U.S. producers in the quantity and quality required in the necessary timeframe. Accordingly, LE Commodities filed requests for exclusions from the Section 232 steel tariffs in order to obtain from its manufacturer in Thailand the subject steel within a timeframe required to meet customer need and fulfill orders.

LE Commodities filed a total of 14 exclusion requests that were subsequently denied by Commerce and which are the subject of this action. The exclusion requests covered the high-end, stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy types 304/304L and 316/316L. Nine of the 14 exclusion requests covered stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy type 304/304L (exclusion nos. 49045, 49064, 49062, 84999, 117044, 164173, 164142, 238015, and 248094). Five of the 14 exclusion requests covered stainless steel welded sanitary tubing conforming to 3-A sanitary standard and ASTM A-270 of alloy type 316/316L (exclusion nos. 49065, 49063, 49061, 49053, and

249551).

On December 20, 2019, LE Commodities submitted a request for exclusion from the Section 232 tariffs for the subject steel (exclusion no. 49045). Pub. A.R. 2, ECF No. 18-2, at ERID 49045-007-019. On December 21, 2019 LE Commodities submitted another six requests for the subject steel (exclusion nos. 49065, 49064, 49063, 49062, 49061, and 49053).  Pub. A.R. 3, ECF No. 19-5, at ERID 49065-004-015; Pub. A.R. 3, ECF No. 19-4, at ERID 49064-004- -015; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-004-015; Pub. A.R. 3, ECF. No. 19-42 at ERID 49062-004-015; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-004-015; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-004 -015.  On April 30, 2020, LE Commodities submitted an exclusion request for the subject steel in alloy type alloy type 304/304L (exclusion no. 84999), a request on July 27, 2020 (exclusion no. 117044), and two requests on November 24, 2020 (exclusion nos. 164173 and 164142).  Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-004-015; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-007-025; Pub. A.R. 1, ECF. No. 17-3, at ERID 164173-007-024; Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-007-018.  The foregoing eleven (11) exclusion requests were all denied by Commerce between August

20, 2020 and February 13, 2021.

Following these denials, LE Commodities filed three new exclusion requests on products that had been included in one or more of the earlier denied requests.  LE Commodities submitted these between July 28, 2021 and September 19, 2021 (exclusion nos. 238015, 249551, and 248094). Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-008-019; Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-008-029; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-008-029; Commerce denied these exclusion requests on November 5, 2021 and December 31, 2021.

LE Commodities' submissions to the Department demonstrated that the subject steel was not sufficiently available in the United States because no domestic producer could supply LE Commodities the subject steel within LE Commodities' required timeframe.  In the absence of an objection, Commerce would have granted the exclusion requests in accordance with Subsection (h)(2)(ii) to the regulations ("The U.S. Department of Commerce will grant properly filed exclusion requests which meet the requisite criteria, receive no objections, and present no national security concerns.") 15 C.F.R. pt. 705, supp.1 § (h)(2)(ii).

After Commerce accepted LE Commodities' exclusion requests,

17

United Industries Inc. ("United") filed objections to each of the 14

exclusion requests. Pub. A.R. 2, ECF No. 18-2, at ERID 49045-019-026;

Pub. A.R. 3, ECF No. 19-5, at ERID 49065-016-023; Pub. A.R. 4, ECF.

No. 19-4, at ERID 49064-016-023; ECF. No. 19-3, at ERID 49063-016-

023; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-016-023; Pub. A.R. 3,

ECF. No. 19-1, at ERID 49061-016-023; Pub. A.R. 2, ECF. No. 18-3, at

ERID 49053-016-023; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-016-

023; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-026-033; Pub. A.R. 1,

ECF. No. 17-3, at ERID 164173-025-032; Pub. A.R. 1, ECF. No. 17-2, at

ERID 164142-019-026; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-

020-027; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-030-037; Pub.

A.R. 4, ECF. No. 20-3, at ERID 249551-030-037.

United claimed without providing any support that it could

manufacture and deliver the subject steel in the quality and quantity

LE Commodities needed within the time provided for in subsection

(c)(6)(i) of the regulations – within eight weeks or within the time

required for LE Commodities to obtain the entire quantity of the

product from its' foreign supplier. 15 C.F.R. pt. 705, supp.1 § (c)(6)(i).

United failed to provide any supplemental evidence, such as purchase

orders, invoices, and/or shipping documents, demonstrating that United was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections. Thus, United's objections were insufficient under subsection (d)(4) of the regulations and should have been disregarded by Commerce. *See* 15 C.F.R. pt. 705, supp.1 § (h)(1)(ii) ("Objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) will not be considered."); *see also Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt. 705) (BIS Response to Comment (d)(8)) (stating that objectors "should be held to the standards set forth in the regulations," which are "specified in paragraph[] (d) . . . of supplement no. 1 to part 705.").

LE Commodities filed rebuttals to 12 of United's 14 objections in which LE Commodities provided information demonstrating that United would not be able to produce and deliver the requested quantity within eight (8) weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier. Conf. Admin. Rec. for U.S. Dept. of Commerce pt. 1 ("Conf. A.R. 1"), ECF No. 14-1 at

ERID 49045-027-036; Conf. Admin. Rec. for U.S. Dept. of Commerce pt. 2 (Conf. A.R. 2"), ECF No. 15-1, at ERID 49065-024-031; Conf. A.R. 1, ECF. No. 14-6, at ERID 49064-024-031; Conf. A.R. 1, ECF. No. 14-5, at ERID 49063-024-031; Conf. A.R. 1, ECF. No. 14-4, at ERID 49062-024-031; Conf. A.R. 1, ECF. No. 14-3, at ERID 49061-024-031; Conf. A.R. 1, ECF. No. 14-2, at ERID 49053-024-031; Conf. A.R. 2, ECF. No. 15-2, at ERID 84999-024-032; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-034-045; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-028-44; Conf. A.R. 2, ECF. No. 15-3, at ERID 248094-038-051; Conf. Admin. Rec. for U.S. Dept. of Commerce pt. 3 ("Conf. A.R. 3"), ECF. No. 16-1, at ERID 249551-038-055.

United filed surrebuttals to ten of LE Commodities' rebuttals. Pub. A.R. 3, ECF No. 19-5, at ERID 49065-032-045; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-032-045; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-032-045; Pub. A.R. 3, ECF. No. 19-2, at ERID 4906-032-045; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-032-045; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-032-045; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-033-046; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-046-059; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-045-48; Pub. A.R. 4, ECF.

No. 20-3, at ERID 249551-052-055. In these surrebuttals, United again failed to provide Commerce any supporting documentation evidencing its actual ability to produce and deliver the subject steel in the quantities and time frames required by LE Commodities. United did not submit any surrebuttal relating to exclusion ID nos. 49045 and 248094.

### III.   Commerce's Denial of LE Commodities' Exclusion Requests

Commerce, after receiving objections from United, denied each of the 14 exclusions despite substantial evidence documenting the lack of a sufficient and reasonably available amount or satisfactory quality of the subject steel in the domestic market, and despite United's failure to provide any support or supplemental evidence for its claimed delivery times, as required by subsection (d)(4) of the regulations. 15 C.F.R. pt. 705, supp.1 § (d)(4).

On August 26, 2020, Commerce issued its Decision Memorandums denying exclusion nos. 84999, 49065, 49064, 49063, 49062, 49061, and 49053. Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-001-002; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-001 -002; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-001-002; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-001-

002; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-001-002; Pub. A.R. 3,

ECF. No. 19-1, at ERID 49061-001-002; Pub. A.R. 2, ECF. No. 18-3, at

ERID 49053-001-002. On November 25, 2020, Commerce issued its

decision memos denying exclusion nos. 49045 and 117044. Pub. A.R. 2,

ECF No. 18-2, at ERID 49045-001-002; Pub. A.R. 1, ECF. No. 17-1, at

ERID 117044-001-002. On February 13, 2021, Commerce issued its

decision memos denying exclusion nos. 164173 and 164142. Pub. A.R. 1,

ECF. No. 17-3, at ERID 164173-001-002; Pub. A.R. 1, ECF. No. 17-2, at

ERID 164142-001-002. On November 5, 2021, Commerce issued its

decision memo denying exclusion request no. 238015. Pub. A.R. 2, ECF.

No. 18-1, at ERID 238015-001-002. On December 31, 2021, Commerce

issued its decision memos denying exclusion request nos. 249551 and

248094. Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-001-002; Pub. A.R.

4, ECF. No. 20-2, at ERID 248094-001-002.

　　　For each exclusion decision memo, Commerce stated that it was

relying on the recommendations from another entity within the

Department, the International Trade Administration ("ITA"). For

several exclusion requests (exclusion nos. 49053, 49061, 49062, 49063,

49064, 49065, and 84999) the recommendation memo issued by the ITA

was only a page long. Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-003;

Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-003; Pub. A.R. 3, ECF. No.

19-2, at ERID 49062-003; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-

003; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-003; Pub. A.R. 3, ECF

No. 19-5, at ERID 49065-003; Pub. A.R. 4, ECF. No. 20-1, at ERID

84999-003. The ITA recommendation memo did not include any actual,

detailed analysis of the record before it, but only a short "analysis"

paragraph summarizing the requestor and objector's claims and

concluding that United could manufacture the subject steel and produce

the requested volume in a timely manner. For the remaining requests

(exclusion nos. 49045, 117044, 164173, 164142, 238015, 249551, and

248094), Pub. A.R. 2, ECF No. 18-2, at ERID 49045-003-006; Pub. A.R.

1, ECF. No. 17-1, at ERID 117044-003-006; Pub. A.R. 1, ECF. No. 17-3,

at ERID 164173-003-006; Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-

003-006; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-003-007; Pub.

A.R. 4, ECF. No. 20-3, at ERID 249551-003-007; Pub. A.R. 4, ECF. No.

20-2, at ERID 248094-003-007, Commerce relied on a five-page ITA

recommendation memo. Although the five-page recommendation memos

include sections purportedly addressing the objector's claimed quality,

quantity, and timeliness criteria, these memos did not include a complete analysis of the record before it.

Furthermore, the ITA memos reference a "Subject Matter Expert" ("SME"). For exclusions nos. 117044, 16142, 164173, 49045, 49053, 49061, 49062, 49063, 49064, 49065, and 84999, the ITA memos indicate that ITA relied on the SME's purported findings as to the quality of the objector's product and whether it constitutes an identical or substitute product to the subject steel in LE Commodities' respective requests. Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-004; Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-004; Pub. A.R. 1, ECF. No. 17-3, at ERID 164173-004; Pub. A.R. 2, ECF No. 18-2, at ERID 49045-004; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-003; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-003; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-003; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-003; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-003; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-003; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-003. The analysis and findings of the "Subject Matter Expert" that purportedly evaluated United's offered products are not included in the administrative record.

As a result of the denial of the exclusion requests, LE

Commodities paid substantial amounts in Section 232 steel tariffs from

which it should have been exempt.

## ARGUMENT

### I.   Commerce Unlawfully Denied LE Commodities' 14 Exclusion Requests Contrary to the Evidence on the Record

Commerce's denials of LE Commodities' Exclusion Requests ran

"counter to the evidence" before the agency because Commerce ignored

evidence that the objector was unable to produce the subject products in

the timeframe required by LE Commodities, failed to recognize the

objections as insufficient under Commerce's regulations, and undertook

no effort to verify the objector's claims. *Motor Vehicle Mfrs. Ass'n*, 463

U.S. at 43. Commerce's denials of LE Commodities' exclusion requests

without giving any real consideration to the actual record evidence

constitutes a blatant disregard of its obligation to engage in fair,

reasoned decision-making. Further, Commerce failed to provide a

sufficiently reasoned basis for each of its determinations. Accordingly,

Commerce's determinations denying LE Commodities' exclusion

requests were arbitrary, capricious, an abuse of discretion, not

supported by substantial evidence on the record, and otherwise not in accordance with law.

**A.    Commerce Failed to Consider Evidence Establishing that the Subject Steel Was Not "Reasonably Available" in the United States In a "Sufficient" Quantity"**

Commerce failed to consider relevant evidence on the record, which established that the subject steel was not produced in the United States in a sufficient and reasonably available amount. Agency decisions that ignore "critical context" provided in the record "amount[] to cherry-picking of evidence, that, when considered as a whole, raise[] significant doubt about the ultimate conclusion reached." *Water Quality Ins.*, 225 F. Supp. 3d at 69. "[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706." *Butte County, Cal. v. Hogan*, 613 F.3d 190, 194 (D.C. Cir. 2010). The Court of Appeals for the Federal Circuit has found an agency decision was arbitrary and capricious where it failed to "address the arguments the parties present[ed] to it." *Shinn Fu Co. of Am., Inc. v. Tire Hanger Corp.*, 701 F. App'x 942, 946 (Fed. Cir. 2017).

The regulations adopted by Commerce setting forth the procedures for affected parties to request tariff exclusions state that an

exclusion will be granted if "the article is not produced in the United

States in a sufficient and reasonably available amount" or the article "is

not produced in the United States in a satisfactory quality." 15 C.F.R.

pt. 705, supp.1 § (c)(6). In each of its 14 requests for exclusion from the

Section 232 tariffs, LE Commodities asserted it required an exclusion

due to "insufficient U.S. availability" – the subject steel covered by each

request was not available "immediately" in the U.S. in an amount

sufficient to meet LE Commodities business needs (it could not be

delivered by a U.S. producer within eight weeks or by a date earlier

than the time required to obtain the entire quantity requested from a

foreign supplier). *Id.* at § (c)(6)(i). In its exclusion requests, LE

Commodities advised Commerce that only two domestic producers were

capable of manufacturing the subject steel to the necessary

specifications and that accordingly, the subject steel is not available in

the U.S. in sufficient quantity and quality within the time frame LE

Commodities required. *See, e.g.*, Pub. A.R. 1, ECF 17-1, at ERID

117044-015; Pub. A.R. 2, ECF 18-1, at ERID-238015-016; Pub. A.R. 4,

ECF 20-2, at ERID-284094-016; Pub. A.R. 4, ECF 20-3, at ERID-

249551-017. LE Commodities' submissions to the Department

27

demonstrated that the subject steel was not sufficiently available in the United States because no domestic producer could supply LE Commodities the subject steel within LE Commodities' required timeframe. Additionally, LE Commodities provided information in the rebuttals it filed to United's objections demonstrating that United would not be able to produce and deliver the requested quantity within eight (8) weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier.

### 1. LE Commodities Submitted Documentation Evidencing Its Claimed Delivery Times, In Accordance With Subsection (c)(6)(i) of the Regulations

#### a. Exclusion No. 238015

Subsequent to Commerce's denial of the first eleven exclusion requests, LE Commodities submitted exclusion no. 238015 on July 28, 2021, which covered the 304/304L alloy sanitary tubing.  LE Commodities provided supporting documentation to substantiate its claimed delivery times, pursuant to subsection (c)(6)(i) of the regulations. *Id.* This documentation was a representative sales note from LE Commodities' supplier in Thailand, substantiating the lead times that LE Commodities asserted in its request.  The note, dated

June 17, 2021, shows the proposed shipment date for the subject steel (ASTM A-270) as "45-60 days after confirming Proforma Invoice." The documentation supports LE Commodities' conservative 45-day estimation for manufacture from purchase order date. Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-039.

### b. Exclusion Nos. 249551 and 248094

Shortly thereafter, in September 2021, LE Commodities submitted exclusion request nos. 249551 and 248094, also for 316/316L and 304/304L alloy tubing, and provided supporting documentation to substantiate its claimed delivery times. The attachments to exclusion ID nos. 249551 and 248094 included the June 17, 2021 sales note from LE Commodities' supplier in Thailand, substantiating the lead times that LE Commodities asserted in its exclusion requests. Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-026; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-026. The sales note supports LE Commodities' conservative 75-day estimation made in exclusion ID no. 249551 and the 45-day estimation made in exclusion ID no. 248094 for manufacture from purchase order date.

In its rebuttals, LE Commodities submitted as an attachment a

second representative sales note from its supplier substantiating the

lead times that LE Commodities asserted in its exclusion requests. The

sales note, dated May 24, 2021, shows the proposed shipment date for

the subject steel (ASTM A-270) as "30-45 days after confirming

Proforma Invoice." Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-050;

Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-050. LE Commodities also

submitted as an attachment to the rebuttals relating to exclusion ID

nos. 249551 and 248094 a bill of lading, dated June 27, 2021, covering

the shipment of the goods under the representative sales note. Pub.

A.R. 4, ECF. No. 20-3, at ERID 249551-051; Pub. A.R. 4, ECF. No. 20-2,

at ERID 248094-051. The bill of lading was issued 34 days after the

date on which the sales order was issued (May 24, 2021). This

documentation supports LE Commodities' conservative 75-day

estimation made in exclusion no. 249551 and 45-day estimation made in

exclusion ID no. 248094 for manufacture from purchase order date.

### 2. *LE Commodities Submitted Evidence Indicating United Could Not Timely Manufacture and Deliver the Product*

LE Commodities submitted with exclusion nos. 238015, 248094,

and 249551industry literature evidencing that United lacked the raw

material necessary to timely produce the sanitary tubing required by

LE Commodities, and that United's delivery times would greatly exceed eight weeks and the time required for LE Commodities' foreign supplier to provide the subject steel. LE Commodities submitted an announcement issued by Allegheny Technology Incorporated ("ATI"), and a related article excerpt, stating that ATI was ceasing the production of stainless sheet, which is the raw material that United required to produce the sanitary tubing covered by LE Commodities' exclusion request nos. 238015, 249551 and 248094. Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-034-36; Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-021-023; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-021-023. LE Commodities submitted an article, dated March 15, 2021, in which John Zabkowicz of Sanitary Fittings interviewed Mike Lovelace of Steel & O'Brien concerning current "long lead times and lack of supply" in the U.S. domestic market for sanitary tubing. The article identifies United as one of the two U.S. manufacturers of sanitary tubing and accordingly reflects that United had "long lead times." LE Commodities also submitted a summary of the stainless steel shortage in the U.S. market. Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-037-038; Pub. A.R. 4, ECF.

No. 20-3, at ERID 249551-024-025; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-024-025.

LE Commodities submitted with exclusion no. 238015 email communications between United and LE Commodities in which United sought to purchase from LE Commodities the very alloy type 304L and 316L raw materials that United required in order to produce the tubing covered by exclusion request no. 238015. Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-040-041This request for raw materials reflects that United was struggling to obtain the raw materials it required to produce the steel tubing and that, consequently, its lead times were significantly extended. Additionally, this inability to procure an adequate supply of raw materials is directly probative of United's inability to meet the quantity and quality criteria within the required 8-weeks.

### 3. *Commerce Failed to Consider the Evidence on the Record Establishing that United Could Not Provide the Subject Steel "Immediately"*

United filed objections, and later surrebuttals, to exclusion ID nos. 238015, 249551 and 248094.  While a domestic producer may object to exclusion requests if the producer is capable of "immediately" providing

the imported product in the United States, filing an objection is no insignificant matter. In the absence of an objection, Commerce will grant a properly filed exclusion request. *See* 15 C.F.R. pt. 705, supp.1 § (h)(2)(ii). Commerce regulations accordingly place a significant burden on objectors to provide actual evidence to support an objector's contention regarding delivery times. *Id.* at § (d)(4).

In objecting to LE Commodities' exclusion requests filed on the basis that the subject steel was not sufficiently available in the U.S., United asserted that it was capable of providing the product covered by each respective exclusion request in a satisfactory quality and within eight weeks or within the time LE Commodities could obtain the entire requested quantity from its foreign supplier. United did not, however, submit any documentation or other evidence beyond unsubstantiated and self-serving declarations supporting that it was capable of providing the subject steel within its claimed lead times. To the extent that Commerce believed United's surrebuttal documents were relevant, Commerce failed to provide any analysis or explanation of them in its decision memos. Commerce's decision memos and the ITA recommendation memos do not acknowledge United's failure to provide

support or supplemental evidence concerning its claimed lead times, which reflects a clear failure to properly evaluate the record. *See* Pub. A.R. 3, ECF No. 19-5, at ERID 49065-001 -003; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-001-003; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-001-003;  Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-001-003; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-001-003; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-001-003; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-001-007; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-001-007; Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-001-007; Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-001-007.

Commerce is obligated to consider all relevant data in the record to arrive at a reasoned decision. *See Motor Vehicle Mfrs.*, 463 U.S. at 43. (Commerce is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."). Yet, none of the ITA memos or the BIS decisions on exclusion ID nos.  238015, 249551 and 248094 make any mention of the substantial evidence submitted by LE Commodities; nor the absence of any documentation from United.  The conclusory ITA recommendation memos upon which Commerce relied in

denying LE Commodities' exclusion requests assert – without supporting evidence on the record - that United's claimed delivery time meet the "timeliness" criterion.  The ITA recommendation memos do not address probative evidence on the record for the respective requests.

### a. Exclusion No. 238015

The ITA recommendation memo for exclusion no. 238015 includes sections on 'timeliness' and "quantity." The "timeliness" section has a preformatted field stating: "[d]oes anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information?" Pub. A.R. 2, ECF. No. 18-1, at ERID 238015-005. The "quantity" section has a preformatted question, "[d]oes anything in the request, rebuttal, or surrebuttal, including attachments provide evidence to contradict the objector's claims [concerning quantity]?" *Id.* at ERID 238015-004. In response to both of these questions the ITA memo simply states "no," even though LE Commodities had submitted industry information evidencing United's inability to obtain sufficient raw materials necessary to produce the sanitary tubing covered by exclusion no. 238015, and evidencing that United's lead times were

35

extended beyond eight weeks and the time required for LE

Commodities' foreign supplier to provide the subject steel. *Id*. at ERID-

238015-004-005. United did not submit any documentation with its

objection or surrebuttals to address the information submitted by LE

Commodities and to support its claimed ability to produce the subject

steel, within its claimed lead times, in the quantity LE Commodities

required.

In its "Analysis of the Record" ITA only acknowledged that LE

Commodities had provided "emails between itself and United," without

discussing the content of the emails, which clearly reflect that United

was struggling to procure the raw materials it needed in order to

produce the steel covered by exclusion no. 238015, which impacts

United's ability to supply LE Commodities with a sufficient quantity of

the subject steel within the time LE Commodities required. *Id*.

Additionally, the ITA memo does not mention, let alone discuss, the

additional industry information that LE Commodities provided with its

rebuttal, which further evidences that United lacked the raw material

necessary to timely produce the sanitary tubing required and that

United's lead times were extended beyond eight weeks and the time LE

36

Commodities' supplier required to ship the subject steel.  The emails
and additional industry information provided "critical context" as to
whether the subject steel was "reasonably available" in a "sufficient"
quantity in the U.S. *Water Quality Ins. Syndicate,* 225 F. Supp. at 69. A
full analysis of the record should have included an actual analysis of the
content of these emails and of the additional industry information
submitted by LE Commodities.

### b. Exclusion No. 249551 and 249551

The ITA recommendation memos for exclusion nos. 249551 and
248094, include the same sections on 'timeliness" and "quantity" which
are included in the ITA memo for exclusion no. 238015. Pub. A.R. 4,
ECF. No. 20-3, at ERID 249551-004-005; Pub. A.R. 4, ECF. No. 20-2, at
ERID 248094-004-005.  Likewise, in response to the preformatted fields
"does anything in the request, objection, rebuttal, or surrebuttal,
including attachments, provide evidence that contradicts or requires
adjustment to the objector's delivery time information?" and "[d]oes
anything in the request, rebuttal, or surrebuttal, including attachments
provide evidence to contradict the objector's claims [concerning
quantity]?" the ITA memos simply state "no," even though LE

37

Commodities had submitted substantial industry information of United's extended lead times and inability to obtain sufficient raw materials necessary to produce the sanitary tubing covered by the exclusion requests. *Id.*

LE Commodities submitted with exclusion nos. 249551 and 248094 the documentation discussed above, including the ATI announcement and interview with Mike Lovelace of Steel & O'Brien, Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-021-025; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-021-025.  This documentation reflects that United was struggling to obtain the raw materials it required to produce the steel at issue. This inability to procure an adequate supply of raw materials is directly probative of United's capacity to meet the quantity and quality criteria for exclusion nos. 249551 and 248094.

Furthermore, LE commodities submitted as a supplement to its rebuttals relating to exclusion nos. 249551 and 248094 a letter advising Commerce of emails from unrelated third parties indicating that United had lead times well beyond the time frames asserted in its objections. LE Commodities submitted these email communications to Commerce confidentially. Conf. A.R. 3, ECF. No. 16-1, at ERID 249551-042-048;

Conf. A.R. 1, ECF. No. 15-3 at ERID 248094-042-048.  The emails reflected that, at the time LE Commodities submitted exclusion request nos. 249551 and 248094, United was not capable of manufacturing and shipping the subject steel within 60 days, as United alleged in its objections. The first email reflected that United had a production lead time of 40 weeks (280 days). The second email reflected that United quoted a 62-week (434 days) lead time. This anecdotal industry information directly contradicted United's assertions that it could produce the subject steel within LE Commodities' required timeframe, and undermined United's self-serving representations.   United did not provide any evidence to controvert the lead times reflected in the emails, notwithstanding ample opportunity to supplement the evidentiary record through a surrebuttal.

Astoundingly, Commerce denied LE Commodities' exclusions request nos. 249551 and 248094.  Commerce disregarded the evidence in the record corroborating LE Commodities' lead times, and flatly ignored the evidence in the record undermining United's claims that United could timely deliver the subject steel.  Commerce also turned a blind eye to the fact that United failed to provide evidence

39

substantiating its lead times, as required under subsection (c)(6)(i) and

(d)(4) of the regulations. In the "Analysis of the Record," sections of the

ITA memos relating to both the "Quantity" and "Timeliness" criterion,

the ITA conclusively states that United meets the quantity and

timeliness criterion without any discussion whatsoever regarding the

evidence submitted by LE Commodities, or the absence of any evidence

submitted by United in connection with exclusion ID nos. 249551 and

248094.  The ITA recommendation memos for these exclusions simply

state that "United Industries is able to deliver the product in a timely

manner" and that it "can produce 100 percent of the requested volume."

Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-004-005; Pub. A.R. 4, ECF.

No. 20-2, at ERID 248094-004-005.  The evidence submitted by LE

Commodities clearly undermines United's claimed delivery timelines

and demonstrates that United could not supply the steel covered by

exclusion no. 248094 or 249551 within eight weeks or the time required

by LE Commodities' supplier.  Thus, a full and cogent explanation of

Commerce's decision should have included an analysis of these emails

and of the additional industry information.

Commerce refused to consider undisputed evidence, and acted

based on assertions directly contradicted by the evidence in the record that it failed to address. *See City of Kansas City, Mo. v. Dep 't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decision making, and cannot survive review under the arbitrary and capricious standard."); *Mizerak v. Adams*, 682 F.2d 374, 376 (2d Cir. 1982) ("[A]n agency decision is arbitrary and must be set aside when it rests on a critical factual premise shown by the agency's records to be indisputably incorrect.").

### 4. Commerce Failed To Consider Inconsistent Data Placed on The Record by United

Aside from ignoring the evidence submitted by LE Commodities, Commerce disregarded inconsistent and conflicting data submitted by United. The evidence in the record for many of the exclusion requests reflect inconsistent and unreliable lead times in which United could manufacture and deliver the subject steel. These inconsistencies do not support a finding that United could manufacture and deliver the subject steel "immediately" as required under subsection (c)(6)(i) of the regulations.

41

### a. Exclusion Nos. 49045, 49053, 49061, 49062, 49063, 49064, 49065, 84999, 117044, 164173, and 164142

In its objections to exclusion request nos. 49045, 49064, 49062, 84999, 117044, 164173, and 164142 , covering stainless steel welded sanitary tubing of alloy type 304/304L, and in its objections to exclusion request nos. 49061, 49053, 49065, and 49063, covering stainless steel welded sanitary tubing of alloy type 316/316L, United asserted in section 3 of the objection form that it required 6 days to deliver from the time of shipment from United's facility to LE Commodities' loading dock, and 35 days from receipt of the purchase order to produce the subject steel.  United also asserted both that the subject steel is manufactured every 4-6 weeks at United's Selmer, Tennessee facility (in section 1 of the objection form) and that the subject steel is manufactured every week at United's Selmer, Tennessee facility (in the comments field in section 3 of the objection form).

Accordingly, United provided conflicting lead times with respect to exclusion request nos. 49045, 49053, 49061, 49062, 49063, 49064, 49065, 84999, 117044, 164173, and 164142. Pub. A.R. 2, ECF No. 18-2, at ERID 49045-020, 024; Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-017, 021; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-017, 021; Pub. A.R.

3, ECF. No. 19-2, at ERID 49062-017, 021; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-017, 021; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-017, 021; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-017, 021; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-017, 021; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-0027, 031;  Pub. A.R. 1, ECF. No. 17-3, at ERID 164173-026, 030; Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-020, 024.

The ITA failed to consider, or even address, in its one-page recommendation memos the conflicting lead times that United claimed in its objections to LE Commodities exclusion request nos. 49053, 49061, 49062, 49063, 49064, 49065, and 84999. The one-page memos for these requests simply states: "United claims it can manufacture an identical product at the volume requested for exclusion in a timely manner . . . . United Industries meets the quality, quantity, and timeliness criteria." Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-003; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-003; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-003; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-003; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-003; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-003; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-003.

43

Additionally, with respect to exclusion nos. 49063 and 49065, not only did the ITA fail to consider United's conflicting claims concerning lead times, it did not address that United's objections did not clearly identify the tubing alloy type to which its objection related. In its objection to LE Commodities' exclusion request no. 49063, United stated in the comment field to questions 3.a-d of the objection form that it was capable of producing and shipping within the alleged lead times the tubing of alloy 304/304L, rather than the tubing of alloy 316/316L that was the subject of the exclusion request. United stated: "A270 304 3A Sanitary tubing is manufactured every week at United Industries Selmer, TN faclity[sic]." Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-021. Likewise, in its objection to LE Commodities' exclusion request no. 49065, United stated in the comment field to questions 3.a-d of the objection form that it was capable of producing and shipping within its alleged lead times the tubing of alloy 304/304L, and not the tubing of alloy 316/316L that was the subject of the exclusion request. United stated: "Industry standard A270 304 3A #a Sanitary tubing is manufactured every week at United Industries Selmer, TN facility." Pub. A.R. 3, ECF No. 19-5, at ERID 49065-021.

44

With respect to exclusion no. 117044, the ITA failed to properly consider a critical issue bearing on United's ability to produce the subject steel of a "satisfactory quality." A product is not available in the United States in a satisfactory quality unless domestic suppliers can produce an identical or substitute product which meets the "industry specs or internal company quality controls or standards" necessary for the product to be used in the required business activity. 15 C.F.R. pt. 705, supp. 1 (c)(6)(ii). United's product offering in its objection to exclusion no. 117044 did not meet the strength and elongation specifications that LE Commodities required.

LE Commodities' exclusion request specified a minimum tensile strength of 485 MPa and minimum yield strength of 170 MPa, whereas United's objection offered a product with a minimum tensile strength of 517 MPa and minimum yield strength of 207 MPa. Pub. A.R. 1, ECF No. 17-1, at ERID 117044-012, 029. LE Commodities specified a global ductility elongation of 0% whereas United specified a global ductility elongation of 35%. *Id.* at ERID-117044-013, 030. In its recommendation memo, the ITA acknowledged that "there were discrepancies involving strength and elongation" between LE Commodities' exclusion request

45

and United's product offering, but simply concluded that United met the

quality criterion because "[a]ccording to the Subject Matter Expert, the

objection offering's values are above the requested minimums and the

objection offering is a suitable substitute." *Id.* at ERID 11704-004. The

fact remains, however, that United could not meet the strength and

elongation specifications that LE Commodities required for the

requested steel.  The ITA inappropriately relied upon the SME's

conclusory, inaccurate determination that United's product offering

constituted a "suitable substitute" under the regulations. Further, the

ITA failed to identify how the SME concluded that United's product

offering constituted a "suitable substitute." Thus, Commerce's denial of

exclusion no. 117044 was arbitrary and capricious because Commerce

"refus[ed] to consider evidence bearing on the issue before it."  *Shinn Fu*

*Co. of Am. Inc. v. Tire Hanger Corp.*, 701 F. App'x at 946.

### b. *Exclusion No. 238015*

United stated in its objection to exclusion request no. 238015 in

section 3 of the objection form that it required 2 days to ship the subject

steel from purchase order receipt, 35 days from receipt of the purchase

order to produce the subject steel, and 6 days to deliver from the time of

shipment from United's facility to LE Commodities' loading dock.  Pub.

A.R. 2, ECF. No. 18-1, at ERID 238015-025. United also asserted both

that the subject steel is manufactured every 4-6 weeks at United's

Selmer, Tennessee facility (in section 1 of the objection form) and that

the subject steel is manufactured every week at United's Selmer,

Tennessee facility (in the comments field in section 3 of the objection

form). *Id*. at ERID 238015-021, 025. Notably, although United claimed

in its objection that it could ship the subject steel in 2 days, it claimed

in its surrebuttals that shipping could take as long as 16 weeks. *Id*. at

ERID 238015-047. In the ITA recommendation memo relating to

exclusion request no. 238015, ITA disregarded this extended 16-week

shipping time.  ITA stated:

> United "explains that it 'is shipping product in as little time
> as 2 days, to 16 weeks.' This is different from the 2 days
> provided by United Industries in 3.b of its objection. As such,
> ITA has replaced the 2 days reported by United Industries to
> ship from its U.S. manufacturing plant with the midpoint of
> the range provided, which is 57 days."

*Id*. at ERID 238015-005. United inaccurately completed the objection

form and admitted that its shipping time could take as long as 16 weeks

(112 days). In providing its own estimation of shipping, ITA disregarded

United's actual claimed shipping time which far exceeded eight weeks

and the time it required LE Commodities' supplier to ship (75 days) and which accordingly established that United could not with certainty meet the timeliness criterion.

### c. Exclusion Nos. 249551 and 248094

United stated in its objections to LE Commodities' exclusion request nos. 249551 and 248094 that it required 6 days to deliver from the time of shipment from United's facility to LE Commodities' loading dock, and 45 days from receipt of the purchase order to produce the subject steel. United also claimed in these two objections that the subject steel is manufactured every 4-6 weeks at United's Selmer, Tennessee facility and that its lead time is the same as the lead time offered by foreign sources. Pub. A.R. 4, ECF. No. 20-3, at ERID 249551-031, 035; Pub. A.R. 4, ECF. No. 20-2, at ERID 248094-031, 035. LE commodities submitted as an attachment to its rebuttals relating to exclusion nos. 249551 and 248094 a letter pointing out United's inconsistent claimed lead times. Conf. A.R. 3, ECF. No. 16-1, at ERID 249551-042-051; Conf. A.R. 1, ECF. No. 15-3 at ERID 248094-042-051.

In sum, Commerce's determinations were arbitrary and capricious because they: (1) disregarded evidence submitted by LE Commodities

demonstrating that the subject steel was not sufficiently available in the United States within LE Commodities' required timeframe; (2) disregarded uncontroverted evidence in the record contradicting United's claimed lead times and establishing that United could not supply the subject steel immediately, as required under subsection (c)(6)(i) of the regulations; and (3) relied on ITA's conclusory recommendations that ignored and misinterpreted relevant data in the record. There is no rational connection between Commerce's decision to find that the subject steel was produced in the United States in a sufficient and reasonably available amount (and thereby deny LE Commodities' exclusion requests) and the evidence in the record – or the lack of any evidence supporting United's claims. *Motor Vehicle Mfrs.*, 463 U.S. at 43. Accordingly, Commerce's conclusions that the subject steel is sufficiently and reasonably available in the United States "run[] counter to the evidence before the agency." *Id*.

## B.   Commerce Failed to Provide a Sufficiently Reasoned Basis for Each of Its Decisions.

An agency must "cogently explain why it has exercised its discretion in a given manner." *Id*. at 48. The agency must "not only have reached a sound decision, but have articulated the reasons for that decision." *In re*

49

*Sang Su Lee*, 277 F.3d 1338, 1342.(Fed. Cir. 2002). Agency action is arbitrary and capricious where the agency fails to "present a full and reasoned explanation of its decision." *Id.* at 1344.  "Conclusory statements . . . do not fulfill [an] agency's obligation" to articulate reasoned findings. *Id.* at 1342.

As identified above, Commerce issued a conclusory Decision Memorandum denying each of LE Commodities' 14 exclusion requests in which Commerce stated it had accepted and was relying upon ITA's recommended findings. The recommendation memorandums issued by ITA simply accepted and parroted United's claims and, as set forth above, disregarded significant probative evidence on the record demonstrating that the subject steel was not sufficiently available in the United States within LE Commodities' required timeframes. Accordingly, neither Commerce's Decision Memorandums nor ITA's Recommendation Memos explained how the evidence on the record was weighed, and how it supported a finding that United was able to meet the quality, quantity and time criterion warranting a denial of LE Commodities" exclusion requests. Furthermore, Commerce's reliance on and adoption of ITA's conclusory recommendations that ignored and

misinterpreted relevant data in the record, without providing its own analysis, evidences a clear failure to engage in reasoned decision-making and a failure to present a reasoned explanation of its decisions. Decisions which "merely refer to" and summarily adopt "recommendations [which] themselves do not present any discussion of the evidence which supports the conclusory statements therein" are insufficient and do not constitute the reasoned analysis required under the APA. *Yale Univ. v. U.S. Dept. of Commerce, Domestic & Int'l Bus. Admin., Office of Import Programs*, 579 F.2d 626, 633 (C.C.P.A. 1977) (reversing denials of duty exemptions for imported scientific equipment where the denials were based on conclusory recommendations given by the Florence Agreement Committee of the National Institutes of Health).

Commerce's denials of LE Commodities' exclusion requests were arbitrary and capricious, in violation of the APA, because Commerce did not articulate a sufficient, reasoned basis for each of its decisions.

### 1. Exclusion Nos. 49053, 49061, 49062, 49063, 49064, 49065, and 84999

On August 26, 2020, Commerce issued its decisions for exclusion nos. 49053, 49061, 469062, 49063, 49064, 49065, and 84999, in which

Commerce simply recited, verbatim, boilerplate rejection language –

citing no evidence and providing no reasoning whatsoever to support its

conclusions.

Commerce's denials each parroted the following generic,

conclusory language as a basis for its decisions:

> In examining whether the relevant steel article is produced in the
> United States in a sufficient and reasonably available amount or
> of a satisfactory quality, ITA recommends finding, based on all of
> the evidence presented, that the product referenced in the above-
> captioned exclusion request is produced in the United States in a
> sufficient and reasonably available amount and of a satisfactory
> quality, and recommends denying the request for an exclusion.
>
> BIS accepts ITA's recommended findings as to the domestic
> availability of the product, and finds that no overriding national
> security concerns require that this exclusion request be granted
> notwithstanding the domestic availability.

Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-001; Pub. A.R. 3, ECF. No.

19-1, at ERID 49061-001; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-

001; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-001; Pub. A.R. 3, ECF.

No. 19-4, at ERID 49064-001; Pub. A.R. 3, ECF No. 19-5, at ERID

49065-001; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-001.

Notably, the ITA issued a single, one-page recommendation memo

covering *six* of LE Commodities' exclusion requests (exclusion nos.

49053, 49061, 49062, 49063, 49064, and 49065). *See* Pub. A.R. 2, ECF.

No. 18-3, at ERID 49053-003; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-003; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-003; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-003; Pub. A.R. 3, ECF. No. 19-4, at ERID 49064-003; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-003.This one-page recommendation memo that Commerce referenced in its decision memos simply identifies and accepts the claims United made regarding its ability to produce the volume of steel LE Commodities required in a timely manner and includes a single paragraph of "analysis." This "analysis" concludes without explanation, other than a reference to an SME's findings on the objector's product quality, that "[a]lthough LE Commodities states that there is insufficient U.S. availability, United Industries is able to meet the quality, quantity, and manufacturing time criterion" and "United Industries claims it is able to produce 100% of the requested volume in a timely manner." *Id.* A single, one-page memo addressing six different exclusion requests, and simply repeating the claims made in United's objection, clearly does not reflect how United's and LE Commodities' claims were evaluated and weighed in order to arrive at a conclusion. The ITA recommendation memo for exclusion no. 84999 includes a similarly succinct "analysis" and parrots

even fewer claims made by United. This rote, unreasoned denial of

seven of LE Commodities' exclusion requests without any explanation

or any consideration of the evidence is, on its face, arbitrary and

capricious.

### 2. Exclusion Nos. 164173, 164142, 117044, and 49045

When Commerce issued its decisions for exclusion nos. 164173,

164142, 117044, 49045, Commerce again simply accepted United's

claims that it could manufacture and timely provide the subject steel in

the quantities needed by LE Commodities.  Commerce adopted ITA's

recommendation memorandums, which do not actually analyze the

parties' claims and do not articulate how the facts on the record support

ITA's conclusions.  In the "Analysis of the Record" in the "Timeliness"

section of the ITA memos, ITA conducts no analysis of the record

whatsoever, but simply acknowledges that United claims it can

manufacture the subject steel in a timely manner and states that

United meets the timeliness criterion. Pub. A.R. 2, ECF No. 18-2, at

ERID 49045-004; Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-004; Pub.

A.R. 1, ECF. No. 17-3, at ERID 164173-004; Pub. A.R. 1, ECF. No. 17-2,

at ERID 164142-004.  Commerce did not provide sufficient reasoning to

support its conclusions. This unreasoned denial of LE Commodities'
exclusion request nos. 164173, 164142, 117044, and 49045 without
sufficient explanation or actual consideration and analysis of the record
is, on its face, arbitrary and capricious.

### 3. Exclusion Nos. 238015, 249551, and 248094

As was the case with exclusion nos. 164173, 164142, 117044, and
49045, when Commerce issued its decision for exclusion nos. 238015,
248094, and 249551, it again simply accepted United's claims that it
could manufacture and timely provide the subject steel that LE
Commodities required. In its "Analysis of the Record," the ITA failed to
accurately and completely analyze the record.

With respect to exclusion no. 238015, as discussed above, ITA did
not actually assess United's actual claimed 16-week shipping time,
which far exceeded eight weeks and the time it required LE
Commodities' supplier to ship (75 days) and which accordingly
established that United could not with certainty meet the timeliness
criterion." The ITA memo does not include any discussion or analysis of
the actual content of the information in the email exchanges between
United and LE Commodities that LE Commodities provided as an

attachment to its rebuttal, or of the additional industry information
that LE Commodities provided, which included information bearing on
United's ability to supply LE Commodities with a sufficient quantity of
the subject steel within the time LE Commodities required.

      In the ITA recommendation memos adopted by Commerce relating
to exclusion request nos. 249551 and 248094, and as more fully set forth
above, ITA failed to analyze the industry information LE Commodities
submitted evidencing United's inability to obtain sufficient raw
materials and supporting that United's lead times were extended
beyond eight weeks and the time required for LE Commodities' foreign
supplier to provide the subject steel. A full and cogent explanation of
Commerce's decision should have included an analysis of the content of
the emails LE Commodities submitted, and of the additional industry
information, and why Commerce determined this critical information
could support a finding that United met the quantity and timeliness
criteria.

      In addition to its glaring error in disregarding record evidence
regarding United's inability to timely deliver the subject steel in the
quantity required, discussed above, Commerce made errors in

calculating LE Commodities' lead times.  In denying exclusion request
nos. 249551 and 248094, Commerce relied on delivery times for LE
commodities' foreign manufacturer that ITA calculated in error. Pub.
A.R. 4, ECF No. 20-3, at ERID-249551-005; Pub. A.R. 4, ECF No. 20-2,
at ERID-248094-005. In its requests, LE Commodities estimated the
number of days to take delivery of the subject steel from the purchase
order date (field 2.d). In exclusion no. 248094, LE Commodities
estimated 75 days in field 2.d.  Necessarily *included* within this time
frame is both the time (45 days in exclusion no. 248094) required to
manufacture the subject steel from the execution of a binding purchase
order (field 2.e), and the time (30 days in exclusion no. 248094) required
to ship the product from the foreign port of departure to the requestor's
loading dock (field 2.f).  ITA explained that it calculated the requestor's
total import delivery time by adding "2d + 2f of the exclusion request
(i.e., 75+30 days). Using this formula, ITA calculated LE Commodities'
claimed import delivery times incorrectly. Field 2.d in the exclusion
request estimates the total delivery time from purchase order date to
date of delivery. The total delivery time, as identified in field 2.d of the
request (75), should be the sum of fields 2.e (45) and 2.f (30) in the

exclusion. Thus, Commerce's decision is based on flawed reasoning and is in error. Commerce's acceptance of the miscalculation of LE Commodities' delivery time in the ITC recommendation memo is yet another indication that Commerce did not give the evidence in the record careful consideration and analysis.[2]

Accordingly, Commerce did not provide sufficient reasoning to support its conclusions relating to exclusion nos. 238015, 248094, and 249551. A full and cogent explanation of Commerce's decision should have included an analysis of the content of these emails and of the additional industry information and why Commerce determined this critical information did not support a finding that United could not meeting the quantity and timeliness criteria. *See JSW Steel v. United States*, 466 F.Supp.3d 1320, 1330 (Ct. Int'l. Trade 2020) (remanding denials of 232 exclusion requests because "the court [could not] be certain what record evidence, if any, Commerce relied upon when both the BIS decision memoranda and ITA recommendation memoranda [did]not explain what information the sub-agencies considered, how it

---

[2] ITA made the same errors in calculating LE Commodities' lead times in exclusion no. 238015. *See* Pub. A.R. 2, ECF. No. 18-1, at ERID-238015-005.

was weighed, or why the evidence compelled denial."). Thus, Commerce did not articulate "a rational connection between the facts found and the choice made." *AT&T Wireless Servs., Inc. v. F.C.C.*, 270 F.3d 959, 968 (D.C. Cir. 2001). The explanation Commerce did provide evidenced both a disregard and misinterpretation of the record and simply repeated United's claims and thus did not "present a full and reasoned explanation of its decision." *In re Sang Su Lee*, 277 F.3d at 1344. This unreasoned denial of LE Commodities' exclusion request nos. 238015, 248094, and 249551 without sufficient explanation or actual consideration of the evidence is, on its face, arbitrary and capricious.

In sum, Commerce failed to provide a reasoned basis for each of its determinations and instead simply accepted ITA's recommendations, which in turn did not actually assess the parties' respective claims and disregarded the actual record evidence regarding LE Commodities' requests. *AT&T Wireless Servs.*, 270 F.3d at 968; *See Ultratec, Inc. v. Caption Call, LLC*, 872 F.3d 1267, 1274 (Fed. Cir. 2017) (stating that for judicial review to be meaningful, "an agency must present a full and reasoned explanation of its decision" and that "the agency does not have unfettered discretion, and [the court] cannot affirm agency decision-

59

making where the agency fails to provide a reasoned basis for its decision." (quotations omitted)).  Commerce's disregard of its obligation to engage in fair, reasoned decision-making mandates is arbitrary and capricious, mandating reversal. Applying the standards set forth in Commerce's regulations (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that LE Commodities cannot obtain the subject steel in the U.S. market in a sufficient quantity on a timely basis.

## C.    United's Objections Were Deficient Under the Regulations

A domestic producer may object to a request for exclusion from Section 232 tariffs if the producer is capable of "immediately" providing the product or a suitable "substitute product" for which the exclusion is sought in the quality and quantity the requestor requires. Commerce regulations required United to provide support or supplemental evidence for its claimed delivery times.  *See* 15 C.F.R. pt. 705, supp.1 §§ (c)(6)(i), (d)(4); *see also Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt. 705) (including BIS' response to a comment in which

60

BIS stated "Commerce agrees that all parties, both objectors and requesters, should be held to the standards set forth in the regulations . . . . These standards are specified on the objection [] forms, [and] in the criteria specified in paragraph[] (d) . . . of supplement no. 1 to part 705."). Commerce regulations also required Commerce to disregard objections that do not comply with subsection (d)(4). "Objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) will not be considered." 15 C.F.R. pt. 705, supp.1 § (h)(1). Under the APA, Commerce was required to identify whether United's objections were sufficient under the regulations, in order to engage in reasoned decision making and to act in accordance with its own regulations. "[A]n agency has no choice but to provide a reasoned explanation for its actions, and it cannot undertake to act in a manner that is contrary to its own regulations." *Policy & Research, LLC v. United States Dep 't of Health & Human Servs*., 313 F. Supp. 3d 62, 83 (D.D.C. 2018), *appeal dismissed*, 2018 WL 6167378 (D.C. Cir. Oct. 29, 2018).

United failed to provide in any of its objections or surrebuttals any support or supplemental evidence, such as purchase orders, invoices, and/or shipping documents, that it was capable of producing and

delivering the requested quantities of the subject steel in the time frames asserted. Thus, United could not establish "immediate" availability of the subject product in the United States.

Commerce improperly accepted United's deficient objections because United did not provide the information required under the regulations for its objection to merit consideration.

### 1. Exclusion Nos. 49045, 49053, 49061, 49062, 49063, 49064, 49065, 84999, 164142, 164173, and 117044.

United only submitted supplements related to exclusion nos. 49053, 49061, 49062, 49063, 49064, 49065, 84999, and 117044. The attachment for each of these eight objections or surrebuttals did not evidence in any way United's actual ability to produce and deliver the subject steel within its claimed lead times. The attachment consisted of only a letter written by Dan Brockmann, Vice President of Sales & Marketing at United, and email communications between United and a customer, neither of which served as objective evidence of United's actual ability to produce the subject steel in the quantities and time frames required by LE Commodities. Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-032-045; Pub. A.R. 3, ECF. No. 19-1, at ERID 49061-032-045; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-032-045; Pub. A.R. 3,

ECF. No. 19-3, at ERID 49063-032-045; Pub. A.R. 3, ECF. No. 19-4, at

ERID 49064-032-045; Pub. A.R. 3, ECF No. 19-5, at ERID 49065-032-

045; Pub. A.R. 4, ECF. No. 20-1, at ERID 84999-033-046; Pub. A.R. 1,

ECF. No. 17-1, at ERID 117044-046-059. The email communications

between United and a customer do not include discussion of production

or delivery lead times but simply identify sample prices and examples of

the quantities that the LE Commodities customer might order for

various sizes of tubing.

United did not submit any documentation with its objection or

surrebuttal relating to exclusion nos. 238015 and 249551. United did

not submit any documentation with its objection form relating to

exclusion no. 248094 and failed to file a surrebuttal relating to

exclusion no. 248094.

Thus, each of these United objections were insufficient under

subsection (d)(4) of Commerce's regulations and should have been

disregarded by Commerce. 15 C.F.R. pt. 705, supp.1 § (d)(4). The

blatant disregard of the requirements under the regulations constitutes

unlawful agency action. *See UPS Customhouse Brokerage, Inc.*, 575

F.3d 1376, 1383 (C.A.F.C. 2009) ("An agency must follow its own

regulations"); *Friedler v. General Servs. Admin.*, 271 F. Supp. 3d 40, 61
(D.D.C. 2017) ("It is clear beyond cavil that "**an agency is bound by
its own regulations**." (quoting *Nat'l Envtl. Dev. Ass'n's Clean Air
Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014). Commerce
abandoned the standards established by Proclamation 9705 and the
Department's own regulations. Commerce's denials of LE Commodities'
exclusion requests were therefore arbitrary, capricious, an abuse of
discretion, and contrary to law, in violation of the APA.

## II.    <u>Commerce Failed to Produce a Complete Administrative Record</u>

Generally, courts reviewing agency action for compliance with
Section 706(2)(A) "confine their review to the 'administrative record.'
*New York v. Dep't of Commerce*, 351 F. Supp. 3d, 502, 634 (S.D.N.Y.
2019) (*quoting James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085,
1095 (D.C. Cir. 1996)). "When a party challenges an administrative
determination, the agency must produce the complete administrative
record." *JSW Steel*, 466 F. Supp. 3d at 1328.  "A complete record
includes all material directly or indirectly considered by the agency,
including evidence presented to the agency that is contrary to its
ultimate decision and not relied on by the agency." *Invenergy*

64

*Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1355 (Ct. Int'l Trade 2020). Accordingly, the agency must provide "all materials that might have influenced the agency's decision" that "[were] before the agency at the time it rendered its decision." *Id.*; *JSW Steel*, 466 F. Supp. 3d at 1328.

In its decision memos denying LE Commodities' exclusion requests, Commerce stated that it accepted ITA's recommended findings and incorporated such findings by reference. Several of the ITA memos reference a "Subject Matter Expert" ("SME") and for multiple exclusions the ITA memos reflect that they relied on the SME's purported findings as to the quality of the objector's product and whether it constitutes an identical or substitute product to the subject steel in LE Commodities' respective requests.

Specifically, the ITA memos relating to exclusion nos. 49045, 49053, 49061, 49062, 49063, 49064, 49065, 84999, 164142, 164173, and 117044 reflect that the SME evaluated United's claims as to the quality of its product and that ITA took the SME's findings into consideration in issuing its recommendation memo. The ITA memos relating to exclusion nos. 49053, 49061, 49062, 49063, 49064, and 49065, state that

65

"the Subject Matter Expert (SME) was consulted" because "[a]lthough
United Industries claim[ed] it can produce an identical product to the
one being requested, the specifications [for the product] offered [by
United] differed slightly." The ITA memo then states that "[T]he SME
deemed the objection offering to be a suitable substitute," and the ITA
subsequently concluded that there was "indication of sufficient U.S.
production availability" of the subject steel covered by LE Commodities'
respective exclusion requests and recommended denying such requests.
Pub. A.R. 2, ECF. No. 18-3, at ERID 49053-003; Pub. A.R. 3, ECF. No.
19-1, at ERID 49061-003; Pub. A.R. 3, ECF. No. 19-2, at ERID 49062-
003; Pub. A.R. 3, ECF. No. 19-3, at ERID 49063-003; Pub. A.R. 3, ECF.
No. 19-4, at ERID 49064-003; Pub. A.R. 3, ECF No. 19-5, at ERID
49065-003;

For exclusion no. 84999, the ITA memo reflects that the SME
"evaluated United Industries' [product] offering and determined it is
identical to the product requested for exclusion" and the ITA
subsequently recommended denying the exclusion request. Pub. A.R. 4,
ECF. No. 20-1, at ERID 84999-003. The ITA memo relating to exclusion
nos. 164142 and 164173 reflect that an SME evaluated the facts

relating to United's product offerings and "deemed the objector's offering an identical product [to that requested by LE Commodities]." Pub. A.R. 1, ECF. No. 17-2, at ERID 164142-004; Pub. A.R. 1, ECF. No. 17-3, at ERID 164173-004.  The ITA memo relating to exclusion no. 117044 also reflects that an SME evaluated the facts relating to United's product offerings and concluded that "the objection offering [was] a suitable substitute.". Pub. A.R. 1, ECF. No. 17-1, at ERID 117044-004.

The analysis and findings of the "Subject Matter Expert" that purportedly evaluated United's offered products and deemed these products suitable substitutes for LE Commodities' requested product are not included in the administrative record, even though the SME's findings were considered by agency decisionmakers in denying the subject exclusion requests. Accordingly, the administrative record is incomplete and does not contain all the materials that were the actual bases for Commerce's determinations.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commerce determinations denying

LE Commodities" 14 requests for exclusion from Section 232 tariffs are

arbitrary, capricious, an abuse of discretion, not supported by

substantial evidence on the record, and are otherwise not in accordance

with law.  LE Commodities respectfully requests that this Court order

remand of this matter for administrative reconsideration.

Respectfully submitted,

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Katherine A. Dobscha*

GRUNFELD, DESIDERIO,
LEBOWITZ      SILVERMAN &
KLESTADT LLP
707 Wilshire Blvd., STE 4150
Los Angeles, CA 90017
(213) 624-1970

*599 Lexington Ave., 36th Fl.
New York, NY 10022
(212) 557-4000

Dated:  May 1, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for Plaintiffs' Memorandum of Law In Support of its 56.1 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 13,443 words, within the 14,000 word limit.


_/s/ Erik D. Smithweiss___
*Counsel to Plaintiff LE*
*Commodities LLC*

Dated: May 1, 2023

12177397_1