FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49045**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 1.500 inch outside diameter , 0.065" wall thickness, 20 ft lengths, Type 304/304L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated November 25, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49045**

|  |  |
|---|---|
| _____X_____ | I approve denying this exclusion request. |
| _____ | I do not approve denying this exclusion request. |
| _____ | I would like to discuss. |

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

April 4, 2024
Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49045
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion requests. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries matches some of the product specifications listed in the request; however, the specifications provided by United Industries in its objection do not precisely match the carbon, nickel, surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the differences in the specifications are within the bands permitted by ASTM A270 specified in the request. ITA finds based on the SME guidance that United Industries can meet the carbon, nickel, surface finish, polish, and elongation specifications within the range of the requested product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra), it must by polished with grit no. 180 inside/outside, and the bead must be removed. United Industries does not match these specifications in its objection, but it does specify an inside diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME analysis of these discrepancies to determine whether, regardless of these discrepancies, United Industries can make an identical or suitable substitute product. The SME noted that LE Commodities lists two specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface finish specification, and the grit and Ra values given in the request are not directly equivalent to one another. While United Industries does not address the 180-grit size, it commits to polishing the inside diameter to 20 Ra, which is smoother than

the requested 25 Ra specification. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in LE Commodities' request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1, and therefore meets the bead removal specification. Based on this, the SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute to the product in the request.

LE Commodities does not dispute the certified statements made by United Industries regarding its ability to produce an identical product. In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form. LE Commodities submits an attachment and confidential business information (CBI) with its rebuttal



██████  Accordingly, after an analysis of the evidence submitted by LE Commodities, ITA concludes that LE Commodities does not contest United Industries' ability to manufacture the requested product. Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce within eight weeks 100 percent of the requested volume by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?" In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' quantity.





Thus, ITA finds that United Industries produces or could produce a sufficient quantity of the product to meet LE Commodities' specified business activity. Accordingly, ITA has determined that United Industries meets the quantity criterion.

For United Industries to meet the timeliness criterion, it must be able to deliver the product in eight weeks. In its objection, United Industries answers "Yes" that it currently manufactures or can manufacture the product identified in the exclusion request in eight weeks. With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility.  5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days."

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacture time and delivery time. LE Commodities did not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." ITA notes that the production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████ Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49053**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 2.00 inch outside diameter , 0.065" wall thickness, 20 ft lengths, Type 316/316L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM  A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's  analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49053**

       **X**                    I approve denying this exclusion request.

                                     I do not approve denying this exclusion request.

                                     I would like to discuss.

*Matthew S. Borman*                              **April 4, 2024**
Deputy Assistant Secretary of Export Administration                    Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49053
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion requests. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries matches some of the product specifications listed in the request; however, the specifications provided by United Industries in its objection do not precisely match the thickness, outside diameter, tensile strength, yield strength, surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the differences in the specifications are within the bands permitted by ASTM A270 specified in the request. ITA finds based on the SME guidance that United Industries can meet the thickness, outside diameter, tensile strength, and yield strength of the requested product and the information United Industries provided for surface finish, polish, and elongation are within the range of the requested product and the typical values for the product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra), it must be polished with grit no. 180 inside/outside, and the bead must be removed. United Industries does not match these specifications in its objection, but it does specify an inside diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. Section 13 of ASTM A270 only requires one surface finish specification, and the grit and Ra values given in the request are not directly equivalent to one another. While United Industries does not address the 180-grit size, it commits to polishing the inside diameter

1

to 20 Ra, which is smoother than the requested 25 Ra specification. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1 and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and grit size of the request and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form.

In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

Both LE Commodities and United Industries submitted information in the rebuttal and surrebuttals regarding





Accordingly, after an analysis of the certified statements in the rebuttal and surrebuttal submitted by both LE Commodities and United Industries about the ▮▮▮▮▮ ITA concludes that LE Commodities does not contest United Industries' ability to manufacture the requested product. Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce within eight weeks 100 percent of the requested volume by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?"

In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Further, LE Commodities answers "Yes" to the statement that it is challenging United Industries' assertion that "The Objector can supply the percentage of product stated in their Objection filing."



In its surrebuttal and surrebuttal attachment,





███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our {sic} warehouse. With expedited delivery, United can manufacture in 7-14 days." ITA finds United Industries' statements about its manufacturing time supports United Industries' ability to produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities did not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time and challenges only United Industries' pricing and production capacity which ITA explained above is not considered for analysis. Based on analysis of the information submitted, ITA finds that United Industries' certified statements refute LE Commodities' more-generalized allegations suggesting that United Industries cannot deliver the requested quantity within eight weeks. Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49061**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 3.00 inch outside diameter , 0.065 inch wall thickness, 20 ft lengths, Type 316/316L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM  A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49061**

_____**X**_____    I approve denying this exclusion request.

_____    I do not approve denying this exclusion request.

_____    I would like to discuss.

*Matthew S. Borman*    **April 4, 2024**
Deputy Assistant Secretary of Export Administration    Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49061
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' product specifications provided by United Industries in the objection do not precisely match the requested thickness, outside diameter, tensile strength, yield strength, surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the differences in the specifications are within the bands permitted by ASTM A270 specified in the request. ITA finds that the SME's guidance indicates that the information United Industries provided for thickness, outside diameter, tensile strength, yield strength, surface finish, polish, and elongation are within the range of the requested product and the typical values for the product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra), it must be polished with grit no. 180 inside/outside, and the bead must be removed. United Industries does not match these specifications in its objection, but it does specify an inside diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface finish specification, and the grit and Ra values given in the request are not directly equivalent to one another. While United Industries does not address the 180-grit size, it commits to polishing the inside diameter to 20 Ra, which is smoother than the requested 25 Ra specification.

Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that, in the request, 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1 and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form. In its surrebuttal form, United Industries states "No" in response to the question of whether it was responding to LE Commodities' challenges to quality and did not provide any comments in the quality section of the surrebuttal form.

Both LE Commodities and United Industries submitted information in the rebuttal and surrebuttal regarding 



Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce within 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?" In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity.



Further, LE Commodities answers "Yes" to the statement that it is challenging United Industries' assertion that "The Objector can supply the percentage of product stated in their Objection filing."



In its surrebuttal and surrebuttal attachment, United Industries 



█████████████████████████████████████████████████████ Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." The number of days reported in these two statements is less than eight weeks. ITA finds United Industries' statements about its manufacturing time support United Industries' assertion that it can produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities did not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time, and challenges only United Industries' pricing and production capacity. Based on analysis of the information submitted, ITA finds that United Industries' certified statements refute LE Commodities' more-generalized allegations suggesting that United Industries cannot deliver the requested quantity within eight weeks. Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49062**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 2.00 inch outside diameter , 0.065 inch wall thickness, 20 ft lengths, Type 304/304L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM  A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49062**

_____**X**_____    I approve denying this exclusion request.

_____    I do not approve denying this exclusion request.

_____    I would like to discuss.


*Matthew S. Borman*
_____    **April 4, 2024**
Deputy Assistant Secretary of Export Administration    Date

International Trade Administration (ITA)
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49062
Requestor:     LE Commodities, LLC (LE Commodities)
Objector(s):   United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and
3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the
relevant regulations, when an exclusion request has been objected to "the U.S. Department of
Commerce will review each exclusion request to determine whether an article described in an
exclusion request meets any of the following three criteria: the article is not produced in the
United States in a sufficient and reasonably available amount, is not produced in the United
States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part
705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed
at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries matches some of the product
specifications listed in the request; however, certain specifications provided by United Industries
in its objection do not precisely match the carbon, nickel, nitrogen, thickness, outside diameter,
tensile strength, yield strength, surface finish, polish, or elongation specifications set forth in LE
Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was
requested, per ITA practice, to determine whether, regardless of these discrepancies, United
Industries can make an identical or sufficient substitute product. The SME found that the
differences in the specifications are within the bands permitted by ASTM A270 specified in the
request. Therefore, ITA finds that the SME's guidance indicates that the information United
Industries provided for carbon, nickel, nitrogen, thickness, outside diameter, tensile strength,
yield strength, surface finish, polish, and elongation are within the range of the requested product
and the typical values for the product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra),
it must be polished with grit no. 180 inside/outside, and the bead must be removed. United
Industries does not match these specifications in its objection, but it does specify an inside
diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME
analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for
surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by
polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface
finish specification, and the grit and Ra values given in the request are not directly equivalent to
one another because a single grit value can produce polishes across a range of Ra values. While

United Industries does not address the 180-grit size, it commits to polishing the inside diameter to 20 Ra, which is smoother than the requested 25 Ra specification. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1 and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form.

In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and did not provide any comments in the quality section of the surrebuttal form.

United Industries submits an attachment and CBI with its surrebuttal





Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?". In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity. LE Commodities also states "Yes" in response to the question of whether it is challenging United Industries' ability to supply the percentage of product stated in their Objection filing. LE Commodities states in the quantity section of its rebuttal form, "Objectors claims are false. Numerous attempts to start business with {sic} objector and they had no interest." LE Commodities provided CBI

In its surrebuttal and surrebuttal attachment, United Industries



Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." ITA finds United Industries' statements about its manufacturing time supports United Industries' assertion that it can produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities did not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here,

Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49063**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 1.500 inch outside diameter , 0.065" wall thickness, 20 ft lengths, Type 316/316L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM  A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49063**

_____**X**_____     I approve denying this exclusion request.

_____     I do not approve denying this exclusion request.

_____     I would like to discuss.


*Matthew S. Borman*
_____
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
_____
Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49063
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' specifications provided by United Industries in the objection do not precisely match the requested thickness, outside diameter, tensile strength, yield strength, surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the differences in the specifications are within the bands permitted by ASTM A270 specified in the request. Therefore, ITA finds that the SME's guidance indicates that the information United Industries provided for thickness, outside diameter, tensile strength, yield strength, surface finish, polish, and elongation are within the range of the requested product and the typical values for the product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra), it must be polished with grit no. 180 inside/outside, and the bead must be removed. United Industries does not match these specifications in its objection, but it does specify an inside diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface finish specification, and the grit and Ra values given in the request are not directly equivalent to one another. While United Industries does not address the 180-grit size, it commits to polishing the inside diameter to 20 Ra, which is smoother than the requested 25 Ra specification.

Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1 and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form.

In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

Both LE Commodities and United Industries submitted information in the rebuttal and surrebuttal regarding





Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested quantity within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?" In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity.



Further, LE Commodities answers "Yes" to the statement that it is challenging United Industries' assertion that "The Objector can supply the percentage of product stated in their Objection filing." LE Commodities notes in its rebuttal attachment 

In its surrebuttal and surrebuttal attachment, United Industries 



███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████ Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "A270 304 3A Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." While LE Commodities' exclusion request specifies alloy type 316/316L (not 304), United Industries' statement regarding its lead-time for 304 alloy tubing is not the only statement on the record regarding United Industries' lead time. Rather, United Industries also certified that it can make "this tubing" within 4-6 weeks in its Selmer, Tennessee facility and that it manufactures the 316/316L alloy tubing for which LE Commodities seeks exclusion. Moreover, as summarized above, United Industries stated "yes" in response to the question of whether the "product identified in the Exclusion Request" is "currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization." Therefore, ITA finds United Industries' statements about its manufacturing time support United Industries' assertion that it can produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities does not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." See 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time, and challenges only United Industries' pricing and production capacity, which ITA explained above is not considered for analysis. Based on analysis of the information submitted, ITA finds that United Industries' certified statements refute LE Commodities' █████████████████████████████████ █████████████████████████████████ Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49064**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 2.500 inch outside diameter , 0.065 inch wall thickness, 20 ft lengths, Type 304/304L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM  A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49064**

    **X**                     I approve denying this exclusion request.

_____      I do not approve denying this exclusion request.

_____      I would like to discuss.




*Matthew S. Borman*                    <u>April 4, 2024</u>
Deputy Assistant Secretary of Export Administration              Date

International Trade Administration (ITA)
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49064
Requestor:     LE Commodities, LLC (LE Commodities)
Objector(s):   United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' product specifications provided by United Industries in the objection do not precisely match the requested carbon, nickel, nitrogen, thickness, outside diameter, tensile strength, yield strength, surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the differences in the specifications are within the bands permitted by ASTM A270 specified in the request. Therefore, ITA finds that the SME's guidance indicates that information United Industries provided for carbon, nickel, nitrogen, thickness, outside diameter, tensile strength, yield strength, surface finish, polish, and elongation are within the range of the requested product and the typical values for the product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra), it must be polished with grit no. 180 inside/outside, and the bead must be removed. United Industries does not match these specifications in its objection, but it does specify an inside diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface finish specification, and the grit and Ra values given in the request are not directly equivalent to one another. While United Industries does not address the 180-grit size, it commits to polishing the inside diameter to 20 Ra, which is smoother than the requested 25 Ra specification.

Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1 and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form. In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

Both LE Commodities and United Industries submitted information in the rebuttal and surrebuttal regarding





Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?". In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity.



Further, LE Commodities answers "Yes" to the statement that it is challenging United Industries' assertion that "The Objector can supply the percentage of product stated in their Objection filing."



In its surrebuttal and surrebuttal attachment, United Industries 

LE Commodities and United Industries 

████████████████████████████████████████ Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." ITA finds United Industries' statements about its manufacturing time support United Industries' assertion that it can produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacture time and delivery time. LE Commodities does not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time, ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 49065**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 1.00 inch outside diameter , 0.065" wall thickness, 20 ft lengths, Type 316/316L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM A-270 polished grit no. 180 inside/outside.
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's  analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #49065**

        **X**                    I approve denying this exclusion request.

                                  I do not approve denying this exclusion request.

                                  I would like to discuss.

*Matthew S. Borman*                          **April 4, 2024**
Deputy Assistant Secretary of Export Administration                          Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 49065
Requestor:    LE Commodities, LLC (LE Commodities)
Objector(s):   United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' product specifications match some of the specifications listed in the request; however, the specifications provided by United Industries in the objection do not precisely match the requested thickness, outside diameter, tensile strength, yield strength, surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the differences in the specifications are within the bands permitted by ASTM A270 specified in the request. Therefore ITA finds that the SME's guidance indicates that the information United Industries provided for thickness, outside diameter, tensile strength, yield strength, surface finish, polish, and elongation are within the range of the requested product and the typical values for the product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra), it must be polished with grit no. 180 inside/outside, and the bead must be removed. United Industries does not match these specifications in its objection, but it does specify an inside diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface finish specification, and the grit and Ra values given in the request are not directly equivalent to one another. While United Industries does not address the 180-grit size, it commits to polishing

the inside diameter to 20 Ra, which is smoother than the requested 25 Ra specification. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.11 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1 and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form. In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

Both LE Commodities and United Industries submitted information in the rebuttal and surrebuttal regarding 



Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?" In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity.



Further, LE Commodities answers "Yes" to the statement that it is challenging United Industries' assertion that "The Objector can supply the percentage of product stated in their Objection filing."



In its surrebuttal and surrebuttal attachment, United Industries





[REDACTED] Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Industry standard A270 304 #a Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." While LE Commodities' exclusion request specifies alloy type 316/316L (not 304), United Industries' statement regarding its lead-time for 304 alloy tubing is not the only statement on the record regarding United Industries' lead time.  Rather, United Industries also certified that it can make "this tubing" within 4-6 weeks in its Selmer, Tennessee facility and that it manufactures the 316/316L alloy tubing for which LE Commodities seeks exclusion.  Moreover, as summarized above, United Industries stated "yes" in response to the question of whether the "product identified in the Exclusion Request" is "currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization." Therefore,  ITA finds United Industries' statements about its manufacturing time supports United Industries' assertion that it can produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities does not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time, [REDACTED] Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 84999**

**Summary:**

- Requester: LE Commodities, LLC
- Product Description: 1.500 inch outside diameter, 0.065 inch wall thickness, 20 ft lengths, Type 304/304L Stainless Steel Welded Sanitary Tubing, bead removed, in-line annealed, pickled, polished to 25Ra max inner diameter, conforming to 3-A Sanitary Standard, per ASTM A-270, polished grit no. 180 inside/outside
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated August 26, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's

report to the President of January 11, 2018, the recommendation and analysis provided by the International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #84999**

        **X**                     I approve denying this exclusion request.

_____    I do not approve denying this exclusion request.

_____    I would like to discuss.

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

<u>**April 4, 2024**</u>
Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 84999
Requestor:     LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria.
LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and
3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the
relevant regulations, when an exclusion request has been objected to "the U.S. Department of
Commerce will review each exclusion request to determine whether an article described in an
exclusion request meets any of the following three criteria: the article is not produced in the
United States in a sufficient and reasonably available amount, is not produced in the United
States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part
705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed
at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries matches some of the product
specifications listed in the request; however, the specifications provided by United Industries in
its objection do not precisely match the carbon, nickel, nitrogen, tensile strength, yield strength,
surface finish, polish, or elongation specifications set forth in LE Commodities' request. Because
of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to
determine whether, regardless of these discrepancies, United Industries can make an identical or
sufficient substitute product. The SME found that the differences in the specifications are within
the bands permitted by ASTM A270 specified in the request. Based on this, the SME concluded
that United Industries' offering was an identical product to the product in the request. Therefore,
ITA finds based on the SME guidance that United Industries can meet the carbon, nickel, tensile
strength, yield strength, surface finish, polish, and elongation of the requested product.

LE Commodities specifies the inside diameter must be polished to a 25 average roughness (Ra),
it must be polished with grit no. 180 inside/outside, and the bead must be removed. United
Industries does not match these specifications in its objection, but it does specify an inside
diameter polished to 20 Ra and an outside diameter polished to 32 Ra. ITA requested SME
analysis of these discrepancies. The SME noted that LE Commodities lists two specifications for
surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by
polishing the surface. The SME stated Section 13 of ASTM A270 only requires one surface
finish specification, and the grit and Ra values given in the request are not directly equivalent to
one another. While United Industries does not address the 180-grit size, it commits to polishing
the inside diameter to 20 Ra, which is smoother than the requested 25 Ra specification.
Additionally, the SME noted that although United Industries' specification of the outside

diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME also noted that the 3-A Sanitary Standard cited in the request, through a sub-citation of American Welding Society standard AWS D18.1 to define the characteristics for welds, requires a commitment to bead removal. The SME stated that by committing to meeting the 3-A Sanitary Standard, United Industries commits to meeting the sub-cited AWS D18.1, and therefore meets the bead removal specification. The SME concluded that the objection offering meets the interior surface roughness specification and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form nor does it submit a request attachment.

In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form. United Industries submits an attachment and confidential business information (CBI) with its surrebuttal to





Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States , or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?"

In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to produce the product in a sufficient quantity but does not provide any comments in the rebuttal form or submit a public rebuttal attachment. LE Commodities provided CBI to



In its surrebuttal and surrebuttal attachment, United Industries

ITA finds United Industries produces or could produce a sufficient quantity of the product to meet LE Commodities' specified business activity. Accordingly, ITA has determined that United Industries meets the quantity criterion.

For United Industries to meet the timeliness criterion, it must be able to deliver the product in eight weeks. In its objection, United Industries answers "Yes" that it currently manufactures or can manufacture the product identified in the exclusion request in eight weeks. With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility. 5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." United Industries included three different timeframes on the record for its timeliness information; however, all the information falls within United Industries' statement that it can manufacture the requested product within eight weeks. ITA finds United Industries' statements about its manufacturing time clarify United Industries' ability to produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities does not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United

Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its production cycle in its objection form. The timeframe corresponds with United Industries' certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time. Based on analysis of the information submitted, ITA finds that United Industries' certified statements refute LE Commodities' unexplained response of "Yes" in its rebuttal that it challenges United Industries' ability to deliver the requested quantity within eight weeks. Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 117044**

**Summary:**

- Requester: LE Commodities LLC
- Product Description: Stainless Steel Welded Sanitary Tubing per ASTM A270 Type 304/304L  size 4.00 inch x 0.083 inch x 20 foot length
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated November 25, 2020. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's report to the President of January 11, 2018, the recommendation and analysis provided by the

International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #117044**

_____X_____   I approve denying this exclusion request.

_____   I do not approve denying this exclusion request.

_____   I would like to discuss.

*Matthew S. Borman*
_____
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
_____
Date

International Trade Administration (ITA)
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 117044
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and
3-A Sanitary Standard. United Industries objected to the exclusion requests. Pursuant to the
relevant regulations, when an exclusion request has been objected to "the U.S. Department of
Commerce will review each exclusion request to determine whether an article described in an
exclusion request meets any of the following three criteria: the article is not produced in the
United States in a sufficient and reasonably available amount, is not produced in the United
States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part
705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed
at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries certifies that it "manufactures this
exact tubing LE Commodities is asking for an exclusion on" – namely "4.083 wall, 20 foot
lengths, 304/304L, Welded Stainless Steel Tubing, heat treatment which is annealed in-line at
1900 F, surface finish ID to 20 Ra Max, OD polished to 32 Ra max, and ASTM A270." This
description generally correlates to LE Commodities' product description in the exclusion request
referring to "Stainless Steel Welded Sanitary Tubing per ASTM A270 Type 304/304L size 4.00
inch x 0.083 inch x 20 foot length." However, the product specifications provided by United
Industries in its objection do not precisely match the tensile strength, yield strength, surface
finish, or elongation specifications set forth in LE Commodities' request. Because of these
discrepancies, Subject Matter Expert (SME) analysis was requested, per ITA practice, to
determine whether, regardless of these discrepancies, United Industries can make an identical or
sufficient substitute product. The SME found that the minimum values for tensile strength and
yield strength provided by United Industries exceed the minimum values defined in the request
and therefore meet the specifications of the request. The SME noted LE Commodities does not
specify any minimum values for elongation and surface finish in the request (instead marking
"0" for these fields). Thus, the SME stated that the specifications provided by United Industries
are not required by LE Commodities to meet a minimal value, but instead represent typical
values for the product. Based on this, the SME concluded that United Industries' offering was an
identical product to the product in the request. Therefore, ITA finds that the SME's guidance, the
certified statements, and evidence included in United Industries' objection indicate that United
Industries can meet the tensile strength and yield strength of the requested product and the

information United Industries provided for surface finish and elongation are within the range of the requested product and the typical values for the product.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form.

In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

Both LE Commodities and United Industries submitted information in the rebuttal and surrebuttals regarding





Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce an identical product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection for that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?" In its rebuttal, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity.



In its surrebuttal and surrebuttal attachment, United Industries

Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility.  5000'-15,000' is stocked in our warehouse.  With expedited delivery, United can manufacture in 7-14 days." ITA finds United Industries' statements about its manufacturing time supports United Industries' assertion that it can produce the requested product within eight weeks.

In its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities does not provide any comments in the manufacturing time and delivery time sections of the rebuttal form. United Industries states in the manufacturing time section of its surrebuttal form, "United Industries has available inventory and a production cycle of all sizes is covered in 4-6 weeks." The production cycle of four to six weeks matches United Industries' description of its

production cycle in its objection form. The timeframe corresponds with United Industries'
certification of its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could
be produced 'within eight weeks' in the amount needed in the business activities of the
{requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). Here, LE Commodities does
not contest United Industries' manufacturing time or delivery time. ███████████████
████████████████████████████████████████████████
███████████████████████ Therefore, ITA finds that United Industries produces or could
produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the
timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 164142**

**Summary:**

- Requester: LE Commodities LLC
- Product Description: STAINLESS STEEL WELDED SANITARY TUBING PER ASTM A270 TYPE 304/304L SIZE 4.00 INCH X 0.083 INCH X 20 FOOT LENGTH
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated February 13, 2021. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's report to the President of January 11, 2018, the recommendation and analysis provided by the

International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #164142**

_____**X**_____     I approve denying this exclusion request.

_____     I do not approve denying this exclusion request.

_____     I would like to discuss.

*Matthew S. Borman*
_____
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
_____
Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 164142
Requestor:    LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and
3-A Sanitary Standard. United Industries objected to the exclusion requests. Pursuant to the
relevant regulations, when an exclusion request has been objected to "the U.S. Department of
Commerce will review each exclusion request to determine whether an article described in an
exclusion request meets any of the following three criteria: the article is not produced in the
United States in a sufficient and reasonably available amount, is not produced in the United
States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part
705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed
at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries certifies that it "manufactures this
exact tubing LE Commodities is asking for an exclusion on." – namely "4&quot; OD, .083 wall,
20 foot lengths, 304/304L, Welded stainless steel tubing, heat treatment which is annealed in-line
at 1900 F, surface finish ID to 20 Ra max, OD polished to 32 Ra max, and ASTM A270. This
description generally correlates to LE Commodities' product description in the exclusion request
referring to "STAINLESS STEEL WELDED SANITARY TUBING PER ASTM A270 TYPE
304/304L SIZE 4.00 INCH X 0.083 INCH X 20 FOOT LENGTH." However, the product
specifications provided by United Industries in its objection do not precisely match the tensile
strength, yield strength, surface finish, or elongation specifications set forth in LE Commodities'
request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per
ITA practice, to determine whether, regardless of these discrepancies, United Industries can
make an identical or sufficient substitute product. The SME found that the minimum values for
tensile strength and yield strength provided by United Industries exceed the minimum values
defined in the request and therefore meet the specifications of the request. The SME noted LE
Commodities does not specify any minimum values for elongation and surface finish in the
request (instead marking "0" for these fields). Thus, the SME stated that the specifications
provided by United Industries are not required by LE Commodities to meet a minimal value, but
instead but represent typical values for the product. Based on this, the SME concluded that
United Industries' offering was an identical product to the product in the request. Therefore, ITA
finds that the SME's guidance, the certified statements, and information included in United
Industries' objection indicate that United Industries can meet the tensile strength and yield
strength of the requested product and the information United Industries provided for surface

finish and elongation are within the range of the requested product and the typical values for the product.

LE Commodities does not submit supporting documentation with its exclusion request, nor did it submit a rebuttal. Further, LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce a identical product. Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce an identical product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce within eight weeks 100 percent of the requested volume by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?" LE Commodities does not submit documentation with its exclusion request nor submit a rebuttal. LE Commodities does not dispute the certified statements made by United Industries regarding its ability to produce the requested quantity.

Thus, ITA analyzed the information contained in the request and objection and concludes LE Commodities does not contradict United Industries' certified statements that United Industries produces or could produce a sufficient quantity of the product to meet LE Commodities' specified business activity. Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every

week at United Industries Selmer, TN facility.  5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." ITA finds United Industries' statements about its manufacturing time supports United Industries' ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶I)(6)(i) (2018). Here, LE Commodities does not contest United Industries' manufacturing time or delivery time. Based on analysis of the information submitted, ITA finds that United Industries' certified its ability to produce and deliver the requested product within eight weeks and LE Commodities did not contest its statements. Therefore, ITA finds that United Industries produces or could produce the product within eight weeks.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 164173**

**Summary:**

- Requester: LE COMMODITIES LLC
- Product Description: STAINLESS STEEL WELDED SANITARY TUBING PER ASTM A270 TYPE 304/304L SIZE 4.00 INCH X 0.083 INCH X 20 FOOT LENGTH
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated February 13, 2021. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's report to the President of January 11, 2018, the recommendation and analysis provided by the

International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #164173**

_____**X**_____     I approve denying this exclusion request.

_____     I do not approve denying this exclusion request.

_____     I would like to discuss.

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 164173
Requestor:       LE Commodities, LLC (LE Commodities)
Objector(s):     United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A Sanitary Standard. United Industries objected to the exclusion request. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (2018). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and finds that United Industries matches certifies that it "manufactures this exact tubing LE Commodities is asking for an exclusion on." – namely " 4&quot; OD, .083 wall, 20 foot lengths, 304/304L welded stainless steel tubing, heat treatment which is annealed in-line at 1900 F, surface finish ID to 20 Ra max, OD polished to 32 Ra max, and ASTM A270." This description generally correlates to LE Commodities' product description in the exclusion request referring to "STAINLESS STEEL WELDED SANITARY TUBING PER ASTM A270 TYPE 304/304L SIZE 4.00 INCH X 0.083 INCH X 20 FOOT LENGTH." However, the product specifications provided by United Industries in its objection do not precisely match the tensile strength, yield strength, surface finish, or elongation specifications set forth in LE Commodities' request. Because of these discrepancies, subject matter expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or sufficient substitute product. The SME found that the minimum values for tensile strength and yield strength provided by United Industries exceed the minimum values defined in the request and therefore meet the specifications of the request. The SME noted LE Commodities does not specify any minimum values for elongation and surface finish in the request (instead marking "0" for these fields). Thus, the SME stated that the specifications provided by United Industries are not required by LE Commodities to meet a minimal value, but instead represent typical values for the product. Based on this, the SME concluded that United Industries' offering was an identical product to the product in the request. Therefore, ITA finds based on the SME's guidance that United Industries can meet the tensile strength and yield strength of the requested product and the information

1

United Industries provided for surface finish and elongation are within the range of the requested product and the typical values for the product.

LE Commodities did not submit a rebuttal, and thus does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. However, LE Commodities submits an attachment with its exclusion request to document an email discussion regarding a request for quotes (RFQ) from its customer, Sanitary Solutions, Inc., to purchase sanitary tube products in multiple sizes from United Industries. ITA notes that the only issue raised by LE Commodities in its supporting documentation addressed the pricing of the product, and not the quality of the product. Indeed, LE Commodities identifies price as the issue which led to the end of sales discussions between United Industries and Sanitary Solutions. Nonetheless, ITA requested SME analysis to determine if the products in the emailed RFQ matches LE Commodities' request. The SME determined that one of the products listed in the RFQ matches the diameter and alloy defined in the exclusion request. Additionally, the SME stated that while all specifications are not present in the RFQ, the SME found that it is stated in the RFQ that the product meets the industry standard ASTM A270, and that standard requires all of the other specifications to be quantified at the time of the order. Therefore, the SME determined that the requested product is included in the submitted RFQ,

Further, ITA notes that the email correspondence in the RFQ occurred more than eighteen months prior to the submission of the exclusion request. ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request. ITA does not find correspondence outside this timeframe to be informative due to the ever-changing nature of the steel and aluminum industries and their production schedules. Since the email correspondence is dated more than 90 days prior to the submission of the exclusion request, ITA is not affording this email communication any evidential weight for purposes of its analysis of United Industries' ability to manufacture the requested product. Nonetheless, ITA notes that the RFQ corroborates other information on the record indicating that LE Commodities did not have an issue with the quality of the product offered by United Industries. In addition, ITA notes that Sanitary Solutions contacted United Industries as a potential manufacturer, and did not raise questions about whether United Industries can produce steel tube products that meet its technical requirements.

Accordingly, after an analysis of the certified statements in the exclusion request and objection submitted by both LE Commodities and United Industries ITA concludes LE Commodities does not contest United Industries' ability to manufacture the requested product. Thus, based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce an identical product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *Id.*

In its objection, United Industries certifies that it can produce within eight weeks 100 percent of the requested volume by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?"

LE Commodities submitted a public attachment to its exclusion request to show that United Industries would not sell to LE Commodities' customer Sanitary Solutions. Specifically, LE Commodities states in its request attachment that it made numerous attempts to discuss the purchasing of stainless sanitary tubing per ASTM A270 in multiple grades from United Industries. However, United Industries "offered inflated and unfair pricing" that would prohibit the company from earning a profit as a manufacturer to U.S. distributors. LE Commodities attempted to reach an agreeable price, but United Industries responded that the proposed pricing would upset its current customers and thus United Industries could not sell to LE Commodities at that price.

LE Commodities notes in its exclusion request attachment that United Industries reports a utilization rate of 61 percent in its objection form to past exclusion requests, and LE Commodities claims that this percentage is without merit. Specifically, LE Commodities notes that steel manufacturers "have full order books with long lead times and are actually in expansion mode." LE Commodities questions why United Industries did not accept new business at a reasonable price if 39 percent of its capacity is idle and concludes that United Industries' assertions about its utilization rate are "completely unfounded." However, ITA finds any reference to a previous ITA recommendation has no bearing on the current case it is evaluating, as each case has its own set of facts.

LE Commodities identifies pricing as the basis for LE Commodities' customer, Sanitary Solutions, not entering into an agreement with United Industries. However, economic reasons for not purchasing the requested product are not among the regulatory criteria that form part of ITA's analysis for granting or denying a request. Regarding capacity, ITA notes that it does not

consider capacity arguments in its analysis. Therefore, ITA is not considering United Industries' statement in its objection of "61 percent plant utilization current" to determine whether United Industries can manufacture the requested quantity. Moreover, even if production capacity were relevant to ITA's analysis, and on the record of this exclusion request, United Industries submitted certified statements indicating that it could feasibly produce and deliver the requested quantity within eight weeks. ITA finds it appropriate to give greater weight to United Industries' certified statements because United Industries is in the best position to know its own production schedule and abilities to produce the requested product. Thus, ITA analyzed the information submitted by LE Commodities and United Industries' and concludes that LE Commodities' generalized allegations regarding price and capacity are not sufficient to contradict United Industries' certified statements that United Industries produces or could produce a sufficient quantity of the product to meet LE Commodities' specified business activity. Therefore, ITA finds that United Industries produces or could produce the requested product in a sufficient and reasonably available amount. Accordingly, ITA has determined that United Industries meets the quantity criterion.

For United Industries to meet the timeliness criterion, it must be able to deliver the product in eight weeks. In its objection, United Industries answers "Yes" that it currently manufactures or can manufacture the product identified in the exclusion request within eight weeks. With respect to the timeliness criterion, United Industries states in its objection that it can manufacture the product in less than eight weeks and further states, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility. We typically keep around 10,000 feet in stock at all times." United Industries also states in its objection, "Sanitary tubing is manufactured every week at United Industries Selmer, TN facility.  5000'-15,000' is stocked in our warehouse. With expedited delivery, United can manufacture in 7-14 days." United Industries included three different timeframes on the record for its timeliness information; however, all the information falls within United Industries' statement that it can manufacture the requested product within eight weeks. ITA finds United Industries' statements about its manufacturing time support its ability to produce the requested product within eight weeks.

The relevant test under the regulation is "whether a product is currently being produced or could be produced 'within eight weeks' in the amount needed in the business activities of the {requestor}." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (2018). ITA analyzed evidence submitted by LE Commodities and United Industries and concludes LE Commodities does not contest United Industries' ability to produce and deliver the requested quantity within eight weeks. Therefore, ITA finds that United Industries produces or could produce the product within eight weeks. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 238015**

**Summary:**

- Requester: LE Commodities LLC
- Product Description: Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit OD ID 180
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated November 5, 2021. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's report to the President of January 11, 2018, the recommendation and analysis provided by the

International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #238015**

_____**X**_____    I approve denying this exclusion request.

_____    I do not approve denying this exclusion request.

_____    I would like to discuss.

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
Date

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 238015
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria.

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270. United Industries objected to the exclusion requests. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in an amount which can be delivered in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (Dec. 14, 2020). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' product specifications match some of the specifications listed in the request; however, the specifications provided by United Industries in the objection do not precisely match the requested elongation, surface finish, and polish specifications. LE Commodities specifies polished grit no. 180 inside/outside. United Industries does not address this specification but does specify an inside diameter polished to 20 average roughness (Ra) and an outside diameter polished to 32 Ra. Because of this discrepancy, Subject Matter Expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or suitable substitute product. The SME noted LE Commodities does not specify any minimum values for elongation and surface finish in the request (instead marking "0" for these fields). Thus, the SME stated that the specifications provided by United Industries are not required by LE Commodities to meet a minimal value, but instead represent typical values for the product. The SME stated that LE Commodities and United Industries use two different methods of defining the specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. While United Industries does not address the 180-grit size, it specifies a smoother surface finish specification by polishing the inside diameter to 25 Ra. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME concluded that the objection offering meets the interior surface roughness specification and grit size of the request and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and it does not provide any comments in the quality section of the rebuttal form. In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

ITA analyzed certified statements submitted by United Industries in its objection about its ability to manufacture the requested product. Additionally, ITA finds LE Commodities does not contest these statements in its exclusion request or rebuttal. Based on analysis of the information submitted, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, as amended December 14, 2020, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (Dec. 14, 2020). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer 'within eight weeks,' or, if that is not possible, by a date earlier than the time required for the requestor to obtain the entire quantity of the product from the requestor's foreign supplier." *Id.*

In its objection, United Industries certifies that it can produce 100 percent of the requested volume within eight weeks by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?".

In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity and refers to the public attachment it submitted with its rebuttal. In its rebuttal attachment, LE Commodities states United Industries' lead times are extended because of supply shortages created by Allegheny Technologies Incorporated (ATI), a stainless-steel coil producer, announcing that it would no longer produce the steel grades United Industries purchases from it. LE Commodities claims that

ATI's exit from manufacturing steel grades used by United Industries would hinder steel producers' ability to manufacture a sufficient and reasonably available amount, and indicates that this likely would affect United Industries as well, regardless of whether it purchased raw materials from ATI or another manufacturer. LE Commodities also states that steel mills are operating at full capacity due to market recoveries after the Covid shutdowns. LE Commodities submits as evidence a press release from ATI dated December 2, 2020, announcing its exit from stainless sheet products, an interview dated March 15, 2021, with a third-party steel industry executive about market conditions for U.S. sanitary tubing manufacturers, and a news article dated February 8, 2021, about the impact of stainless steel shortages on U.S. manufacturers.

LE Commodities notes that United Industries reports a capacity utilization rate of 61 percent in its objection form and states United Industries has reported not using ATI as a manufacturer. To challenge United Industries' claim that it is unaffected by raw material supply shortages, LE Commodities submitted information in its rebuttal regarding a request for quotes (RFQ) it received from United Industries seeking stainless coil. LE Commodities submits the RFQ as evidence that United Industries has been impacted by ATI's exit from the production of stainless-steel coil and is seeking new suppliers of raw materials for tube products. ITA requested SME analysis of the RFQ to determine if the products in the RFQ match the products in LE Commodities' exclusion request. The SME determined that the product described in the RFQ is a narrow coil of flat sheet. The SME stated that while this is not the same as the requested product, it could be used in the manufacture of welded tubes. Nonetheless, ITA finds that there is no information in the RFQ for ITA to determine that United Industries contacted LE Commodities due to any issues in its supply chain; indeed, United Industries states in the RFQ that it is "always looking for additional sources of raw material."

In addition, LE Commodities in its rebuttal attachment disputes United Industries' claim that LE Commodities has not asked it for a quote or pricing. LE Commodities claims that it would not be able to purchase from United Industries as they are a direct competitor and asserts that United Industries successfully made the same argument when receiving section 232 exclusions for other products. In support, LE Commodities submits a past exclusion request from United Industries dated February 21, 2020, to demonstrate that United Industries requested and was granted exclusion to import stainless steel pipes it does not produce domestically. However, ITA finds any reference to a previous exclusion request has no bearing on the current case, as each case has its own set of facts.

In its surrebuttal, United Industries responds to the statements and documentation submitted by LE Commodities in its rebuttal. United Industries states it has not purchased 300 series stainless steel from ATI in over five years, has found additional manufacturers for raw material from which to manufacture the stainless-steel tubing, and was not affected by ATI's exit from manufacturing steel grades used by United Industries. United Industries thus confirms in the certified statements in its surrebuttal that the market conditions described by LE Commodities do not hinder its ability to manufacture the requested quantity.

3

ITA analyzed the evidence submitted by LE Commodities and concludes that it is not sufficient to contradict United Industries' certified statements that United Industries produces or could produce a sufficient amount of the product to meet LE Commodities' specified business activity. The majority of the articles and the press release submitted by LE Commodities do not specifically discuss United Industries, but instead contain information on the general conditions of the stainless-steel industry after the exit of ATI. Indeed, only one of the sources submitted by LE Commodities discusses United Industries. That source contains an interview with an industry source that references United Industries as part of a broader discussion of market conditions for sanitary tubing manufacturers in the United States. The source describes general difficulty in the industry with manufacturing abilities, supply chains, and timeframes. All of the other submitted articles refer to the production experience of separate companies and do not reference United Industries. Moreover, as discussed above, United Industries has certified that it can timely produce the requested quantity. ITA finds that LE Commodities' general and non-specific submitted evidence purporting to challenge United Industries' certified statements about its ability to manufacture the requested quantity is entitled to less weight than United Industries' company-specific certified statements regarding its current production abilities.

Based on analysis of the information submitted by LE Commodities and United Industries, and the SME guidance, ITA finds that in weighing conflicting arguments about United Industries' supply chain, ITA gives more weight to United Industries' certified statements because it is in the best position to know its own products, manufacturing abilities, and supply chain. ITA finds that United Industries produces or could produce a sufficient amount of the product to meet LE Commodities' specified business activity. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, in its exclusion request LE Commodities reports 75 days in response to question 2d of the request form "Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization." LE Commodities also reports 45 days in response to the exclusion request form 2e question "Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed. Finally, LE Commodities reports 30 days in response to the 2f question of the exclusion request form "Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock." ITA's practice is to calculate the requestor's import delivery time using the responses from 2d and 2f. The import delivery time is the time it would take for LE Commodities to obtain the product from another country. ITA adds these two figures together plus any adjustments as necessary to arrive at the import delivery time. Here, adding LE Commodities' responses to 2d and 2f results in a total of 105 days. LE Commodities asserts on page 1 of its rebuttal attachment that it submitted a purchase order from its foreign manufacturer which LE Commodities claims to demonstrate the foreign manufacturer has a production timeframe of 6 to 8 weeks which equates to 42 to 56 days. ITA notes that the attached referenced document is on page 8 of its rebuttal attachment and is entitled "Sales Note (Proforma Invoice)" and states that the proposed shipment date is 45 to 60

4

days after confirming the Pro Forma Invoice. ITA notes that this sales note time frame is different from the time frame noted on page 1 of the rebuttal attachment, and different from the time frame certified in the exclusion request. LE Commodities does not provide an explanation for why they provide different timeframes in their exclusion request and rebuttal attachment. However, because LE Commodities has provided a sales note in an attempt to demonstrate the information that should be included in 2d of the exclusion request, ITA has made an adjustment based on the information in the sales note. The sales note provides a range of 45-60 days. ITA has used the midpoint of that range, or 52 days as a replacement for the 75 days provided in 2d. ITA uses the midpoint because it is the average number of days to a wide range of potential shipping times and, as such, does not bias the analysis in favor of either LE Commodities or United Industries. As such, the total import delivery time is 52 days plus 30 days or 82 days.

For United Industries to meet the timeliness criterion, it must be able to deliver the product "earlier than the time required for the requestor to obtain the entire quantity of the product from the requestor's foreign supplier," *i.e.,* in a fewer number of days than the import delivery time. *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (Dec. 14, 2020). In its objection, United Industries claims it can deliver the product in eight days. United Industries states in its objection, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility."

In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities references comments from its customers who report lead times of 40 to 62 weeks from United Industries. However, LE Commodities did not provide copies of these comments or provide specifications of the products subject to the discussions. Therefore, ITA affords little weight to LE Commodities' unsupported summaries of discussions between United Industries and third parties about unspecified products occurring at an unknown period of time.

As stated above, United Industries reported in its objection that it can deliver the product in eight days (specifically, it can manufacture the product in two days and then ship the product from its plant to LE Commodities in six days). However, in its surrebuttal United Industries states "United Industries is shipping product in as little time as 2 days, to 16 weeks. Depends on the size of the order." United Industries included three different timeframes on the record for its timeliness information; however, all the information falls between 2 days and 16 weeks with the range reflecting different order sizes. Therefore, ITA will replace the two days reported in the objection with this longer timeframe reported by United Industries in its surrebuttal to determine its manufacturing time. ITA is using 57 days because it is the midpoint of 2 days to 16 weeks to determine its delivery time. ITA uses the midpoint because it is the average number of days to a wide range of potential delivery times and, as such, does not bias the analysis in favor of either LE Commodities or United Industries. ITA has replaced the two days reported by United Industries to manufacture the requested product for shipping from its U.S. manufacturing plant with 57 days to ship the product per its reported range in its surrebuttal. ITA then added the six days specified in United Industries' objection as the shipping time to the 57 days ITA calculated

5

as a midpoint for manufacturing, and determined that United Industries can deliver the product in 63 days.

As noted above, both parties provided additional evidence of various estimates of their manufacture and/or delivery times that were different than their respective responses in the request and objection forms. ITA has determined that the most reasonable approach to evaluating the timeliness criterion is to rely on these average midpoints described above. ITA has compared the estimated import delivery time of 82 days from LE Commodities' foreign supplier to the estimated 63 days for United Industries' domestic delivery time, and has determined that United Industries meets the timeliness criterion because it can deliver the product in a fewer number of days than LE Commodities' foreign suppliers' import delivery time.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 248094**

**Summary:**

- Requester: LE Commodities LLC
- Product Description: Stainless Steel Welded Tubing Type 304/304L Cold Rolled Polished Grit 180 OD ID
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated December 31, 2021. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's report to the President of January 11, 2018, the recommendation and analysis provided by the

International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #248094**

_____X_____    I approve denying this exclusion request.

_____    I do not approve denying this exclusion request.

_____    I would like to discuss.

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
Date

International Trade Administration (ITA)
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 248094
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: At least one objector meets the quality, quantity, and timeliness criteria.
LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A. United Industries objected to the exclusion requests. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in an amount which can be delivered in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (Dec. 14, 2020). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' product specifications match some of the specifications listed in the request; however, the specifications provided by United Industries in the objection do not precisely match the requested polish specifications. LE Commodities specifies polished grit no. 180 inside/outside. United Industries does not address this specification but does specify an inside diameter polished to 20 average roughness (Ra) and an outside diameter polished to 32 Ra. Because of this discrepancy, Subject Matter Expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or suitable substitute product. The SME noted LE Commodities does not specify any minimum values for elongation and surface finish in the request (instead marking "0" for these fields). Thus, the SME stated that the specifications provided by United Industries are not required by LE Commodities to meet a minimal value, but instead represent typical values for the product. The SME stated that LE Commodities and United Industries use two different methods of defining the specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME also stated that while United Industries does not address the 180-grit size, it specifies a smoother surface finish specification by polishing the inside diameter to 25 Ra. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME concluded that the objection offering meets the interior surface roughness specification and grit size of the request and that the objection offering is a suitable substitute.

In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' quality. LE Commodities also states "Yes" to challenging United Industries' ability to meet all specifications in the request including chemistry, dimensions, strength, toughness, surface finish, coatings and composition. However, LE Commodities does not provide any comments challenging United Industries' certified statements about its ability to produce an identical product or a suitable substitute product in its rebuttal or its submitted attachment. Instead, LE Commodities submitted



United Industries did not submit a surrebuttal.

ITA analyzed the certified statements submitted by United Industries in its objection about its ability to manufacture the requested product. Additionally, ITA finds LE Commodities

Therefore, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, as amended December 14, 2020, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (Dec. 14, 2020). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer 'within eight weeks,' or, if that is not possible, by a date earlier than the time required for the requestor to obtain the entire quantity of the product from the requestor's foreign supplier." *Id.*

LE Commodities argues in its exclusion request that United Industries' lead times are extended because of supply shortages created by an announcement by Allegheny Technologies Incorporated (ATI), a stainless steel coil producer, announcing that it would no longer produce the steel grades United Industries purchases from it. LE Commodities claims that ATI's exit from manufacturing steel grades used by United Industries would hinder United Industries' ability to manufacture a sufficient and reasonably available amount regardless of whether United Industries purchased raw materials from ATI or another manufacturer. LE Commodities also

states that steel mills are operating at full capacity due to market recoveries after the Covid shutdowns. LE Commodities submits as an exclusion request attachment to support its claims a press release from ATI dated December 2, 2020, announcing its exit from stainless sheet products, an interview dated March 15, 2021, with a third party steel industry executive about market conditions for sanitary tubing manufacturers, and a news article dated February 8, 2021 about the impact of stainless steel shortages on U.S. manufacturers.

LE Commodities additionally submits a past exclusion request from United Industries dated February 21, 2020, in its exclusion request attachment to demonstrate that United Industries requested and was granted exclusion to import stainless steel tubes it does not produce domestically. LE Commodities claims that in this exclusion request, United Industries asserted that it would not be able to secure this product from a direct competitor. LE Commodities states this is the "exact same point that LE Commodities is making." However, ITA finds any reference to a previous ITA recommendation has no bearing on the current case it is evaluating, as each case has its own set of facts.

In its objection, United Industries certifies that it can produce within eight weeks 100 percent of the requested volume by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?". In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it was challenging United Industries' ability to manufacture the requested quantity, "Yes" to challenging United Industries' ability to provide 100 percent of the requested volume, and refers to the public attachment it submitted with its rebuttal. The rebuttal attachment discusses United Industry's delivery time but does not discuss its ability to manufacture the requested quantity.

ITA analyzed the evidence submitted by LE Commodities and concludes that it is not sufficient to contradict United Industries' certified statements that United Industries produces or could produce a sufficient amount of the product to meet LE Commodities' specified business activity. The majority of the articles and the press release submitted by LE Commodities do not specifically discuss United Industries, but instead contain information on the general conditions of the stainless-steel industry after the exit of ATI. Indeed, only one of the sources submitted by LE Commodities discusses United Industries. That source contains an interview with an industry source that references United Industries as part of a broader discussion of market conditions for sanitary tubing manufacturers in the United States. The source describes general difficulty in the industry with manufacturing abilities, supply chains, and timeframes. All of the other submitted articles refer to the production experience of separate companies and do not reference United Industries. Moreover, as discussed above, United Industries has certified that it can timely produce the requested quantity. ITA finds that LE Commodities' general and non-specific

submitted evidence purporting to challenge United Industries' certified statements about its ability to manufacture the requested quantity is entitled to less weight than United Industries' company-specific certified statements regarding its current production abilities. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, in its exclusion request LE Commodities reports 75 days in response to the question 2d of the request form "Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization." LE Commodities also reports 45 days in response to the exclusion request form 2e question "Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed. Finally, LE Commodities reports 30 days in response to the 2f question of the exclusion request form "Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock." ITA's practice is to calculate the requestor's import delivery time using the responses from 2d and 2f. The import delivery time is the time it would take for LE Commodities to obtain the product from another country. ITA adds these two figures together plus any adjustments as necessary to arrive at the import delivery time. Here, adding LE Commodities' responses to 2d and 2f results in a total of 105 days.

In addition to this timeframe for import delivery, LE Commodities provides an attachment to its request which, on page 8, includes a document entitled "Sales Note (Proforma Invoice)" and states that the proposed shipment date is 45 to 60 days after confirming the Pro Forma Invoice. ITA notes this is not the same time frame as that specified in question 2d of the exclusion request form. There is no narrative explanation of what this sales note is intended to demonstrate or why a different time frame is provided. However, in the attachment to LE Commodities' rebuttal, on page 3, LE Commodities states, "…LE Commodities asserted in its exclusion request that its foreign suppliers required 45 days to manufacture the subject merchandise and 30 days to deliver to the United States. LE Commodities also provided a representative purchase order from its supplier substantiating these claims." LE Commodities also provided a second document on page 9 of its rebuttal attachment entitled "Sales Note (Proforma Invoice)" which includes that the proposed shipment date is 30 to 45 days after confirming the Proforma Invoice. To the extent that LE Commodities submitted this documentation to clarify the timeframe reported in question 2d of the exclusion request form, we note that this sales note is dated May 24, 2021, which is more than 90 days prior to the filing of the exclusion request. It is ITA's practice not to consider information from 90 days or more prior to the filing of the exclusion request. However, even if ITA were to make an adjustment based on the information in the sales note that was included in the request attachment, the total import delivery time would still exceed that of United Industries. In particular, the sales note provides a range of 45-60 days. ITA has used the midpoint of that range, or 52 days as a replacement for the 75 days provided in 2d. ITA uses the midpoint because it is the average number of days to a wide range of potential shipping times and, as such, does not bias the analysis in favor of either LE Commodities or United Industries. As such, the total adjusted import delivery time is 52 days plus 30 days or 82 days.

In addition, in its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities references comments from its customers who report lead times of 40 to 62 weeks from United Industries. LE Commodities submitted confidential business information (CBI) to ████████████████████████████████████████████ However, the CBI LE Commodities submitted exceeds the five-page limit established by 15 CFR Part 705, Suppl. 1 at (b)(5)(iii)(D) (Dec. 14, 2020). Therefore, per the regulations, ITA did not consider LE Commodities' ██████████████████ CBI in its evaluation of whether United Industries can deliver the requested product in a timely manner.

For United Industries to meet the timeliness criterion, it must be able to deliver the product "earlier than the time required for the requestor to obtain the entire quantity of the product from the requestor's foreign supplier," *i.e.,* in a fewer number of days than the import delivery time. *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (Dec. 14, 2020). In its objection United Industries claims it can deliver the product in 66 days. United Industries also states in its objection, "This tubing is manufactured every 4-6 weeks in our Selmer, Tennessee facility." United Industries does not state whether it will ship to LE Commodities in four to six weeks or if it is describing its overall manufacturing cycle for the type of product identified in the exclusion request. Due to this ambiguity, ITA will not adjust the delivery time due to this statement.

Based on analysis of the information submitted, ITA finds that United Industries' certified responses refutes LE Commodities' more-generalized allegations suggesting that United Industries is hindered by supply shortages, reports lengthy delivery times to customers and lacks an ability to produce and deliver the requested product in a timely manner. ITA finds that in weighing conflicting arguments about United Industries' timeframe for delivering the requested product ITA defers to United Industries' certified statements because it is in the best position to know its own products, manufacturing abilities, and timeframes. ITA compared the import delivery time of 82 days from LE Commodities' foreign supplier to 66 days for United Industries, and has determined that United Industries meets the timeliness criterion as it can deliver the product in a fewer number of days than LE Commodities' foreign suppliers' import delivery time. Based on analysis of the information provided by United Industries, compared to LE Commodities' import delivery time, United Industries is able to deliver the product in a timely manner. Accordingly, ITA finds that United Industries meets the timeliness criterion.

FINAL RESULTS PURSUANT TO COURT REMAND
*LE Commodities, LLC v. United States*,
CIT Court No. 22-0245

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 249551**

**Summary:**

- Requester: LE Commodities LLC
- Product Description: Stainless Steel Welded Sanitary Tubing Type 316/316L Cold Rolled Polished Grit 180 OD ID
- HTSUS: 7306405040

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated December 31, 2021. LE Commodities filed suit in the U.S. Court of International Trade challenging the denial on August 24, 2022. On October 10, 2023 the Court accepted the Government's motion for voluntary remand to provide further explanation or reconsideration of its decision.

BIS and the International Trade Administration ("ITA") have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), BIS's report to the President of January 11, 2018, the recommendation and analysis provided by the

International Trade Administration (ITA) for this remand, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review, ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and ITA's analysis and recommendation on remand, adopts and incorporates by reference ITA's analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #249551**

_____**X**_____    I approve denying this exclusion request.

_____    I do not approve denying this exclusion request.

_____    I would like to discuss.

*Matthew S. Borman*
_____
Deputy Assistant Secretary of Export Administration

**April 4, 2024**
Date

International Trade Administration (ITA)
**Recommendation Document for Denial of Steel Exclusion Requests Under Section 232**

Exclusion Request ID: 249551
Requestor:      LE Commodities, LLC (LE Commodities)
Objector(s):    United Industries Inc (United Industries)

Recommendation: Denial
Rationale: The objector meets the quality, quantity, and timeliness criteria.

LE Commodities seeks exclusion for stainless steel welded sanitary tubing per ASTM A270 and 3-A. United Industries objected to the exclusion requests. Pursuant to the relevant regulations, when an exclusion request has been objected to "the U.S. Department of Commerce will review each exclusion request to determine whether an article described in an exclusion request meets any of the following three criteria: the article is not produced in the United States in an amount which can be delivered in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier, is not produced in the United States in a satisfactory quality, or for specific national security considerations." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i)-(iii) (Dec. 14, 2020). This ITA analysis review and recommendation is directed at the first two of these criteria.

"SATISFACTORY QUALITY" ANALYSIS:

ITA analyzed the objection and notes that United Industries' product specifications match some of the specifications listed in the request; however, the specifications provided by United Industries in the objection does not precisely match the requested polish specifications. LE Commodities specifies polished grit no. 180 inside/outside. United Industries does not address this specification but does specify an inside diameter polished to 20 average roughness (Ra) and an outside diameter polished to 32 Ra. Because of this discrepancy, Subject Matter Expert (SME) analysis was requested, per ITA practice, to determine whether, regardless of these discrepancies, United Industries can make an identical or suitable substitute product. The SME noted LE Commodities does not specify any minimum values for elongation and surface finish in the request (instead marking "0" for these fields). Thus, the SME stated that the specifications provided by United Industries are not required by LE Commodities to meet a minimal value, but instead represent typical values for the product. The SME stated that LE Commodities and United Industries use two different methods of defining the specifications for surface finish, the grit size used to polish the sanitary steel tube and the actual Ra achieved by polishing the surface. The SME also stated that while United Industries does not address the 180-grit size, it specifies a smoother surface finish specification by polishing the inside diameter to 25 Ra. Additionally, the SME noted that although United Industries' specification of the outside diameter polished to 32 Ra is rougher than would be achieved with 180-grit, it is sufficient to enable cleaning of the tube's exterior surface, and therefore does not exclude United Industries' product from being a suitable substitute. The SME concluded that the objection offering meets the interior surface roughness specification and grit size of the request and that the objection offering is a suitable substitute.

LE Commodities does not rebut the certified statements made by United Industries regarding its ability to produce an identical product. Additionally, in its rebuttal form, LE Commodities states "No" in response to the question of whether it is challenging United Industries' quality and does not provide any comments in the quality section of the rebuttal form. LE Commodities submitted supporting documentation which only addressed United Industries' ability to manufacture the requested product in a sufficient and reasonably available amount and in a timely manner. LE Commodities did not make any claims regarding United Industries' ability to manufacture the requested product nor did the attachments it submitted with its exclusion request and rebuttal make such claims. In its surrebuttal form, United Industries states "No" in response to the question of whether it is responding to LE Commodities' challenges to quality and does not provide any comments in the quality section of the surrebuttal form.

ITA analyzed certified statements submitted by United Industries in its objection about its ability to manufacture the requested product. Additionally, ITA finds LE Commodities does not contest these statements in its exclusion request or rebuttal. Based on analysis of the information submitted and the SME guidance, ITA finds that United Industries currently produces or could produce a suitable substitute product. Therefore, ITA has determined that United Industries meets the quality criterion.

"SUFFICIENT AND REASONABLY AVAILABLE AMOUNT" ANALYSIS:

Pursuant to the applicable regulations, as amended December 14, 2020, Commerce reviews the record to determine if the requested article is "not produced in the United States in a sufficient and reasonably available amount." *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (Dec. 14, 2020). "Not produced in the United States in a sufficient and reasonably available amount" means "that the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* "Immediately" means "that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer 'within eight weeks,' or, if that is not possible, by a date earlier than the time required for the requestor to obtain the entire quantity of the product from the requestor's foreign supplier." *Id.*

LE Commodities argues in its exclusion request that United Industries' lead times are extended because of supply shortages created by Allegheny Technologies Incorporated (ATI), a stainless-steel coil producer, announcing that it would no longer produce the steel grades United Industries purchases from it. LE Commodities claims that ATI's exit from manufacturing steel grades used by United Industries would hinder United Industries' ability to manufacture a sufficient and reasonably available amount regardless of whether United Industries purchased raw materials from ATI or another manufacturer. LE Commodities also states that steel mills are operating at full capacity due to market recoveries after the Covid shutdowns. LE Commodities submits as an exclusion request attachment to support its claims a press release from ATI dated December 2, 2020, announcing its exit from stainless sheet products, an interview dated March 15, 2021, with a third party steel industry executive about market conditions for sanitary tubing manufacturers,

and a news article dated February 8, 2021, about the impact of stainless steel shortages on U.S. manufacturers.

LE Commodities additionally submits a past exclusion request dated February 21, 2020, from United Industries in its exclusion request attachment to demonstrate that United Industries requested and was granted exclusion to import stainless steel tubes it does not produce domestically. LE Commodities claims that in this exclusion request, United Industries asserted that it would not be able to secure this product from a direct competitor. LE Commodities states this is the "exact same point that LE Commodities is making." However, ITA finds any reference to a previous ITA recommendation has no bearing on the current case it is evaluating, as each case has its own set of facts.

In its objection, United Industries certifies that it can produce within eight weeks 100 percent of the requested volume by answering "Yes" to the question in the objection form that asked, "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" and by answering "100" to the question in the objection form that asks "What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis?". In its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' ability to manufacture the requested quantity, "Yes" to challenging United Industries' ability to provide 100 percent of the requested volume, and refers to the public attachment it submitted with its rebuttal.

ITA analyzed the evidence submitted by LE Commodities and concludes that it is not sufficient to contradict United Industries' certified statements that United Industries produces or could produce a sufficient amount of the product to meet LE Commodities' specified business activity. The majority of the articles and the press release submitted by LE Commodities do not specifically discuss United Industries, but instead contain information on the general conditions of the stainless-steel industry after the exit of ATI. Indeed, only one of the sources submitted by LE Commodities discusses United Industries. That source contains an interview with an industry source that references United Industries as part of a broader discussion of market conditions for sanitary tubing manufacturers in the United States. The source describes general difficulty in the industry with manufacturing abilities, supply chains, and timeframes. All of the other submitted articles refer to the production experience of separate companies and do not reference United Industries. Moreover, as discussed above, United Industries has certified that it can timely produce the requested quantity. ITA finds that LE Commodities' general and non-specific submitted evidence purporting to challenge United Industries' certified statements about its ability to manufacture the requested quantity is entitled to less weight than United Industries' company-specific certified statements regarding its current production abilities. Accordingly, ITA has determined that United Industries meets the quantity criterion.

With respect to the timeliness criterion, in its exclusion request LE Commodities reports 90 days in response to question 2d of the request form "Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization." LE Commodities also reports 75 days in response to the exclusion request form 2e question "Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed. Finally, LE Commodities reports 30 days in response to the 2f question of the exclusion request form "Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock." ITA's practice is to calculate the requestor's import delivery time using the responses from 2d and 2f. The import delivery time is the time it would take for LE Commodities to obtain the product from another country. ITA adds these two figures together plus any adjustments as necessary to arrive at the import delivery time. Here, adding LE Commodities' responses to 2d and 2f results in a total of 120 days.

LE Commodities submitted an attachment to its exclusion request, which contained a document entitled "Sales Note (Performa Invoice)" from the foreign manufacturer named in the exclusion request, which states "proposed shipment date 45-60 days after confirming Proforma invoice." However, LE Commodities also submitted an attachment to its rebuttal, which contained timeframes that differ from the timeframes in LE Commodities' exclusion request. Specifically, in the rebuttal attachment, LE Commodities submitted another Proforma invoice from the same foreign manufacturer as in the exclusion request. This Proforma invoice states "proposed shipment date 30 to 45 days after confirming Proforma invoice." Moreover, LE Commodities states in the cover letter to the rebuttal attachment document that this documentation "demonstrates that the Thailand mill can and has actually manufactured the subject sanitary tubing well within the conservative 45-day estimation made by LE Commodities in its exclusion request." Similarly, LE Commodities states that it "asserted in its exclusion request that its foreign suppliers required 45 days to manufacture the subject merchandise and 30 days to deliver to the United States." However, these statements do not reconcile with the exclusion request, as there is no "45 day estimation" provided in that request. Furthermore, this sales note is dated May 24, 2021, which is more than 90 days prior to the filing of the exclusion request. It is ITA's practice not to consider information from 90 days or more prior to the filing of the exclusion request. As indicated above, ITA will make adjustments to the number of dates reported in 2d and 2f of the exclusion request when warranted. However, in this instance, the additional information that LE Commodities provided in its rebuttal attachment sets forth different timeframes for manufacturing and delivery, and the explanation provided in the narrative form of the rebuttal attachment does not explain the reason behind these multiple different figures. Therefore, without this clarity, ITA finds that there is no basis to adjust the reported import delivery time as the alternative timeframes contained in the rebuttal attachments conflict with each other as well as the timeframes contained in the exclusion request and attachment. Accordingly, in line with its practice, ITA is using 120 days, which is the sum of 2d and 2f as reported by LE Commodities in its exclusion request, as the import delivery time.

4

In addition, in its rebuttal form, LE Commodities states "Yes" in response to the question of whether it is challenging United Industries' manufacturing time and delivery time. LE Commodities references comments from its customers who report lead times of 40 to 62 weeks from United Industries. LE Commodities submitted confidential business information (CBI) to ███████████████████████████████████████████████ However, the CBI LE Commodities submitted exceeds the five-page limit established by 15 CFR Part 705, Suppl. 1 at (b)(5)(iii)(D) (Dec. 14, 2020). Therefore, per the regulations, ITA did not consider LE Commodities' ███████████████████████ CBI in its evaluation of whether United Industries can deliver the requested product in a timely manner.

For United Industries to meet the timeliness criterion, it must be able to deliver the product "earlier than the time required for the requestor to obtain the entire quantity of the product from the requestor's foreign supplier," *i.e.,* in a fewer number of days than the import delivery time. *See* 15 CFR Part 705, Suppl. 1 at ¶ (c)(6)(i) (Dec. 14, 2020). In its objection United Industries claims it can deliver the product in 66 days. United Industries also states in its objection, "Industry standard A270 is manufactured every 4-6 weeks in United Industries Selmer, Tennessee facility." United Industries does not state whether it will ship to LE Commodities in four to six weeks or if it is describing its overall manufacturing cycle for the type of product identified in the exclusion request. Due to this ambiguity, ITA will not adjust the delivery time due to this statement.

As stated above, in its objection, United Industries stated it can deliver the product in 66 days (specifically, it can manufacture the product in 60 days and then ship the product from its plant to LE Commodities in six days). However, in its surrebuttal United Industries states, "United Industries is shipping some orders in a week or less. Some orders are shipping in 8-12 weeks." United Industries included four different timeframes on the record for its timeliness information – 66 days, 4-to-6 weeks, one week or less, and 8-to-12 weeks. As stated above, ITA will not utilize the timeframe of 4 to 6 weeks as it is unclear whether United Industries is describing the delivery time to fulfill an order from LE Commodities or its general manufacturing capabilities. ITA notes that the delivery time of 66 days reported in its objection falls between 8 weeks and 12 weeks reported in its surrebuttal, and therefore it is not contradictory. The delivery time of 66 days reported in the objection is represented by United Industries' description of the range of its delivery time in the surrebuttal. Accordingly, as United Industries provided a wider range in its surrebuttal, ITA will use this range of 8-to-12 weeks as reported by United Industries to determine its delivery time. Because it is a range, ITA is using the midpoint to determine its delivery time. The midpoint of eight weeks (56 days) and 12 weeks (84 days) is 70 days. ITA uses the midpoint because it is the average number of days to a wide range of potential delivery times and, as such, does not bias the analysis in favor of either LE Commodities or United Industries. ITA has replaced the 60 days reported by United Industries to manufacture the requested product to ship from its U.S. manufacturing plant with 70 days to ship the product per its surrebuttal statement. ITA then added six days from the objection as the shipping time to the 70 days ITA calculated as a midpoint for manufacturing and determined that United Industries

can deliver the product in 76 days. ITA compared the import delivery time of 120 days for LE Commodities to 76 days for United Industries and has determined that United Industries meets the timeliness criterion as it can deliver the product in a fewer number of days than the import delivery time.

Based on analysis of the information submitted, ITA finds that United Industries' certified responses refutes LE Commodities' more generalized allegations suggesting that United Industries is hindered by supply shortages, reports lengthy delivery times to customers, and lacks an ability to produce and deliver the requested product in a timely manner. ITA finds that in weighing conflicting arguments about United Industries' timeframe for delivering the requested product ITA defers to United Industries' certified statements because it is in the best position to know its own products, manufacturing abilities, and timeframes. Based on analysis of the information provided by United Industries, compared to LE Commodities' import delivery time, United Industries is able to deliver the product in a timely manner. Accordingly, ITA finds that United Industries meets the timeliness criterion.